NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
CHUNG H. HAN (Cal. Bar No. 191757)
JASMIN YANG (Cal. Bar No. 255254)
DAMON A. THAYER (Cal. Bar No. 258821)
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-7423
     Facsimile: (213) 894-7819
     E-mail: Keith.Staub@usdoj.gov
           Chung.Han@usdoj.gov
           Jasmin.Yang@usdoj.gov
           Damon.Thayer@usdoj.gov
           Paul.Green@usdoj.gov

Attorneys for Respondents
Felicia L. Ponce and Michael Carvajal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES; VINCENT REED; FELIX SAMUEL GARCIA; ANDRE BROWN; and SHAWN L. FEARS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff-Petitioners,<br><br>          v.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons,<br><br>          Defendant-Respondents. | No. CV 20-4450- CBM-PVCx<br><br>**RESPONDENTS' NOTICE OF MOTION AND MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; AND [PROPOSED] ORDER**<br><br>Hearing Date:   August 4, 2020<br>Hearing Time:  10:00 a.m.<br>Ctrm:           8B<br><br>Honorable Consuelo B. Marshall<br>United States District Judge |

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.      INTRODUCTION ....................................................................................1

II.     RELEVANT PROCEDURAL BACKGROUND .................................2

III.    PETITIONERS' ALLEGATIONS ........................................................3

        A.      Steps Taken at FCC Lompoc to Address COVID-19 ................3

        B.      Petitioners Have Not Complied with the BOP's Grievance Process ...........4

IV.     LEGAL STANDARDS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) .........5

V.      ARGUMENT ...........................................................................................6

        A.      Petitioners' Habeas Claim Fails as a Matter of Law ..................6

                1.      The Court Lacks Jurisdiction Over Petitioners' Habeas Claim .........6

                2.      Petitioners' Habeas Claims Run Afoul of the BOP's Judicially Unreviewable Authority to Make Inmate Placement Decisions .........7

                3.      Petitioners Have Failed to Satisfy the Habeas Exhaustion Requirements ...........................................9

        B.      Petitioners' Non-Habeas Eighth Amendment Conditions-of-Confinement Claim Should Be Dismissed .................................11

                1.      Petitioners' Allegations Do Not Support a Finding of Deliberate Indifference .................................11

                2.      Petitioners Cannot Satisfy the Subjective Test for Deliberate Indifference ........................................14

                3.      Petitioners Have Failed to Satisfy the PLRA's Exhaustion Requirements ........................................17

VI.     CONCLUSION .....................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

Alvarez v. Larose,
    2020 WL 2315807 (S.D. Cal. May 9, 2020) ............................................... 6

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .................................................................................. 5, 18

Badea v. Cox,
    931 F.2d 573 (9th Cir. 1991) ......................................................................... 7

Balistreri v. Pacifica Police Dep't.,
    901 F.2d 696 (9th Cir. 1990) ......................................................................... 5

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ....................................................................................... 5

Bell v. Wolfish,
    441 U.S. 520 (1979) ............................................................................... 11, 12

Booth v. Churner,
    532 U.S. 731 (2001) ..................................................................................... 17

Braden v. 30th Judicial Circuit Court of Kentucky,
    410 U.S. 484 (1973) ..................................................................................... vii

Brown v. Ives,
    543 F. App'x 636 (9th Cir. 2013) .................................................................. 9

Brown v. Sanders,
    2011 WL 4899919 (C.D. Cal. Sept. 1, 2011) ................................................ 9

Castro–Cortez v. INS,
    239 F.3d 1037 (9th Cir. 2001) ..................................................................... 10

Chunn v. Edge,
    2020 WL 3055669 (E.D.N.Y. Jun. 9, 2020) ........................................ 13, 16

Crawford v. Bell,
    599 F.2d 890 (9th Cir. 1979) ......................................................................... 6

Crum v. Blanckensee,
    2020 WL 3057799 (C.D. Cal. Jun. 8, 2020) ................................................. 8

Eighth Amendment. Whitley v. Albers,
    475 U.S. 612 (1986) ................................................................ 11

Farmer v. Brennan,
    511 U.S. 825 (1994) ........................................................... passim

Fernandez–Vargas v. Gonzales,
    548 U.S. 30 (2006) ................................................................. 10

Govind v. Cash,
    2013 WL 5220809 (C.D. Cal. Sept. 10, 2013) ................................. 11, 17

Grinis v. Spaulding,
    2020 WL 2300313 (May 8, 2020 D. Mass.) ............................................ 13

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
    896 F.2d 1542 (9th Cir. 1990) ......................................................... 5

Helling v. McKinney,
    509 U.S. 25 (1993) ................................................................. 13

Hertz Corp. v. Friend,
    559 U.S. 77 (2010) ................................................................... 5

Ingraham v. Wright,
    430 U.S. 651 (1977) ................................................................ 11

Jones v. Bock,
    549 U.S. 199 (2007) ................................................................ 17

Kokkonen v. Guardian Life Ins. Co.,
    511 U.S. 375 (1994) .................................................................. 4

Laing v. Ashcroft,
    370 F.3d 994 (9th Cir. 2004) ........................................................ 10

Livas v. Myers,
    2020 WL 1939583 (W.D. La. Apr. 22, 2020) ....................................... 6, 9

Marlowe v. LeBlanc,
    2020 WL 2043425 (5th Cir. Apr. 27, 2020)........................................ 15

Martinez v. Roberts,
    804 F.2d 570 (9th Cir. 1986) ........................................................ 10

McKune v. Lile,
    536 U.S. 24 (2002) ................................................................... 9

Mills v. Schnier,
    2010 WL 55504 (C.D. Cal. Jan. 7, 2010) ................................................... 7

Money v. Pritzker,
    2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) ...................................... 6, 16

Nellson v. Barnhart,
    2020 WL 1890670 ..................................................................... 10, 16

Plata v. Newsom,
    2020 WL 1908776 (N.D. Cal. Apr. 17, 2020) .......................................... 6

PLRA. Grinis v. Spaulding,
    2020 WL 3097360 (D. Mass. Jun. 11, 2020) ........................................... 6

Porter v. Nussle,
    534 U.S. 516 (2002) ....................................................................... 17

Reeb v. Thomas,
    636 F.3d 1224 (9th Cir. 2011) ........................................................... 8

Ross v. Blake,
    136 S. Ct. 1850 (2016) ................................................................... 11

Stock W., Inc. v. Confederated Tribes of the Colville Reservation,
    873 F.2d 1221 (9th Cir. 1989) ........................................................... 4

Swain v. Junior,
    2020 WL 3167628 (11th Cir. Jun. 15, 2020) ....................... 14, 15, 16, 17

United States v. Ceballos,
    671 F.3d 852 (9th Cir. 2011) ............................................................. 8

United States v. Yates,
    2019 WL 1779773 at *4 (D. Kan. Apr. 23, 2019) .................................... 9

Valentine v. Collier,
    956 F.3d 797 (5th Cir. 2020) ..................................................... 13, 18

Warren v. Fox Family Worldwide, Inc.,
    328 F.3d 1136 (9th Cir. 2003) ........................................................... 5

Wilson v. Seiter,
    501 U.S. 294 (1991) ................................................................. 12, 16

Woodford v. Ngo,
    548 U.S. 81 (2006) ....................................................................... 17

iv

Wragg v. Ortiz,
   2020 WL 2745247 (D.N.J. May 27, 2020) ........................................................ 6, 16

Wragg v. Ortiz,
   2020 WL 3074026 (D.N.J. Jun. 10, 2020) .............................................................. 17

**Federal Statutes**

5 U.S.C. § 702 ............................................................................................................... 1

18 U.S.C. § 3621(b) ...................................................................................................... 8

18 U.S.C. § 3621 ....................................................................................................... 8, 9

18 U.S.C. § 3624(c) ....................................................................................................... 7

28 U.S.C. § 1331 ............................................................................................................ 1

28 U.S.C. § 2241 ................................................................................................ 1, 6, 10

28 U.S.C. § 2243 ............................................................................................................ 1

28 U.S.C. § 3624(c) ....................................................................................................... 7

28 U.S.C. § 3624(c)(2) .................................................................................................. 7

42 U.S.C. § 1997e(a) .................................................................................................... 17

**State Statutes**

Section 12003 ............................................................................................................ 7, 8

**Federal Regulations**

28 C.F.R. § 542.18 ....................................................................................................... 10

**Federal Rules**

FED. R. CIV. P. 12(b)(1) .................................................................................. 1, vii, 4, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5

## **NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on Tuesday, August 4, 2020, at 10:00 a.m., or as soon as thereafter the matter may be heard, Respondents Louis Milusnic, in his official capacity as acting Warden of FCI Lompoc, and Michael Carvajal, in his official capacity as Director of the Bureau of Prisons (the "BOP") (collectively, "Respondents")[1] will, and do hereby, move the Court to dismiss Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears' (the "Petitioners'") Complaint – Class Action for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus (the "Complaint") in its entirety for lack of jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion will be made before the Honorable Consuelo B. Marshall, United States District Judge, in the First Street Courthouse located at 350 West 1st Street, Courtroom 8B, Los Angeles, CA 90012.

Respondents bring this motion on the following grounds:

1) The Court lacks jurisdiction over Petitioners' habeas claims;

2) Petitioners failed to exhaust their habeas claims;

3) Petitioners' requested habeas relief runs afoul of the BOP's authority to make inmate placement decisions;

4) Petitioners Eighth Amendment conditions-of-confinement claim should be dismissed because Petitioners fail to state a claim under the Eighth Amendment for deliberate indifference; and

5) Petitioners' Eighth Amendment conditions-of-confinement claim is barred by their failure to exhaust required administrative remedies under the Prison Litigation Reform Act.

---

[1] The only proper respondent to a writ of habeas corpus is the custodian of the inmate. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973). Mr. Milusnic was the acting Warden at FCC Lompoc at the time the complaint was filed. The current Warden is Patricia V. Bradley who assumed her post on June 7, 2020. Warden Bradley, therefore, is the only proper respondent to a writ of habeas corpus as the custodian of the inmate petitioners.

vi

1    This motion is made upon this Notice, the attached Memorandum of Points and

2    Authorities, and all pleadings, records, and other documents on file with the Court in this

3    action, and upon such oral argument as may be presented at the hearing of this motion.

4    This motion is made following the conference of counsel pursuant to L.R. 7-3

5    which took place on June 17, 2020.

6    Dated: July 2, 2020                          Respectfully submitted,

7                                                 NICOLA T. HANNA
                                                  United States Attorney
8                                                 DAVID M. HARRIS
                                                  Assistant United States Attorney
9                                                 Chief, Civil Division
                                                  JOANNE S. OSINOFF
10                                                Assistant United States Attorney
                                                  Chief, General Civil Section

11

12                                                    /s/ Keith M. Staub
13                                                _____
                                                  KEITH M. STAUB
14                                                CHUNG H. HAN
                                                  JASMIN YANG
15                                                DAMON A. THAYER
                                                  PAUL B. GREEN
16                                                Assistant United States Attorney

17                                                Attorneys for Respondents

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Petitioners' Complaint brings two claims regarding their confinement at FCI Lompoc and USP Lompoc (collectively "FCC Lompoc"): (1) a habeas claim under 28 U.S.C. § 2241 and 28 U.S.C. § 2243; and (2) a conditions-of-confinement claim for injunctive relief under U.S. Const, Amend. VIII, 28 U.S.C. § 1331 and 5 U.S.C. § 702. As to the habeas claim, Petitioners aver that "the fact of their confinement in prison itself amounts to an Eighth Amendment violation under these circumstances, and nothing short of an order ending their confinement at Lompoc will alleviate that violation." Dkt. No. 16 ("Compl." ¶ 110). As to the conditions-of-confinement claim, Petitioners aver that they "cannot take steps to protect themselves—such as social distancing, hand-washing hygiene, or self-quarantining—and the government has not provided adequate protections." *Id.* ¶ 120. Petitioners assert that Respondents must "***reduce the prison population to allow for adequate social distancing and sufficient access to medical care***." *Id.* ¶ 4 (emphasis in original).

Respondents now move to dismiss both claims. As to the habeas claim, the district court in the companion case at FCI Terminal Island, *Wilson v. Ponce*, No. 20-4451, slip op. (C.D. Cal. Jun. 10, 2020) (Hon. Michael F. Fitzgerald), found that district courts lack subject matter jurisdiction over Petitioners' habeas claim, and therefore denied those petitioners' *ex parte* application for a temporary restraining order ("TRO") ("*Wilson* Order").[2] Respondents respectfully submit that the *Wilson* Order as to the habeas claim was correctly decided, and also request that this Court dismiss Petitioners' habeas claim for lack of jurisdiction.

In addition, Respondents respectfully request that the Court dismiss Petitioners' conditions-of-confinement claim because this Court does not have jurisdiction to order a prisoner release, even if couched in terms of home confinement or "enlargement."

---

[2] Petitioners attached *Wilson* Order to their notice of supplemental authority on June 11, 2020. Dkt. No. 33-1.

1

1   Further, numerous courts, including the Sixth Circuit Court of Appeals decision in

2   *Wilson v. Williams*, –F.3d–, 2020 WL 3056217 (6th Cir. Jun. 9, 2020) ("*Williams*")

3   which overturned the decision on which Petitioners primarily relied, the Fifth and

4   Eleventh Circuit Court of Appeals, and the overwhelming majority of district courts that

5   have considered this issue in circumstances indistinguishable from those present here,

6   have found no Eighth Amendment violation. Dismissal is also proper because Petitioners

7   admittedly have not exhausted their administrative remedies under the Prison Litigation

8   Reform Act ("PLRA").

9       For the reasons stated herein, and in prior filings, Respondents respectfully request

10   that the Court grant this motion.

11   **II.    RELEVANT PROCEDURAL BACKGROUND**

12       On May 16, 2020, Petitioners filed their initial complaint. Dkt. No. 1. On June 1,

13   2020, Petitioners filed their "Corrected Complaint." Dkt. No. 16. Respondents hereby

14   refer to the "Corrected Complaint" as the "Compl."

15       On June 1, 2020, Petitioners also moved *ex parte* for a TRO requesting what they

16   described as a "process-based remedy for enlargement" of release of prisoners under the

17   Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), and the Attorney

18   General's March 26 and April 3, 2020, memoranda. Dkt. No. 18. Respondents opposed

19   the TRO application on June 5, 2020, and Petitioners replied on June 9, 2020. Dkt. Nos.

20   25, 32. On June 4, 2020, Petitioners moved *ex parte* to certify a provisional class

21   consisting of "all current and future prisoners in post-conviction custody at Lompoc."

22   Dkt. No. 22 at 1:16-18. Respondents opposed this application on June 9, 2020, and

23   Petitioners replied on June 11, 2020. Dkt. Nos. 29, 34.

24       On June 26, 2020, the Court issued a minute order setting Petitioners' *ex parte*

25   applications for hearing on July 7, 2020. Dkt. No. 35.

26

27

28

2

## III.    PETITIONERS' ALLEGATIONS

### A.    Steps Taken at FCC Lompoc to Address COVID-19

Although Petitioners contend that they cannot protect themselves from COVID-19, they admit that testing for COVID-19 has been conducted; inmates and staff were provided with personal protective equipment ("PPE"); inmates were provided with sanitation and cleaning supplies; and inmates testing positive have been separated from those testing negative:

- **Testing**: Compl. ¶ 5 (referencing "recent round of mass testing"); *id.* ¶ 10 (acknowledging that Carror-Torres was tested in late-April 2020); *id.* ¶ 11 (Reed was tested on March 27 or 28, 2020); *id.* ¶ 13 (Garcia tested negative for COVID-19 in early May 2020).

- **PPE**: Compl. ¶ 16 (Fears was given a mask in late April 2020); *id.* ¶ 66 (officers were given gloves by late March 2020); *id.* ¶ 67 (masks were distributed to prison workers and correctional officers around April 2, 2020); *id.* at 60 (Garcia was given a mask in late April 2020); Dkt. No. 18 ("TRO App.") at 29:8-12 (asserting inmates "were initially given 1 paper mask in early April and then 3 cloth masks at the end April"); *id.* at 30:18-19 ("Respondents appear to have attempted to isolate positive prisoners in early April"); *id.* at 49:6-7 (guards were issued PPE).

- **Separation**: Compl. ¶ 6 (alleging that a warehouse has been converted); *id.* ¶ 7 ("makeshift living spaces"); *id.* ¶ 13 (Garcia "moved to makeshift cell block"); *id.* ¶ 47 ("prison authorities began to isolate the infected in a variety of temporary housing units"); *id.* ¶ 50 (warehouses were converted into cells and inmates were not permitted to leave their cells); *id.* ¶ 51 ("effort to segregate Lompoc's infected population from its healthy and recovered population"); *id.* ¶52 (acknowledging "isolation strategy"); *id.* ¶ 58 (Reed placed into solitary confinement while awaiting results from testing); *id.* 53 (Carror-Torres placed in quarantine before returning to cell) (Carror Decl. ¶ 9); *id.* at 56 (Reed moved to dormitory "along with other prisoners who had tested positive for COVID-19) (Perales Decl. ¶ 7).

3

-   **Sanitation And Cleaning Supplies:** Compl. ¶ 65, n. 96 (BOP Director issued a statement that "all cleaning, sanitation, and medical supplies have been inventoried. Ample supplies are on hand and ready to be distributed or moved to any facility as deemed necessary"); *id.* ¶ 74, n. 111 (BOP employees are "expected to perform regular self-monitoring for symptoms, practice social distancing and to disinfect and clean their work spaces"); *id.* at 63 (phones are cleaned between each inmate's call and Brown was able to speak with his attorney) (Wefald Decl. ¶ 5).[3]

Petitioners recognize Respondents' response to COVID-19 included establishing and constructing a Hospital Care Unit.  *Id.* at 26 ¶ 55.

These measures appear to be working as there have been relatively few new positive COVID-19 cases since the filing of the Complaint. FCI Lompoc currently has zero inmates and two staff cases of COVID-19, and USP Lompoc currently has five inmates and zero staff cases of COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed July 2, 2020). Moreover, FCC Lompoc's population has decreased from the total population of 2,680 inmates alleged in the Complaint (¶ 2); FCI Lompoc currently houses 974 inmates, and USP Lompoc, including the camps, currently houses 1,526 inmates (a total of 2,500 inmates). *See* https://www.bop.gov/locations/institutions/lof/ https://www.bop.gov/locations/institutions/lom/ (last accessed July 2, 2020).

### B.    Petitioners Have Not Complied with the BOP's Grievance Process

Petitioners admit that none of them has completed any step of the BOP's administrative-grievance process. *See* TRO App. at 57:5-59:5.

---

[3] Respondents have offered evidence on the extensive efforts they have taken to address COVID-19 within the BOP and at Lompoc, including suspending movement across BOP facilities; testing; enacting screening, isolation, quarantine, and social distancing measures; conducting daily temperature checks; supplying inmates with masks, soap, and hygiene supplies; and screening staff for symptoms and requiring them to use PPE. *See* Dkt. No. 25-1 ("Engleman Decl." ¶¶ 4, 51-86, 88). Currently, FCC Lompoc is in Phase 7 of the BOP's COVID-19 Action Plan, which requires that inmates spend the majority of their time in their housing units, have their meals delivered to their housing units, and are only permitted outside in small groups at prearranged times to exercise and access telephones and computers. *Id.* ¶ 83.

## IV.   LEGAL STANDARDS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A party may seek dismissal of an action for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a factual challenge, the court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although the scope of review is limited to the contents of the complaint, the Court may consider exhibits submitted with the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.9 (9th Cir. 1990).

**V.     ARGUMENT**

    **A.     Petitioners' Habeas Claim Fails as a Matter of Law**

        1.     The Court Lacks Jurisdiction Over Petitioners' Habeas Claim

      As Respondents explained in their opposition to the TRO application, and as the *Wilson* Order recognized, Petitioners' habeas claims are jurisdictionally barred. *See* Dkt. No. 25 ("TRO Opp.") at 45:2-49:19, incorporated herein; *Wilson* Order at 15-19. The Sixth Circuit carved out a narrow exception in the habeas statute where "[t]o the extent petitioners argue the alleged unconstitutional conditions of their confinement can be remedied only be release, 28 U.S.C. § 2241 conferred upon the district court jurisdiction to consider the petition." *Williams*, 2020 WL 3056217, at *5. *Williams*, however, held that "because the district court erred in concluding that petitioners have shown a likelihood of success on the merits of their Eighth Amendment claim . . . the district court abused its discretion in granting the preliminary injunction," and vacated the injunction. *Id.* at *1.

      Other courts, including *Alvarez v. Larose*, 2020 WL 2315807, at *3 (S.D. Cal. May 9, 2020) and *Wragg v. Ortiz*, 2020 WL 2745247, at *18 (D.N.J. May 27, 2020), found that the inmate-petitioners "were not raising cognizable habeas claim because their claims were ultimately premised on the conditions of confinement." *See Wilson* Order at 18. In addition to *Alvarez* and *Wragg*, numerous other district courts have also found that they lack jurisdiction to consider habeas claims within the COVID-19 prison context. Recently, the district of Massachusetts found that the inmate-petitioners' habeas claim was a "false flag operation" because they are "[f]lying the banner of habeas corpus," but are truly seeking a "prisoner release order" as those terms are defined under the PLRA. *Grinis v. Spaulding*, 2020 WL 3097360, at *4 (D. Mass. Jun. 11, 2020); *see also Money v. Pritzker*, 2020 WL 1820660, at *12 (N.D. Ill. Apr. 10, 2020) (if a "mass release order" is what the inmate petitioners seek, then the request "unquestionably could be awarded only by a three-judge court under the PLRA"); *Plata v. Newsom*, 2020 WL 1908776, at *9 (N.D. Cal. Apr. 17, 2020) (district court lacks the authority to issue an order "*to*

*reduce population levels* to safe and sustainable levels in light of the COVID-19 pandemic") (emphasis in original); *Livas v. Myers*, 2020 WL 1939583, at *7 (W.D. La. Apr. 22, 2020) (no habeas jurisdiction because petitioners "do not and cannot contend that their imprisonment or custody itself is unlawful"). Petitioners are making the same arguments here, and their habeas claim must be similarly denied.

These cases were correctly decided because Petitioners' complaints relating to the conditions of confinement are outside of the scope of a writ for habeas corpus. *See Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979) ("the writ of habeas corpus is limited to attacks upon the legality or duration of confinement"); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement," but not to "challeng[e] 'conditions of . . . confinement'") (citations omitted); *Mills v. Schnier*, 2010 WL 55504, at *1 (C.D. Cal. Jan. 7, 2010) (Hon. Consuelo B. Marshall) (a challenge to conditions of confinement "is not properly brought in a habeas corpus proceeding") (citing *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991)).

## 2. Petitioners' Habeas Claims Run Afoul of the BOP's Judicially Unreviewable Authority to Make Inmate Placement Decisions

In addition to bringing an improper habeas claim, Petitioners' demand that the BOP "reduce the prison population" by transferring inmates to home confinement or to other facilities is also not subject to judicial review. *See* Compl. ¶ 4 (emphasis omitted). The BOP has sole discretion over inmate placement decisions. Nothing in the CARES Act limits or proscribes the BOP's sole discretion as to inmate placement decisions, nor does anything in the CARES Act require that the BOP release Petitioners.

The CARES Act does not abridge or limit the BOP's discretion in making placement determinations, including placement to home confinement. 28 U.S.C. § 3624(c) limits the amount of time a prisoner may be placed to home confinement for the shorter of 10 percent of the term of imprisonment or six months. Section 12003 of the CARES Act provides that during the covered emergency period, the BOP Director is

authorized to lengthen the maximum amount of time the Director may place inmates in home confinement under 28 U.S.C. § 3624(c)(2). Thus, the BOP temporarily has the authority to place certain inmates on home confinement under 18 U.S.C. § 3624(c) without regard to the six month/ten percent of term imprisonment time limits found in that section. Pursuant to the expansion of time for home confinement permitted under the CARES Act, the BOP has already exercised its discretion and already placed thousands of inmates on home confinement.[4] That the BOP has not placed as many people as Petitioners would like to home confinement is judicially unreviewable. Petitioners, moreover, may disagree with the BOP's suitability criteria (e.g., PATTERN recidivism scores, the determination that those transferred to home confinement may not be violent or sex offenders), but nothing in the CARES Act limits or restricts the BOP Director's sole discretion to determine whether, when, and for how long to place inmates on home confinement. To the contrary, in passing the CARES Act, Congress preserved the Director's authority to use it "as the Director deems appropriate." CARES Act, PL 116-136, 134 Stat 281 § 12003(b) (Mar. 27, 2020).

Further, no court has the authority to order the BOP to place an inmate to home confinement because 18 U.S.C. §§ 3621(b) and 3625 prohibit a court from reviewing the BOP's decision of where to place an inmate. *Reeb v. Thomas*, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under 18 U.S.C. §§ 3621-25); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) ("[T]he court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons."); 18 U.S.C. § 3621(b) (the BOP "shall designate the place of the prisoner's imprisonment," and that this designation is

---

[4] BOP Director Michael Carvajal testified to Congress that as of June 2, 2020, more than 6,000 inmates were placed on home confinement. *See* Video of Senate Judiciary Hearing, available at https://www.judiciary.senate.gov/meetings/examining-best-practices-for-incarceration-and-detention-during-covid-19. *See also* BOP website (https://www.bop.gov/coronavirus/) reporting that since March 26, 2020, BOP placed an additional 4,617 inmates on home confinement (last accessed July 1, 2020).

"not reviewable by any court"). In *Crum v. Blanckensee*, 2020 WL 3057799, at \*3 (C.D. Cal. Jun. 8, 2020) (Hon. David O. Carter), the district court dismissed an inmate's habeas petition requesting transfer to home confinement in light of the COVID-19 pandemic and the conditions at FCI Lompoc given 18 U.S.C. § 3621's express prohibition against judicial review. In dismissing the habeas petition, the court noted that "the decision whether to place the petitioner in home confinement is within the exclusive province of the BOP and is not subject to judicial review." *Id.*

The Supreme Court has found that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Although the statute does not define "place of imprisonment," a district court presiding over a challenge to COVID-19 conditions at a federal prison recently noted that "[b]oth placement at a Residential Reentry Center ('RRC') (more commonly known as a halfway house) and on home confinement are within the BOP's discretion" under this provision. *Livas*, 2020 WL 1939583 at \*6; *cf. United States v. Yates*, 2019 WL 1779773 at \*4 (D. Kan. Apr. 23, 2019) ("[I]t is BOP – not the courts – who decides whether home detention is appropriate."); *Brown v. Sanders*, 2011 WL 4899919, at \*2 n.3 (C.D. Cal. Sept. 1, 2011) (place of detention "immaterial" under § 3621 given the BOP's sole discretion), aff'd sub. nom *Brown v. Ives*, 543 F. App'x 636 (9th Cir. 2013). Given Section 3621's express prohibition against judicial review and the clear precedent supporting home confinement as a "place of imprisonment," the Court should dismiss Petitioners' habeas claim for this additional reason.

### 3. Petitioners Have Failed to Satisfy the Habeas Exhaustion Requirements

Petitioners argued in their TRO application that their exhaustion of administrative remedies under § 2241 "should be waived" because there was "no administrative process for CARES Act release to home confinement" and they should be excused from exhausting compassionate release requests because "typically the BOP has 30 days to respond to such applications," and FCC Lompoc is purportedly overwhelmed with such

requests. *See* TRO App. at 54:23-57:4 (emphasis omitted). As explained above, the BOP has sole discretion in utilizing the CARES Act; thus, Respondents agree that under the procedures developed by the BOP, Petitioners were not required to submit a request to staff in order to be considered for placement on home confinement under the CARES Act.  However, inmates who are dissatisfied with the BOP's initial home confinement decision are required to exhaust administrative remedies with the BOP.  Moreover, they are not permitted to seek judicial review of BOP home confinement decisions under the CARES Act.

Similarly, as for Petitioners' request for compassionate release, Petitioners were required to exhaust and they should not be permitted to evade the exhaustion requirement when they admittedly did not even try to utilize the administrative process. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (federal inmates are required to exhaust their administrative remedies prior to bringing a petition for a writ of habeas corpus). Federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241. . . . Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on another ground by Fernandez–Vargas v. Gonzales*, 548 U.S. 30 (2006). Thus, while "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

Finally, Petitioners do not contend that they even attempted to utilize any administrative process for relief before filing suit, including under "28 C.F.R. § 542.18 [which] offers inmates an emergency procedure, where, if the request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond no later than the third calendar day after filing." *Nellson v. Barnhart*, 2020 WL 1890670, at *4 (D. Col. Apr. 16, 2020) (internal quotations omitted and capitalization normalized). Because Petitioners did not even attempt to utilize any administrative process, their habeas claims fail for the additional reason for failure to

exhaust. *See id.* at *4-5 (noting that the Supreme Court "defines availability as some relief, not all relief, that an inmate seeks" and because the plaintiff "does not argue that he would be able to receive no relief whatsoever through the administrative grievance process but, rather, that the process would not be able to institute all the relief he requests immediately" he has failed to exhaust administrative remedies before seeking judicial relief) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)).

**B.    Petitioners' Non-Habeas Eighth Amendment Conditions-of-Confinement Claim Should Be Dismissed**

    1.    <u>Petitioners' Allegations Do Not Support a Finding of Deliberate Indifference</u>

        *a.    Standard for Deliberate Indifference*

In a conditions-of-confinement case, a prison official violates the prohibition against "cruel and unusual punishments," U.S. Const. Amend. VIII, "only when two requirements"—one objective, the other subjective—"are met." *Farmer v. Brennan*, 511 U.S. 825, 834, 846 (1994). To satisfy the Eighth Amendment standards, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (citations omitted). Inmates alleging Eighth Amendment violations based on unsafe prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of harm. *Id.* at 834. Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Id.* at 838-40. It is "only 'the unnecessary and wanton infliction of pain' … [which] constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 612, 619 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)); *see also Govind v. Cash*, 2013 WL 5220809, at *3 (C.D. Cal. Sept. 10, 2013) (Hon. Consuelo B. Marshall) ("Generally, a difference of opinion between an inmate and

medical staff as to the nature of appropriate medical treatment is insufficient, as a matter of law, to constitute deliberate indifference.") (citing Ninth Circuit cases).

"[I]f a particular condition or restriction … is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). "[T]he effective management of a detention facility … is a valid objective that may justify the imposition of conditions" that are discomforting and restrictive, without the indifference that such restrictions are intended as punishment. *Id.* at 450. Moreover, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

"[A] prison official violates the Eighth Amendment only when two requirements are met" – both and objective and subjective component. *See Farmer*, 511 U.S. at 834. The objective component of an Eighth Amendment claim requires that the deprivation must be "sufficiently serious." *Id.* at 833. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' … are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298. The inmate must show that he is incarcerated under conditions posing a substantial risk of harm. *See Farmer*, 511 U.S. at 837.

The subjective component relates to the defendant's state of mind, and requires deliberate indifference. *See Farmer*, 511 U.S. at 834. To satisfy this requirement, Petitioners must show that Respondents "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. To satisfy this standard, the prison official must have a "sufficiently culpable state of mind." *Id.* at 833. This test is subjective, meaning "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

>    b.    *Petitioners Cannot Demonstrate that They Are Subject to an*
>          *Unreasonable Risk of Harm*

The "objective prong" of the Eighth Amendment requires a showing that an inmate has been deprived "of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. When this deprivation involves a risk of harm, this prong requires the inmate to show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Petitioners cannot show that the BOP is depriving them of the "minimal civilized measure of life's necessities" or "violating contemporary standards of decency" in addressing the risk of harm to inmates that COVID-19 presents. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety." *Farmer*, 511 U.S. at 844. The current state of the COVID-19 pandemic exposes everyone—prisoner and non-prisoner alike—to the risk of falling ill. The Complaint acknowledges in several places that FCI Lompoc has tested every single inmate, and that FCC Lompoc has provided medical care and medication to prisoners, has taken steps to increase the ability for inmates to practice social distancing, has provided inmates with masks and cleaning supplies, has distributed masks to staff, has taken cohorting and quarantine measures, and has considered inmates for home confinement under the CARES Act and has in fact placed inmates on home confinement. *See* § III.A. *supra.* That these measures have not been done to Petitioners' satisfaction or that they have issues with how those measures were undertaken is insufficient to show deliberate indifference as the Fifth Circuit held in *Valentine v. Collier*, 956 F.3d 797, 801-02 (5th Cir. 2020) (compliance with CDC recommendations, including "access to soap, tissues, gloves, masks, regular cleaning, signage and education, quarantine of new prisoners, and social distancing during transport" satisfies the Eighth Amendment). *See also Chunn v. Edge*, 2020 WL 3055669,

at *24 (E.D.N.Y. Jun. 9, 2020) (petitioners could not meet the objective component of the Eighth Amendment test "given the measures that prison officials have instituted to address COVID-19 and the best available evidence regarding those measures' results"); *Grinis v. Spaulding*, 2020 WL 2300313, at *3 (May 8, 2020 D. Mass.) ("These affirmative steps may or may not be the best possible response to the threat of COVID-19 within the institution, but they undermine an argument that the respondents have been actionably deliberately indifferent to the health risks of inmates.").

2.   Petitioners Cannot Satisfy the Subjective Test for Deliberate Indifference

Petitioners also fail to satisfy the subjective prong of their Eighth Amendment claim, which requires them to show that Respondents "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This test is subjective, meaning "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. The Eighth Amendment does not require perfect results. *See id. at* 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted").

To establish an entitlement to injunctive relief, Petitioners must show that BOP officials currently are acting with deliberate indifference. Where a prisoner "seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, the subjective factor . . . should be determined in light of the prison authorities' current attitudes and conduct[.]" *Id.* at 845 (internal quotation marks omitted). Thus, Petitioners must show that today, Respondents are recklessly disregarding an excessive risk to Petitioners' safety, and that they will continue to do so "into the future." *Id.* The Fifth, Sixth and Eleventh Circuits found no Eighth Amendment violations in substantially similar circumstances as to those here involving COVID-19 at correctional facilities, and reversed district court decisions granting injunctive relief.

14

In *Swain v. Junior*, –F.3d–, 2020 WL 3167628, at *6 (11th Cir. Jun. 15, 2020), the district court issued an injunction finding that prison officials were deliberately indifferent because it was not possible for inmates to be at least six feet apart at all times and because the rate of COVID-19 infections had increased. The Eleventh Circuit reversed the district court, noting that, with respect to the infection rate at the facility, resulting harm cannot alone establish a culpable state of mind. *Id.* at *7. It found no Eighth Amendment liability if prison officials respond reasonably to a risk to inmate health, "*even if the harm ultimately was not averted.*" *Id.* (quoting *Farmer*, 511 U.S. at 844) (emphasis in original). The Eleventh Circuit found that where prison officials "took numerous *other* measures—besides social distancing—to mitigate the spread of the virus," including requiring the use of face masks, screening of staff into the facility, daily temperature screening, suspending outside visitation, and providing disinfecting and hygiene supplies to all inmates, prison officials could not be found liable because they could not meet the subjective component under the Eighth Amendment. *Id.* at *8 (emphasis in original).

In *Williams*, the Sixth Circuit also vacated the district court's injunction and held that petitioners could not satisfy the subjective prong of an Eighth Amendment violation where BOP had responded reasonably to the risk of COVID-19 at FCI Elkton by implementing screening, testing, isolation, and hygiene measures, limiting inmate movement, and providing inmates and staff with masks and PPE. 2020 WL 3056217, at *7-8. *Williams* noted that the Fifth and Eleventh Circuits had already found similar measures to constitute a reasonable response to COVID-19 such that there was no tenable Eighth Amendment claim. *Id.* at *9 (citing *Swain* (per curiam); *Valentine* (per curiam); *Marlowe v. LeBlanc*, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)).

Recently, the Eastern District of New York also found that petitioners could not meet the subjective component of the Eighth Amendment test because the BOP has "imposed dozens of measures, such as (i) enhancing intake screening procedures for all inmates and staff, (ii) providing soap and other cleaning products to inmates at no cost,

(iii) increasing cleaning of common areas and shared items, (iv) isolating symptomatic inmates, (v) broadly distributing and using PPE to prevent transmission of the virus, and (vi) modifying operations throughout the facility to facilitate social distancing to the greatest extent possible and abate the risk of spread . . . belie any suggestion that prison officials 'have turned the kind of blind eye and deaf ear to a known problem that would indicate' deliberate indifference." *Chunn*, 2020 WL 3055669, at *26 (quoting *Money*, 2020 WL 1820660, at *18; *Swain*, 958 F.3d at 1090)).

Similarly, Petitioners here cannot satisfy the subjective requirement of an Eighth Amendment conditions-of-confinement claim. BOP officials have not acted with deliberate indifference to the risk that COVID-19 poses to inmate populations; rather, they have taken aggressive and appropriate measures to abate that risk at FCC Lompoc. In the Complaint, Petitioners acknowledge that mass testing has been done, that inmates are provided with masks and disinfectant, and that FCC Lompoc has taken steps to cohort inmates and to provide them with more space. Although Petitioners may have concerns about the implementation about these measures (e.g., they complain that isolation of infected people occurred for a time in the Special Housing Unit and staff were not issued masks until April 2, 2020), it does not rise to the level of deliberate indifference. *See Wragg*, 2020 WL 2745247, at *21 (no Eighth Amendment violation because there is "no evidence of Respondents' liable state of mind" and noting "physical distancing is not possible in a prison setting, as Petitioners urge, does not an Eighth Amendment claim make and, as such, Petitioners are not likely to succeed on the merits"); *Nellson*, 2020 WL 1890670, at *6 ("Assuming that the objective component [of deliberate indifference] is met, and that prison officials know of the risk of COVID-19, plaintiff has not demonstrated that defendants have disregarded that risk."); *Money*, 2020 WL 1820660, at *18 (prisoner petitioners have "no chance of success" as to deliberate indifference because of the measures taken by the Illinois Department of Corrections).

As such, Petitioners cannot succeed on their Eighth Amendment claim given the actions taken by the BOP at FCC Lompoc. *See Farmer*, 511 U.S. at 845 ("[P]rison

officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Here, Respondents acted with a high degree of care, and certainly were not acting with deliberate indifference that would transform conditions at FCC Lompoc into an Eighth Amendment "punishment." *See Wilson v. Seiter*, 501 U.S. at 298, 300.

3.   Petitioners Have Failed to Satisfy the PLRA's Exhaustion Requirements

The Supreme Court was clear when it held that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 (2001). Respondents do not have the burden of demonstrating the availability of administrative remedies where Petitioners have not submitted a single fact that could support any claim that they attempted to pursue administrative remedies but were thwarted. *See id.* The PLRA's exhaustion requirement applies to Petitioners' Eighth Amendment claims concerning prison conditions, which requires an inmate, *before* filing suit, to exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the exhaustion requirement applies to all suits regarding prison life); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("unexhausted claims cannot be brought in court"); *Farmer*, 511 U.S. at 847 (in cases seeking injunctive relief to address "current" prison conditions, inmates are not "free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court"); *see also Govind*, 2013 WL 5220809, at *7 ("A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies.").

Indeed, the Eleventh Circuit affirmed the PLRA exhaustion requirement within the COVID-19 context, holding: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Swain*, 2020 WL 3167628, at *11 (quoting *Jones*, 549 U.S. at 211); *see also Wragg v. Ortiz*, 2020 WL 3074026, at *2 (D.N.J. Jun. 10, 2020) ("the Court takes this opportunity once again

1  to reiterate its view that a vulnerable inmate who is truly at risk is able to pursue the

2  statutory avenues of relief available to him").

3      Had Petitioners attempted to utilize the administrative process, the BOP could

4  have attempted to fix the problems for which they now demand injunctive relief, *i.e.*, if

5  they had requested medical service, additional masks, hand sanitizer, etc. *Woodford v.*

6  *Ngo*, 548 U.S. 81, 89 (2006) (exhaustion provides the BOP with "an opportunity to

7  correct its own mistakes with respect to the programs it administers before it is haled into

8  federal court"). The fact that Petitioners did not even attempt to exhaust administrative

9  remedies, or present facts that any such attempt would have been futile is an additional

10  reason why their conditions-of-confinement claim should be dismissed. If Petitioners are

11  given leave to amend, they must state facts supporting their arguments that exhaustion

12  would be "futile due to the urgency of the COVID-19 pandemic" and administrative

13  remedies have been made "effectively unavailable at this time" in order to satisfy *Iqbal*'s

14  pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Valentine*, 956 F.3d at 804 (suit

15  "premature" where inmates did not utilize the administrative process when they were

16  "required to exhaust").

17  **VI.   CONCLUSION**

18      For the foregoing reasons, the Respondents respectfully request that the Court

19  dismiss Petitioners' Complaint.

20

21

22

23

24

25

26

27

28

Dated: July 2, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


*/s/ Keith M. Staub*
KEITH M. STAUB
CHUNG H. HAN
JASMIN YANG
DAMON A. THAYER
PAUL B. GREEN
Assistant United States Attorney
Attorneys for Respondents

19