Terry W. Bird – Bar No. 49038
  tbird@birdmarella.com
Dorothy Wolpert – Bar No. 73213
  dwolpert@birdmarella.com
*Naeun Rim – Bar No. 263558
  nrim@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
  sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
  kshin@birdmarella.com
Oliver Rocos – Bar No. 319059
  orocos@birdmarella.com
Christopher J. Lee – Bar No. 322140
  clee@birdmarella.com
Jimmy Threatt – Bar No. 325317
  jthreatt@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Peter J. Eliasberg – Bar No. 189110
  peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
  pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Donald Specter – Bar No. 83925
  dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
  snorman@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Attorneys for Plaintiff-Petitioners

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

YONNEDIL CARROR TORRES;
VINCENT REED; FELIX SAMUEL
GARCIA; ANDRE BROWN; and
SHAWN L. FEARS, individually and
on behalf of all others similarly situated,

    Plaintiff-Petitioners,

    vs.

LOUIS MILUSNIC, in his capacity as
Warden of Lompoc; and MICHAEL
CARVAJAL, in his capacity as Director
of the Bureau of Prisons,

    Defendant-Respondents.

CASE NO. 2:20-cv-04450-CBM-PVCx

**PLAINTIFF-PETITIONERS'
OPPOSITION TO RESPONDENTS'
MOTION TO DISMISS UNDER
FED. R. CIV. P. 12(b)(1) AND
12(b)(6)**

Hearing Date:  August 4, 2020
Hearing Time:  10:00 a.m.
Courtroom:    8B

Assigned to Hon. Consuelo B. Marshall
Courtroom 8B

# <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ................................................................................. 1

II.  LEGAL STANDARD ......................................................................... 2

III.  ARGUMENT .................................................................................... 3

  A.  This Court Already Has Rejected Respondents' Arguments ............... 3

  B.  Petitioners Are Entitled To Their Requested Relief Through A Habeas Claim ............................................................................... 5

    1.  This Court Has Jurisdiction Over Petitioners' Habeas Claim ................................................................................. 5

    2.  This Court Has Authority To Grant The Requested Relief ......... 7

    3.  Respondents' Own Actions Warrant The Waiver Of The Exhaustion Of Administrative Remedies ................................. 12

  C.  Petitioners Have Properly Alleged A Direct Claim For Injunctive And Declaratory Relief Under The Eighth Amendment ..................... 15

    1.  Petitioners Have Sufficiently Alleged Respondents' Deliberate Indifference ........................................................ 15

      a.  Petitioners Have Alleged They Are Subject To An Objective, Substantial Risk Of Serious Harm ................. 15

      b.  Respondents' Response To The Outbreak Demonstrates Their Subjective Deliberate Indifference ..................................................................... 18

    2.  Petitioners Have Sufficiently Pled Exhaustion Of Administrative Remedies ...................................................... 24

IV.  CONCLUSION ............................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................... 2

*Avery v. Paramo*
   2015 WL 4923820 (S.D. Cal. Aug. 18, 2015)............................ 24

*Badea v. Cox*
   931 F.2d 573 (9th Cir. 1991) ...................................................... 5

*Basank v. Decker*
   2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020)............................ 17

*Brown v. Plata*
   563 U.S. 493 (2011) .................................................................... 9

*Calderon v. Barr*
   2020 WL 2394287 (E.D. Cal. May 12, 2020)............................. 6

*Cameron v. Bouchard*
   2020 WL 2569868 (E.D. Mich., May 21, 2020) (reversed on other
   grounds) ...........................................................................6, 7, 12

*Chunn v. Edge*
   2020 WL 3055669 (E.D.N.Y. June 9, 2020)........................22, 23

*Crawford v. Bell*
   599 F.2d 890 (9th Cir. 1979) ...................................................... 5

*Estelle v. Gamble*
   429 U.S. 97 (1976) .................................................................... 15

*Farmer v. Brennan*
   511 U.S. 825 ........................................................... 9, 15, 18

*Fraihat v. U.S. Immigration and Customs Enforcement*
   2020 WL 1932570 (C.D. Cal. April 20, 2020)........................... 17

*Gonzalez v. Arizona*
   677 F.3d 383 (9th Cir. 2012) (en banc) ................................................. 4

*Grinis v. Spaulding*
   2020 WL 2300313 (D. Mass. May 8, 2020) ...................................... 23

*Helling v. McKinney*
   509 U.S. 25 (1993) ...................................................................... 15, 16

*Hernandez v. Campbell*
   204 F.3d 861 (9th Cir. 2000) .............................................................. 5

*Hernandez v. County of Monterey*
   110 F. Supp. 3d 929 (N.D. Cal. 2015).............................................. 21

*Hernandez v. Sessions*
   872 F.3d 976 (9th Cir. 2017) ............................................................ 12

*Jeffries v. Block*
   940 F. Supp. 1509 (C.D. Cal. 1996) ................................................ 16

*Jolly v. Coughlin*
   76 F.3d 468 (2d Cir. 1996) ............................................................... 16

*Jones v. Bock*
   549 U.S. 199 (2007) ......................................................................... 25

*Laing v. Ashcroft*
   370 F.3d 994 (9th Cir. 2004) ............................................................ 12

*Livas v. Meyers*
   2020 WL 1939583 (W.D. La., Apr. 22, 2020) ................................... 8

*Martinez-Brooks v. Easter*
   2020 WL 2405350 (D. Conn. May 12, 2020) ..................... 6, 7, 11, 17

*Mills v. Schnier*
   2010 WL 55504 (C.D. Cal., Jan. 7, 2010).......................................... 5

*Navarro v. Block*
   250 F.3d 729 (9th Cir. 2001) .............................................................. 2

*Nunez v. Duncan*
   591 F.3d 1217 (9th Cir. 2010) .......................................................... 24

iii

*Plata v. Newsom*
    2020 WL 1908776 (N.D. Cal. Apr. 17, 2020)........................................................5

*Preiser v. Rodriguez*
    411 U.S. 475 (1973) ...............................................................................................5

*Roberts v. Corrothers*
    812 F.2d 1173 (9th Cir. 1987) ...............................................................................2

*Ross v. Blake*
    136 S. Ct. 1850 (2016).........................................................................................24

*Sapp v. Kimbrell*
    623 F.3d 813 (9th Cir. 2010) ...............................................................................24

*Swain v. Junior*
    2020 WL 3167628 (11th Cir. Jun. 15, 2020) ......................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308 (2007) ...............................................................................................2

*U.S. v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) ..................................................................................2

*United States v. Connell*
    2020 WL 2315858 (N.D. Cal. May 8, 2020) ...................................1, 14, 17, 23

*United States v. Pippin*
    2020 WL 2602140 (W.D. Washington May 20, 2020)............................1, 14, 17

*Valentine v. Collier*
    140 S. Ct. 1598 (2020).............................................................................14, 22, 25

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) ...............................................................................2

*Wilson v. Williams*
    961 F.3d 829 (6th Cir. 2020) ............................................................................5, 6

**Statutes**

18 U.S.C. § 3626(g)(2) ...............................................................................................6

28 U.S.C.§ 2241.......................................................................................5, 6, 7, 12

28 U.S. C. § 2243..................................................................................9, 12

42 U.S.C. § 1997e(a) ..................................................................................24

**Other Authorities**

Federal Rule of Evidence 201....................................................................13

Rule 12(b)(1)................................................................................................2

Rule 12(b)(6)................................................................................................2

OPPOSITION TO MOTION TO DISMISS

# I.    __INTRODUCTION__

FCI Lompoc is in the midst of a "catastrophic COVID-19 outbreak" that places prisoners' lives "in jeopardy." *United States v. Pippin,* 2020 WL 2602140 at * 2 (W.D. Washington May 20, 2020).  So "dire" is the situation at FCI Lompoc, that it is one of "worst coronavirus hotspots in the nation." *United States v. Connell*, 2020 WL 2315858 at *6 (N.D. Cal. May 8, 2020).  In order to obtain swift relief from those conditions, on June 1, 2020, Petitioners moved for a preliminary injunction.[1]  The briefing for that motion was extensive, comprising over 160 pages of argument and 630 pages of declarations and exhibits in addition to the extensive complaint.  Ignoring that briefing, and the fact that this court scheduled oral argument, on July 2, 2020 Respondents moved to dismiss Petitioners' complaint based on *materially identical arguments*.  The very filing of this motion evidences their refusal to acknowledge the scale of the crisis at Lompoc, their deliberate indifference to Petitioners' suffering, and an intent to tangle Petitioners in procedural delay, rather than focusing on actually improving conditions within the walls of Lompoc.[2]

On July 14, 2020, the Court granted Petitioners' motion for a preliminary injunction, rejecting Respondents' arguments asserted in that motion and in their motion to dismiss.  (Dkt. 45 [Order].)  In particular, this Court held that it had

---

[1]    Petitioners' motion originally was styled as an application for a temporary restraining order, but was converted into a motion for a preliminary injunction on July 9, 2020, with the consent of the parties.  (Dkt. 44.)

[2]    While Respondents have found time to file this repetitive motion, they have repeatedly delayed and cancelled Petitioners' requests to meet and confer on discovery.  While Respondents claim they have produced thousands of pages of discovery, they fail to note that the discovery produced thus far has been limited to general BOP policies and memoranda and the medical records of the named petitioners.  Respondents' bad faith strategy of delay only serves to prolong the ongoing constitutional violations and should be rejected.

jurisdiction over Petitioners' habeas claim, that it had authority to grant the relief requested, that Petitioners face a substantial risk of harm at Lompoc, that Respondents are deliberately indifferent to that harm, and that Respondents' own actions excuse Petitioners from having to exhaust administrative remedies before seeking judicial relief.  (*Id.*)  Having necessarily rejected Respondents' arguments made in connection with the preliminary injunction, this Court should reject Respondents' identical arguments made in their motion to dismiss.

## II.   <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The complaint must be "plausible on its face" such that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss, the court must accept all non-conclusory allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.  *Id.*  The court also must consider those facts contained in "documents incorporated into the complaint by reference," as well as matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" when deciding a motion to dismiss).

In contrast to a motion under Rule 12(b)(6), a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). Where, however, jurisdiction is dependent upon the merits, a court must "assume the truth of allegations in a complaint or habeas petition, unless controverted by undisputed facts in the record."  *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987).

2

## III.   **ARGUMENT**

### A.   **This Court Already Has Rejected Respondents' Arguments**

Respondents filed this motion after the parties had fully briefed Petitioners' motion for a preliminary injunction, but before it had been decided.[3]  Since the arguments Respondents make in this motion are materially identical to those made in opposition to Petitioners' motion for a preliminary injunction, this motion was substantively duplicative and unnecessary.[4]

On July 14, 2020, this Court granted Petitioners a preliminary injunction pursuant to their habeas claim, having found that it had jurisdiction over that claim, that Petitioners are subject to a substantial risk of serious harm, that Respondents have been deliberately indifferent to that risk of harm, and that Petitioners have met their burden of showing that exhaustion of administrative remedies is excused under the circumstances alleged in the Complaint.  (Dkt. 45 [Order].)  Specifically, this Court found that Petitioners had shown a likelihood of success on their claims because, among other things:

- The Court has jurisdiction over Petitioners' habeas claim.  (*Id.* at 14 ("Because Petitioners contend there are no set of conditions of confinement that could be constitutional, the Court finds Petitioners challenge the fact of their confinement.").)

- The Court has authority to order Respondents to review prisoners at Lompoc for eligibility for home confinement and compassionate release.  (*Id.* at 39 ("The Court orders Respondents to make a prompt determination of the eligibility of home confinement and

---

[3]   At the Court's invitation, Respondents continued to file additional materials even after the July 7, 2020 oral argument on Petitioners' preliminary injunction motion.

[4]   *See* Dkt. 18 at 42-61; Dkt. 25 at 45-50, 55-59; Dkt. 32 at 10-23, 29-30 (Respondents' and Petitioners' materially identical arguments related to Petitioners' habeas claim); Dkt. 18 at 42-59; Dkt. 25 at 51-59; Dkt. 32 at 15-23, 29-30 (Respondents and Petitioners' materially identical arguments with respect to Petitioners' conditions of confinement claim).

compassionate release as to Lompoc inmates who are at higher risk for severe illness or death from COVID-19.").)

- At this preliminary stage, Petitioners have shown they are subject to a substantial risk of serious harm.  (*Id.* at 18 ("Accordingly, Petitioners show they are at substantial risk of exposure to COVID-19, which is inconsistent with contemporary standards of human decency.").)

- At this preliminary stage, Petitioners have shown Respondents are deliberately indifferent to Petitioners' risk of substantial harm.  (*Id.* at 34 ("the evidence demonstrates Respondents have ignored, and therefore have likely been deliberately indifferent, to the known urgency to consider inmates for home confinement, particularly those most vulnerable to severe illness or death if they contract COVID-19, in failing to make prompt and meaningful use of home confinement and disregarding inmates' age and medical conditions in determining eligibility for home confinement"; *see also id.* at 37-38 ("Respondents' failure to take reasonable measures to promptly review and grant requests for compassionate release or move for compassionate release on behalf of Lompoc inmates to reduce the inmate population at Lompoc further demonstrates Respondents' deliberate indifference to inmates' risk of severe illness or death from COVID-19.").)

- Petitioners have shown that the requirement to exhaust administrative remedies should be waived.  (*Id.* at 43 ("[T]he Court finds Petitioners meet their burden of showing exhaustion is excused because administrative remedies are not available.").)

Since this Court granted a preliminary injunction over Respondents' arguments that are substantively identical to those contained in their motion to dismiss, the motion must be denied.  *Gonzalez v. Arizona*, 677 F.3d 383, 390 fn. 4 (9th Cir. 2012) (en banc) ("Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case.").  As this is a motion to dismiss, Respondents plainly cannot—and do not—offer any evidence that could warrant a different result.

Notwithstanding the above, and for the sake of completeness, Petitioners

1   respond substantively to Respondents motion as follows.[5]

2    **B.** **Petitioners Are Entitled To Their Requested Relief Through A**

3      **Habeas Claim**

4      **1.** **This Court Has Jurisdiction Over Petitioners' Habeas Claim**

5     Ninth Circuit precedent provides that a habeas corpus petition brought

6   pursuant to Section 2241 is the proper vehicle by which a federal prisoner can

7   challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S.

8   475, 498–99 (1973).  Put another way, where a prisoner "challenge[s] the manner,

9   location, or conditions of a sentence's execution," it is appropriate to do so pursuant

10  to Section 2241.  *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)

11  (citations omitted).

12    Applying the law in this way, courts across the country have held that

13  Petitioners have properly stated a claim for relief under section 2241 where they

14  assert that release is the only remedy to unconstitutional conditions of confinement.[6]

15  *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) ("To the extent

16  petitioners argue the alleged unconstitutional conditions of their confinement can be

17  remedied only by release, 28 U.S.C. § 2241 conferred upon the district court

18

19   ―――――――――――――

19  [5] Petitioners incorporate herein by reference those arguments made with respect to

20  the preliminary injunction and expressly do not waive any of them.

21  [6] None of the four decisions Respondent cite from within the Ninth Circuit support

22  their position that Petitioners cannot assert a habeas claim in these circumstances.

23  *Plata v. Newsom*, 2020 WL 1908776 (N.D. Cal. Apr. 17, 2020), did not concern a

23  habeas petition at all.  Unlike Petitioners, the plaintiff in *Crawford v. Bell*, 599 F.2d

24  890, 891 (9th Cir. 1979), "d[id] not challenge the legality of his imprisonment" on

24  the basis that the conditions of his confinement were unconstitutional.  The court in

25  *Badea v. Cox*, 931 F.2d 573, 574-75 (9th Cir. 1991), did not resolve the disputed

26  issue of whether the plaintiff could assert his claim under section 2441, but instead

26  dismissed the appeal as moot.  Finally, in *Mills v. Schnier*, 2010 WL 55504, at *1

27  (C.D. Cal., Jan. 7, 2010), the plaintiff's claim was summarily dismissed on the basis

28  he had not exhausted administrative remedies.

jurisdiction to consider the petition."); *Martinez-Brooks,* 2020 WL 2405350, at *16–17 (concluding that a habeas petition similar to Petitioners' that sought release on behalf of a class of medically vulnerable prisoners was properly brought under section 2241 because it challenged "the fact or duration of confinement" by claiming that "no constitutional conditions of confinement are possible under the circumstances"); *Cameron v. Bouchard*, 2020 WL 2569868, *13 (E.D. Mich., May 21, 2020) (reversed on other grounds) (habeas petition proper basis for relief where petitioners challenged fact of confinement by claiming no set of conditions would be constitutionally sufficient); *Calderon v. Barr*, 2020 WL 2394287, at *2 (E.D. Cal. May 12, 2020) ("[t]he vast majority of cases in the lower courts dealing with the COVID-19 pandemic as it affects detention facilities more or less assume jurisdiction is appropriate under [section 2241])."  As a habeas petition, this claim is not subject to the Prison Litigation Reform Act ("PLRA") and its procedural hurdles.  *See* 18 U.S.C. § 3626(g)(2) (PLRA "does not include habeas corpus proceedings challenging the fact or duration of confinement in prison").

In this action, just as in *Wilson*, *Martinez-Brooks*, and *Cameron*, Petitioners are alleging that the conditions of confinement at Lompoc are so unconstitutional that the only remedy for the constitutional violation would be to change the place of confinement of at least some petitioners, particularly those who are medically vulnerable.[7]  (Dkt. 16 [Compl.] at ¶ 110 ("Petitioners contend that the fact of their confinement in prison itself amounts to an Eighth Amendment violation under these circumstances, and nothing short of an order ending their confinement at Lompoc

---

[7]  As explained during the July 7, 2020 hearing, habeas relief can be granted in the form of a release from the current conditions of confinement, as opposed to the release from custody entirely.  *See also Wilson*, 961 F.3d at 838-39 (habeas relief could not include order transferring prisoners from one BOP facility to another, but could include ordering evaluation of prisoners' eligibility for transfer outside of BOP facilities, including to home confinement).

will alleviate that violation.").)  This amounts to a constitutional challenge to the fact of confinement itself, bringing the remedy sought within the Court's authority to provide habeas relief under section 2241.  Respondents' refusal to make reasonable use of their statutory authority to temporarily transfer the custody of as many non-violent prisoners with release plans to home confinement as possible and accelerate their compassionate release determinations in order to reduce prison density has exacerbated life threatening conditions at Lompoc and prevented proper sanitation and social distancing to such a degree that nothing short of removal from confinement will remedy the constitutional violation.  Accordingly, this Court has jurisdiction over Petitioners' habeas claim.[8]

> **2.     This Court Has Authority To Grant The Requested Relief**

The relief Petitioners seek through their habeas claim is not the judicial grant of home confinement or compassionate release, nor is it the judicial evaluation of every individual prisoner at Lompoc for such relief.  Instead, Petitioners seek an order requiring *Respondents* to comply with the Eighth Amendment by exercising their authority under the CARES Act, the First Step Act, and the Attorney General's April 3, 2020 Memorandum (the "April 3 Memo") to determine each prisoner's suitability for release on an accelerated schedule based primarily on public health and safety factors.  Specifically, Petitioners seek "a highly expedited process—for completion within no more than 48 hours—for [BOP] to use procedures available under the law to review members of the Class for enlargement of custody . . . in

---

[8]   On June 8, 2020, the Honorable Michael W. Fitzgerald of the Central District of California departed from *Martinez-Brooks*, *Cameron*, and the Sixth Circuit, and held, in an action materially similar to this one, that the remedy Petitioners seek is unavailable in a habeas petition.  (Dkt. 28-1.)  Respectfully, that ruling is not binding on this Court, and Judge Fitzgerald certified his decision for immediate appeal on the basis that there "is substantial ground for difference of opinion, to say the least," on that issue.  (*Id.* at 21.)

1   order to reduce the density of the prison population to a number that allows for the

2   implementation of appropriate measures to prevent the spread of COVID-19."  (Dkt.

3   16 [Compl.] at 46:13-19.)

4          As they did in their opposition to the TRO, Respondents have ignored the

5   plain words of Petitioners' complaint and misrepresented the relief sought in order

6   to make it appear as if this Court is powerless to cure a violation of the Eighth

7   Amendment.[9]  (Dkt. 36 [Mot.] at 7:18-23 (claiming "[t]he BOP has sole discretion

8   over inmate placement decisions" and that such decisions are not "subject to judicial

9   review").)  This mischaracterization of the relief Petitioners seek should be

10  disregarded.  Since Respondents do not even address the relief Petitioners actually

11  seek, Respondents' motion plainly cannot succeed on the basis that this Court lacks

12  authority to grant it.  Moreover, Respondents are wrong to suggest that the Court

13  cannot review a BOP placement decision if that designation itself violates the Eighth

14  Amendment—the cases Respondents cite merely stand for the fact that the Court has

15  no statutory authority to review a BOP placement decision, not that the Court cannot

16  review placement decisions in an *Eighth Amendment* challenge to BOP

17  designation.[10]  If the placement decision itself would amount to cruel and unusual

18  punishment, the Court not only has the authority to address the constitutional

19  violation, but it *must* do so and employ its equitable powers to provide what relief is

20

21  [9]   Respondents asserted in opposition to the TRO that Petitioners were "asking the
    Court to release or transfer to home confinement convicted criminals and to oversee
22  the running of FCC Lompoc" by installing itself "as 'a de facto 'super' warden'"
23  that will "usurp executive functions entrusted to the BOP by Congress."  (Dkt. 25 at
    4:5-11.)  Petitioners extensively debunked this claim in their reply in support of the
24  TRO.  (Dkt. 32 at 10:16-12:5.)
25
26  [10]  The court in *Livas v. Meyers*, 2020 WL 1939583 at *8 (W.D. La., Apr. 22, 2020)
    did consider a situation in which plaintiffs challenged the BOP's placement decision
27  on the basis they violated the Eighth Amendment, but dismissed that claim on the
28  basis it lacked jurisdiction to adjudicate it.

possible.  Indeed, the seminal case on the standard for deliberate indifference, *Farmer v. Brennan*, 511 U.S. 825, 830-31(1994), involved a transgender prisoner's challenge to being designated to a United States Penitentiary, where she was more likely to be subject to violence and rape.  Far from holding that courts could not review prison designation decisions, the Court instead reversed the appellate court's decision affirming the district court's granting of summary judgment in favor of prison officials and remanded the case for further proceedings, clearly signaling that it was possible for the designation to amount to an Eighth Amendment violation.  *Id*. at 848-49.

Even assuming, arguendo, that Respondents had accurately characterized the relief Petitioners seek, their argument would still fail.  The Supreme Court has held that where the "government fails to fulfill [its] obligation [to provide adequate medical care], *the courts have a responsibility to remedy the resulting Eighth Amendment violation*."  *Brown v. Plata*, 563 U.S. 493, 511 (2011) (emphasis added).  While Courts should be sensitive to principles of federalism and separation of powers and give the BOP some deference, courts "nevertheless must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners."  *Id.* (quotations, citations omitted).  In short, courts "may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration."  *Id.* (quotations, citations omitted).

When, as here, the Eighth Amendment violation is brought before a court by way of habeas petition, section 2243 grants the court broad discretion and authority to "summarily hear and determine the facts and *dispose of the matter as law and justice require.*"  28 U.S.C. § 2243 (emphasis added).  An order requiring Respondents to exercise their discretion and consider non-violent prisoners with viable release plans for home confinement and accelerate compassionate release decisions, consistent with the laws and directives of Congress and the Attorney

General, plainly falls within those broad remedial powers.

As set out in the Complaint, Attorney General Barr's March 26, 2020 Memorandum directed Respondents to use their powers to transfer appropriate inmates to home confinement in order to reduce the density of overcrowded prisons known to have medically vulnerable prisoners.[11]  (Dkt. 16 [Compl.] at ¶¶ 5, 75-76.) The March 27, 2020 CARES Act was intended to streamline that process, and the Attorney General's April 3 Memo more explicitly directed the BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates," specifically stating that those eligible for review for home confinement included "all at-risk inmates—not only those who were previously eligible for transfer."[12]  The April 3 Memo further explained that the factors of the March 26 Memo should be considered *guidance* rather than rigid criteria for eligibility for home confinement, and that all prisoners "with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations."  Accordingly, from at least April 3, 2020, Congress and the Attorney General obligated the BOP to review for transfer to home confinement "all at risk inmates" in order to combat the threat of COVID-19 within Lompoc.

The Complaint alleges that far from reviewing "all at risk inmates" for home confinement, Respondents have instead erected unnecessary and arbitrary barriers to eligibility for consideration.  (Dkt. 16 [Compl.] at ¶ 77.)  Those barriers exclude

---

[11]    Office of the Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

[12]    Office of the Attorney General, Increasing Use of Home Confinement as Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

from consideration any prisoner: (1) with a disciplinary record in the past 12 months other than 300 or 400 series incidents; (2) without a verifiable release plan; (3) whose primary offense is violent, a sex offense, or terrorism related, regardless of how long ago the offense was or whether the details actually involved violence; (4) with a current detainer; and (5) with a PATTERN risk score above "Minimum."[13] *Id.* The improper nature of those barriers is demonstrated by their impact on Petitioners. Petitioner Brown has prostate cancer, asthma, high blood pressure, and arthritis, each of which increase his risk of serious illness from COVID-19. (*Id.* at ¶¶ 6, 12, 23.) Yet he remains ineligible even for consideration for home confinement solely because his PATTERN risk score is low rather than minimum. (Dkt. 25 [Opp. to TRO] at 34:28-35:2.) That is so even though the burdens on Lompoc's medical facilities mean he cannot get the treatment for his cancer that he needs. (Dkt. 16 [Compl.] at ¶ 59.) Similarly, Petitioner Garcia is due to be released from custody in early November 2020. (*Id.* at ¶ 13.) Notwithstanding that he is due to be released from Lompoc in just a few months, he too was denied consideration for home confinement on the basis that his PATTERN risk score was low rather than minimum. (Dkt. 25 at 34:10-12.)

Respondents' failure to review more prisoners clearly indicates reckless indifference to Petitioners' suffering. *See* Section III.B.1.b. *infra.* Law and justice both require that the Court order Respondents to review for home confinement the more than 2,400 prisoners at Lompoc who have not yet been reviewed, just as the Attorney General directed and the Eighth Amendment requires and just as other courts have done. *See Martinez-Brooks*, 2020 WL 2405350 at *33 (ordering

---

[13] *See* Bureau of Prisons' Correctional Programs Division Acting Assistant Director Andre Matevousian & Reentry Services Division Assistant Director Hugh J. Hurwitz's Memorandum to Chief Executive Officers dated May 8, 2020, which is available online at https://prisonology.com/wp-content/uploads/2020/05/COVID-19-Hurwitz-Memo-and-BOP-guidance-2020-05-08.pdf.

pursuant to section 2243 that FCI Danbury "eliminat[e] all requirements that the inmate have served some portion of his or her sentence . . . eliminat[e] the requirement that a 'primary or prior offense' not be a violent offense . . . [and] eliminat[e] the requirement that an inmate be without incident reports in the past 12 months" as barriers to being considered for home confinement) (internal quotations omitted); *Cameron*, 2020 WL 2569868 at *13 (noting the court's authority to grant enlargement pending a resolution of a habeas claim and granting TRO for release of medically vulnerable prisoners in section 2241 petition).

### 3.   Respondents' Own Actions Warrant The Waiver Of The Exhaustion Of Administrative Remedies

As set out in detail in the Complaint, Respondents have thwarted any and all efforts by Petitioners to obtain their requested relief through administrative procedures.  Having disenfranchised Petitioners in this way, Respondents' argument that Petitioners' habeas claim should be dismissed for failure to exhaust administrative remedies rings particularly hollow.

In the Ninth Circuit, "the exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions,* 872 F.3d 976, 988 (9th Cir. 2017).  Unlike a jurisdictional exhaustion requirement, "courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).  Courts may waive that prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000.

The Complaint makes it plain that Petitioners' exhaustion of administrative remedies would have been futile and would have exposed them to irreparable harm. *First*, as Respondents have confirmed in their Motion, the Bureau of Prisons did not establish an administrative process through which prisoners could even apply for home confinement under the CARES Act.  (Dkt. 36 [Mot.] at 10:1-5; *see also* Dkt.

18-1 [Rim Decl.], Ex. Q ("Inmates do NOT need to apply or request to be considered for the CARES ACT.").[14])  Respondents' assertion that "inmates who are dissatisfied with the BOP's initial home confinement decision are required to exhaust administrative remedies with the BOP" is Kafkaesque, given that very few prisoners at Lompoc were considered for home confinement and there is no indication that those who were denied home confinement were even told they had been denied.  (Dkt. 36 [Mot.] at 10:5-6.)  *Second*, Petitioners alleged that staff at Lompoc claimed that their work in responding to COVID-19 prevented them from even accepting from prisoners the forms necessary to initiate an administrative remedy process.  (Dkt. 16 [Compl.] at ¶¶ 13-14).  *Third*, Petitioners pled that although they repeatedly complained of their need for medical treatment, they have not been treated until their situation has become an emergency.  (*Id.* at ¶¶ 10, 47, 56.)  With urgent medical requests being ignored, there is no reason to think Respondents would respond to other administrative requests.  *Fourth*, Petitioners Torres and Brown were ultimately able to submit administrative requests in the form of applications for Compassionate Release, but neither had heard back by the time the Complaint was filed.  (*Id.* at ¶¶ 10, 12.)  *Fifth*, Petitioners have pled that prisoners at Lompoc have been unable to contact outside counsel who could advise and assist them in seeking and obtaining administrative relief.  (*Id.* at ¶¶ 45-46.)  *Sixth*, the Complaint makes it clear that COVID-19, which can cause serious harm up to and including death, is spreading like wildfire through the facility and has already infected hundreds.  (*Id.* at ¶ 44.)  Pursuing obviously futile administrative relief would only prolong Petitioners' exposure to that potentially irreparable harm. Even if Respondents were not thwarting Petitioners' access to administrative

---

[14]  While not alleged in the Complaint, this fact is judicially noticeable under Federal Rule of Evidence 201 since it is not subject to reasonable dispute and can be accurately and readily determined from the Bureau of Prison's own document.

remedies, those administrative remedies are simply too slow to address the exigent circumstances presented by COVID-19's spread throughout Lompoc. *Valentine v. Collier*, 140 S. Ct. 1598, 1601 (2020) (Mem) (noting with respect to exhaustion under the PLRA that grievance procedures may be effectively unavailable if they are utterly incapable of responding to a rapidly spreading pandemic like Covid-19). *Seventh*, Respondents still continue to deny there is a COVID-19 problem in Lompoc that must be addressed with additional preventative measures.  At least one court has noted with respect to Lompoc that "California's two United States Senators have repeatedly called on the BOP to take additional emergency measures to slow the spread of the virus at the facility," without success. *Connell*, 2020 WL 2315858 at *6 (citation omitted).  Another court denied a request for compassionate release on the basis that administrative remedies had not been exhausted and "implor[ed] FCI Lompoc to respond" to plaintiff's request, but Lompoc never responded. *Pippin*, 2020 WL 2602140 at *2.  Given Respondents' ongoing denial of the existence of a problem, and the failure of even Senators and District Courts to push Respondents to take greater steps to protect prisoners at Lompoc and respond to administrative requests, it is plain that any request for administrative relief is—and was—bound to fail. *See also Connell*, 2020 WL 2315858 at *5 ("[t]he BOP is overwhelmed by the unique challenges COVID-19 presents . . . .  The extraordinary and unprecedented circumstances faced by prisons in light of the COVID-19 pandemic have rendered administrative exhaustion futile.") (citation omitted).

In short, it is absurd of Respondents to assert that Petitioners' claim should be dismissed so that Petitioners can exhaust futile, empty, and time consuming administrative processes before they can bring their identical concerns back before this court.  With a life-threatening illness flooding through Lompoc, justice delayed is unquestionably justice denied.

C.     **Petitioners Have Properly Alleged A Direct Claim For Injunctive And Declaratory Relief Under The Eighth Amendment**

1.     **Petitioners Have Sufficiently Alleged Respondents' Deliberate Indifference**

In prohibiting "cruel and unusual punishments," the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  It is against those standards that conditions of confinement are evaluated, and it is those standards that impose upon prison officials a constitutional obligation to protect the incarcerated from, and not be deliberately indifferent to, conditions of confinement that are "very likely to cause serious illness and needless suffering."  *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (impermissible for prison officials to be "deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms").

There are two factors courts must consider to determine whether a prison official's failure to protect prisoners from harm rises to the level of an Eighth Amendment violation.  The first factor is objective: the conditions of confinement must have put prisoners at "substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  The second is subjective: the prison official must have acted with "deliberate indifference" to inmate health or safety. *Id.*  Petitioners' Complaint meets both of those requirements.

a.     **Petitioners Have Alleged They Are Subject To An Objective, Substantial Risk Of Serious Harm**

To show substantial risk of serious harm, Petitioners must show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36.  Courts have

routinely found that exposure to disease or health issues constitutes a serious harm. *See, e.g., id.* at 33 (finding that the reach of the Eighth Amendment includes "exposure of inmates to a serious, communicable disease"); *Jeffries v. Block*, 940 F. Supp. 1509, 1514 (C.D. Cal. 1996) (agreeing that "tuberculosis is a serious contagious disease, which presents a serious risk to inmate health"); *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("[C]orrectional officials have an affirmative obligation to protect [forcibly confined] inmates from infectious disease.").

COVID-19 is a global pandemic that has uprooted every aspect of daily life throughout the world.  To combat that pandemic, as early as March 4, 2020, state and local officials across the country, including here in California, began to implement steps to address the COVID-19 pandemic, including implementing innumerable restrictions on businesses, schools, and places of worship so that social distancing can be promoted and people are not forced to come into contact with potential COVID-19 carriers.  (Dkt. 16 [Compl.] at ¶¶ 31-32.)  While society has chosen to implement protective rules to prevent the spread of COVID-19, prisoners are forced to live in conditions that dramatically increase not only their risk of contracting a COVID-19 infection, but also their risk of dying from a COVID-19 infection.  (*Id.* at ¶ 34 ("Correctional facilities increase the risk of rapid spread of an infectious disease, like COVID-19, because of the high numbers of people with chronic, often untreated, illnesses housed in a setting with minimal levels of sanitation, limited access to personal hygiene, limited access to medical care, and no possibility of staying at a distance from others.").)  Even among federal prisons, Lompoc is uniquely vulnerable to a COVID-19 outbreak for three reasons: (1) it confines a large number of prisoners, enough that Lompoc was at 130% of capacity at the date of the Complaint (*id.* at ¶ 91); (2) many are housed in open, communal housing areas, sleeping just 2-3 feet from each other, or have multiple people in

1  cells designed for a single person (*id.* at ¶¶ 14, 48-49).[15]

2       Given the unique threat posed by COVID-19, the Attorney General

3  acknowledged more than three months ago the "dangers that COVID-19 poses to

4  our vulnerable inmates" and directed BOP to take extraordinary measures, including

5  releasing prisoners to home confinement, to protect prisoners from contracting

6  COVID-19.  (*Id.* at ¶¶ 84-85.)  At this point in the global pandemic, it is simply

7  irrefutable that COVID-19 is a "serious" disease that poses a substantial risk of

8  severe harm to everyone.  For that reason, every court that has considered this

9  question has determined that the risk of contracting COVID-19 is a substantial risk

10  of serious harm that satisfies the first prong of the deliberate indifference inquiry.

11  *See, e.g.*, *Martinez-Brooks v. Easter*, 2020 WL 2405350, at *20–21 (D. Conn. May

12  12, 2020); *Fraihat v. U.S. Immigration and Customs Enforcement*, 2020 WL

13  1932570, at *23 (C.D. Cal. April 20, 2020); *Basank v. Decker*, 2020 WL 1481503,

14  at *3, 5 (S.D.N.Y. Mar. 26, 2020).  Indeed, even courts that ultimately found that the

15  *subjective* factor for an Eighth Amendment violation at a particular prison was not

16  satisfied have still found the objective factor was satisfied.  *See e.g., Swain v.*

17  *Junior*, 2020 WL 3167628, at *5 (11th Cir. Jun. 15, 2020) ("[t]he defendants seem

18  to agree—wisely, we think—that the risk of COVID-19 satisfies this

19  requirement.")[16]

20

---

21  [15]  While Respondents assert that the population has been reduced in the past two

22  months, (Dkt. 36 [Mot.] at 4), they do not contest that the population at Lompoc

23  remains far in excess of that which it was designed to hold.

24  [16]  Courts that have recently considered the conditions in Lompoc in connection

25  with requests for compassionate relief have likewise concluded that the risk of

     contracting COVID-19 at Lompoc presents a substantial risk of serious harm.  *See*

26  *e.g. Connell,* 2020 WL 2315858 at *6 (identifying Lompoc as one of "worst

     coronavirus hotspots in the nation" and calling the situation "dire"); *Pippin,* 2020

27  WL 2602140 at * 2 ("catastrophic COVID-19 outbreak" at Lompoc placed

28  medically vulnerable prisoner's "life in jeopardy").

### b.   Respondents' Response To The Outbreak Demonstrates Their Subjective Deliberate Indifference

Prison officials are deemed to be deliberately indifferent with regards to dangerous conditions when they are "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," yet "disregard that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837, 839-40 (describing the standard for deliberate indifference as being similar to "subjective recklessness as used in the criminal law").  Respondents do not and cannot dispute that they were aware of the risk COVID-19 posed to prisoners in Lompoc from the start of the outbreak here in the United States.  Their response, or rather the lack of it, demonstrates a callous and reckless disregard of the very substantial risk COVID-19 poses to those prisoners it was obligated to protect.

As noted above, state and local officials began to take steps to address the COVID-19 pandemic in early March 2020.  (Dkt. 16 [Compl.] at ¶¶ 31-32.)  On March 26, 2020, and again on April 3, 2020, Attorney General Barr issued urgent memoranda to the Bureau of Prisons regarding COVID-19 and how the Bureau of Prisons should respond to it, noting the "significant levels of infection at several of our facilities" and the "dangers that COVID-19 poses to our vulnerable inmates." (*Id.* at ¶¶ 75-76.)  Had Respondents taken appropriate steps to address and alleviate the threat COVID-19 posed to prisoners when those warning signs and directives were issued, the catastrophe at Lompoc may have been avoided.  They did not do so.  After initially delaying taking preventative measures, those steps Respondents did take were unreasonable and insufficient to address the scale of the risk to prisoners and were bound to fall woefully short of substantially reducing Petitioners' risk of contracting COVID-19.  Among other things, Respondents:

- Aggressively transferred prisoners between housing units in a ham-handed effort to segregate the infected population. Due to inadequate testing capacity, this merely allowed infected but asymptomatic prisoners to

18

rapidly spread the virus as they jumped from unit to unit. (*Id.* at ¶¶ 51-53.)

- Attempted to "solve" the overcrowding and communal housing issues by (1) moving prisoners from low-and-minimum-security facilities in the Lompoc Camp and FCI Lompoc to the medium-security prison at USP Lompoc, where two prisoners each were locked down in tiny, single-occupancy cells without access to basic hygiene facilities; and (2) moving prisoners to an unsanitary housing unit that had previously been closed due to mold contamination, without properly cleaning that unit. (*Id.* at ¶¶ 49-50.)

- Failed to secure adequate testing capacity, to the extent that over a month into the outbreak, Lompoc still did not have the capacity to test its entire population. As a result, the infected were only tested until several days after they began displaying symptoms, when their health had already declined precipitously. (*Id.* at ¶¶ 52-53.)

- Denied treatment to symptomatic prisoners until their condition deteriorated to the point that emergency hospitalization was required. (*Id.* at ¶¶ 55-57.)

- Placed prisoners suspected of having COVID-19 in solitary confinement, incentivizing others to hide and not report their symptoms lest they suffer the same fate. (*Id.* at ¶ 58.)

- Despite repeated guidance from the Attorney General to the contrary, refused to even consider home confinement for the vast majority of prisoners. (*Id.* at ¶ 5.)[17]

- Repeatedly ignored CDC-issued guidance and the advice of correctional

---

[17]   As noted above, during the July 7, 2020 hearing regarding Petitioners' request for a TRO, Respondents stated that they have considered 61 Lompoc prisoners for home confinement.

1    health experts regarding managing COVID-19 in correction facilities.  (*Id.*

2    at ¶¶ 35-38, 73.)

3        Far from helping to control the outbreak and reduce the risk COVID-19 posed

4    to the prisoners, many of these measures were counter-productive and self-defeating

5    because they only fanned the flames of the outbreak, exposing more prisoners to the

6    risk of infection, illness, and death.  For example, Respondents' transfer of prisoners

7    between units without sufficient testing to identify if they were infected actively

8    accelerated the spread of the virus through the facility.  (*Id.* at ¶¶ 51-53).

9    Intimidating prisoners into hiding their symptoms by putting those suspected of

10   having COVID-19 into solitary confinement meant sick prisoners spent more time

11   around healthy individuals, exposing them to the virus.  (*Id.* at ¶ 58).  Even the

12   inadequate measures Respondents actually took were implemented far too late:

13   prisoners had not been tested over a month after the outbreak within Lompoc had

14   begun, asymptomatic prisoners are not tested until they presented symptoms,

15   individuals are not appropriately quarantined, masks were not distributed quickly

16   and prisoners are forced to reuse the same mask indefinitely, hand sanitizer is

17   unavailable and even soap is in short supply, the medical facilities ostensibly set up

18   to treat prisoners are facially inadequate to respond to the scale of the outbreak and

19   not functioning for weeks, sick prisoners are not treated, and social distancing is

20   impossible.  (*Id.* at ¶¶ 48-67.)  Further, despite being directed by the Attorney

21   General to use home confinement to review "all at risk inmates" for home

22   confinement in order to combat the threat of COVID-19 within Lompoc,

23   Respondents have erected arbitrary barriers to even being considered for home

24   confinement review.  (*Id.* at ¶ 77.)  Finally, Respondents' repeated argument that

25   prisoners must exhaust administrative remedies before they can seek the relief from

26   a court only confirms their deliberate indifference *given that they have made those*

27   *remedies unavailable.  See* section III.B.2., *infra*.

28       The result of Respondents' facially unreasonable actions has been an

20

unmitigated catastrophe.  As of May 15, 2020, Lompoc had by far the largest outbreak at any BOP facility, with 1,023 positive cases, (*id.* ¶ 2) and more COVID-19 cases within its walls than in the entire of Santa Barbara County (*id.* ¶ 44).

Starting on May 15, 2020, the BOP begin categorizing certain prisoners who had tested positive as "recovered."  (*Id.* at ¶ 69.)  Respondents refer to that new category as evidence that their response "appears to be working."  (Dkt. 36 [Mot.] at 4:10-18.)  Although massaging the figures in a creative re-labeling exercise may make it "appear" as if progress has been made, and thus deflect scrutiny of Respondents' response to COVID-19, that does not impact prisoners' reality.  On June 21, 2020, Mamadou Kaba, a prisoner at Lompoc, was found unresponsive in his cell and later declared dead by responding paramedics.[18]  Despite weeks having passed since Mr. Kaba's passing, Lompoc is refusing to disclose the cause of death or even to state that it was not due to COVID-19.[19]

That Respondents have taken *some* steps in response to COVID-19 does not, alone, demonstrate the absence of deliberate indifference, particularly when those steps did not align with some of the most basic guidance issued from the CDC and the Attorney General.  *See, e.g., Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 943 (N.D. Cal. 2015) ("known noncompliance with generally accepted guidelines for inmate health strongly indicates deliberate indifference").  Many, if not all, of the steps Respondents took at Lompoc were identical to those taken at

---

[18]  Tyler Hayden, *Family of Lompoc Inmate Found Dead Demands Answers,* SANTA BARBARA INDEPENDENT, June 24, 2020 *available at* https://www.independent.com/2020/06/24/family-of-lompoc-inmate-found-dead-demands-answers/.

[19]  Additionally, on May 24, 2020, Adrian Solarzano, a prisoner at FCI Terminal Island, died from coronavirus related causes *despite having been classified as recovered.*  Richard Winton, *Inmate Recovering from Coronavirus Dies at Terminal Island,* LOS ANGELES TIMES, a*vailable at* https://www.latimes.com/california/story/2020-05-28/ninth-inmate-dies-coronavirus-terminal-island-prison.

FCI Terminal Island, including the lack of home confinement review.  (Dkt. 28 at 6-12.)  There too, those steps failed to contain COVID-19 and it spread throughout the prison.  (*Id.* at 5, 20.)  Although the court ultimately denied petitioners request for a TRO on one of their claims, it found that even if it credited all the evidence in Respondents' favor, Respondents' measures to contain COVID-19 were so insufficient that it amounted to deliberate indifference.  (*Id.* at 20. ("Respondents can point to everything they are doing, but at some point, it is just a bandage on a gaping wound.").)  This Court should reach the same conclusion with respect to Lompoc.

Respondents' citations to instances where other courts found wardens not to have been deliberately indifferent do not assist them here.  (Dkt. 36 [Mot.] at 13-14.)  Lompoc is not like other prisons, since it has the largest outbreak in the entire BOP system by far, (Dkt. 16 [Compl.] at ¶ 2), and houses large numbers of prisoners in communal housing areas (*id.* at ¶¶ 14, 48-49).[20]  And Respondents' unprecedented failure to control or even slow the outbreak in any way, shape, or form, along with their repeated failure to implement even basic guidance from the CDC, factually distinguish this matter from those cases cited by Respondents.  *Valentine v. Collier*, for example, is not comparable because that action concerned a state prison in Texas to which the Attorney General's directives did not apply and there is no evidence that those steps that were held to show an absence of deliberate indifference are the same or even similar to the steps Respondents took at Lompoc.  *Valentine v. Collier*, 956 F.3d 797, 801-02 (5th Cir. 2020).  *Chunn v. Edge* is not comparable because the prison authorities had been "more successful than many other prisons in preventing an outbreak" and had not had any COVID-19 related deaths.  2020 WL 3055669, at *7 (E.D.N.Y. June 9, 2020).  Accordingly, prisoners in that facility did not face a

---

[20]  Terminal Island also has one of the largest outbreaks in the federal prison system and houses prisoners in communal areas.  (Dkt. 28 at 5.)

substantial risk of harm from conditions at the prison and there clearly could not be a finding of deliberate indifference. *Id.* at *24 (noting, however, that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus"). Finally, *Grinis v. Spaulding* is distinguishable because the court in that action held that plaintiffs could not show deliberate indifference when the steps taken by prison authorities had led to a COVID-19 infection rate of just 1 prisoner in 1,000. 2020 WL 2300313, at *3 (D. Mass. May 8, 2020).

*Chunn* and *Grinis* both show that while COVID-19 undoubtedly poses a difficult challenge for correctional facilities, reasonable steps taken by prison authorities can stop its spread. As another example, just fifty miles South from Lompoc on the US-101 highway, Santa Barbara County Jail released over a third of its prisoners in late April, and has been able to avoid a mass outbreak.[21] That Lompoc's outbreak is the among the worst in the nation is not therefore due to COVID-19 being unstoppable, but is due to Respondents' refusal to reduce its population in any meaningful way, refusal to follow CDC guidelines, and refusal to take even the basic steps necessary to maintain a safe and clean environment. *See also Connell,* 2020 WL 2315858 at *6 (noting that the COVID-19 outbreak at Lompoc was so "dire" that it "has drawn national media attention, and California's two United States Senators have repeatedly called on the BOP to take additional emergency measures to slow the spread of the virus at the facility") (citation omitted). Respondents have been on notice of the threat of COVID-19 for months. Respondents' total failure to control the virus and facially inadequate response, even after months of public pressure, bespeaks their deliberate indifference to the

---

[21]  Brian Osgood, *Several Inmates and Guards at Santa Barbara County Jail Test Positive for COVID-19,* SANTA BARBARA INDEPENDENT, June 29, 2020 *available at* https://www.independent.com/2020/06/24/family-of-lompoc-inmate-found-dead-demands-answers/.

1  substantial, potentially deadly risk the virus poses to the prisoners under their

2  protection.

### 2.      Petitioners Have Sufficiently Pled Exhaustion Of Administrative Remedies

5       As noted above, Respondents are responsible for having prohibited

6  Petitioners from seeking administrative relief and for ensuring that any effort to seek

7  such relief would be futile.

8       Although 42 U.S.C. § 1997e(a) requires prisoners to exhaust those

9  "administrative remedies as are available" before filing suit to challenge

10 unconstitutional conditions, the exhaustion requirement is met, or excused, if

11 administrative remedies are effectively unavailable.  *Sapp v. Kimbrell,* 623 F.3d

12 813, 822 (9th Cir. 2010) ("We have recognized that the PLRA therefore does not

13 require exhaustion when circumstances render administrative remedies 'effectively

14 unavailable.'") (*quoting Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)),

15 *superseded by statute on other grounds as stated in Avery v. Paramo*, No. 13-cv-

16 2261 BTM, 2015 WL 4923820, at *14 (S.D. Cal. Aug. 18, 2015).  The Supreme

17 Court has held that an administrative process that exists on paper will be unavailable

18 if it "operates as a simple dead end—with officers unable or consistently unwilling

19 to provide any relief to aggrieved inmates" or if "prison administrators thwart

20 inmates from taking advantage of a grievance process."  *Ross v. Blake,* 136 S. Ct.

21 1850, 1859–60 (2016).  Even where prison administrators do not thwart an

22 administrative process, it will nonetheless be deemed unavailable if it is insufficient

23 to address the harm being suffered.  As Justice Sotomayor recently stated in the

24 context of the COVID-19 pandemic itself, "if a plaintiff has established that the

25 prison grievance procedures at issue are utterly incapable of responding to a rapidly

26 spreading pandemic like Covid-19, the procedures may be 'unavailable' to meet the

27 plaintiff's purposes, much in the same way they would be if prison officials ignored

28 the grievances entirely. . . in these unprecedented circumstances, where an inmate

OPPOSITION TO MOTION TO DISMISS

faces an imminent risk of harm that the grievance process cannot or does not answer, the PLRA's textual exception could open the courthouse doors where they would otherwise stay closed." *Valentine*, 140 S. Ct. at 1601. In sum, where the administrative procedures in place are practically unavailable to plaintiffs, they are not required to exhaust them before bringing suit in court.

As a threshold matter, because "failure to exhaust [administrative remedies] is an affirmative defense under the PLRA . . . prisoners *are not required to specially plead or demonstrate exhaustion in their complaints*." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (emphasis added). Accordingly, even had Petitioners failed to plead they had exhausted, or should be excused from exhausting, administrative remedies, that failure would not constitute a ground for dismissing their second claim. Contrary to Respondents' assertions, however, as set out above Petitioners *have* pleaded that Respondents and the circumstances at Lompoc foreclosed them from being able to seek relief through administrative remedies. *See* Section III.A.3 *supra*.

Since administrative remedies are "effectively unavailable," Respondents' motion to dismiss on this basis should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss should be denied in its entirety.

DATED:  July 14, 2020                Respectfully submitted,

Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:   ___/s/ Naeun Rim___
Naeun Rim
Attorneys for Plaintiff-Petitioners

DATED:  July 14, 2020

Peter J. Eliasberg
Peter Bibring
ACLU Foundation of Southern California

By: _____
/s/ Peter Bibring
Peter Bibring
Attorneys for Plaintiff-Petitioners

DATED:  July 14, 2020

Donald Specter
Sara Norman
Prison Law Office

By: _____
/s/ Donald Specter
Donald Specter
Attorneys for Plaintiff-Petitioners

OPPOSITION TO MOTION TO DISMISS

## **CERTIFICATE OF AUTHORIZATION**
## **TO SIGN ELECTRONIC SIGNATURE**

Pursuant to Local Rule 5-4.3.4(a)(2)(i) of the Signatures Procedures for the United States District Court for the Central District of California, filer attests that all other signatories listed concur in the filing's content and have authorized this filing.

DATED:  July 14, 2020               Bird, Marella, Boxer, Wolpert, Nessim,
                                    Drooks, Lincenberg & Rhow, P.C.

                                    By:  _____
                                              */s/ Naeun Rim*
                                              Naeun Rim
                                    Attorneys for Plaintiff-Petitioners

OPPOSITION TO MOTION TO DISMISS