NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
CHUNG H. HAN (Cal. Bar No. 191757)
JASMIN YANG (Cal. Bar No. 255254)
DAMON A. THAYER (Cal. Bar No. 258821)
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7423
    Facsimile: (213) 894-7819
    E-mail: Keith.Staub@usdoj.gov
          Chung.Han@usdoj.gov
          Jasmin.Yang@usdoj.gov
          Damon.Thayer@usdoj.gov
          Paul.Green@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES; VINCENT REED; FELIX SAMUEL GARCIA; ANDRE BROWN; and SHAWN L. FEARS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff-Petitioners,<br><br>v.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons,<br><br>    Defendant-Respondents. | No. CV 20-4450- CBM-PVCx<br><br>**RESPONDENTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:  August 4, 2020<br>Hearing Time:  10:00 a.m.<br>Ctrm:  8B<br><br>Honorable Consuelo B. Marshall<br>United States District Judge |

## I. INTRODUCTION

Since Petitioners filed their Complaint on May 16, 2020, the number of COVID-19 cases has nearly tripled across the nation, the number of deaths has nearly doubled, the number of cases in California has increased five-fold, and the number of deaths in California has more than doubled.

|  | Cases in USA | Deaths in USA | Cases in CA | Deaths in CA |
|---|---|---|---|---|
| May 16, 2020[1] | 1,412,121 | 85,990 | 74,936 | 3,108 |
| July 21, 2020 | 3,850,134[2] | 141,158 | 397,538[3] | 7,694[4] |
| % increase | + 272.65% | +164.16% | + 522.50% | +247.55% |

In contrast, **USP Lompoc currently reports 12 inmate COVID-19 cases and FCI Lompoc reports 0.** *See* https://www.bop.gov/coronavirus/ (last accessed July 21, 2020). There is no place in the United States safe from COVID-19. Transferring inmates into the community will not insulate them from risks associated with the disease.

Petitioners' habeas and Eighth Amendment claims are subject to dismissal for being inadequately plead. In addition, Petitioners fail to meet the standard for obtaining injunctive relief. They must demonstrate that "prison authorities' *current* attitudes and conduct" meet the "high legal standard" of deliberate indifference, and will continue to do so in the future. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (emphasis added); *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Petitioners' own allegations, and those facts of which the Court may take judicial notice, demonstrate that the BOP has taken reasonable measures. The reasonableness of these measures is reflected in the fact that while the number of COVID-19 cases within the United States and California

---

[1] All May 16, 2020 figures are from the Complaint, ¶ 21.

[2] Current nationwide figures are from *Coronavirus Resource Center: COVID-19 Dashboard*, John Hopkins Univ. & Med., https://coronavirus.jhu.edu/map.html (last accessed July 21, 2020)

[3] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx#COVID-19%20by%20the%20Numbers (last accessed July 21, 2020)

[4] *Id.*

1

continues to skyrocket, the number of positive cases and the number of inmates housed within FCC Lompoc has been decreasing. Furthermore, Respondents respectfully contend that the Court's finding of habeas jurisdiction in its Order Granting Preliminary Injunction (Dkt. No. 45) was in error because it relied on out-of-Circuit cases rather than binding Supreme Court and Ninth Circuit cases. Thus, the Complaint should be dismissed.

## II.    ARGUMENT

### A.    Petitioners' Habeas Claim Should be Dismissed

#### 1.    Petitioners Do Not Assert A Cognizable Habeas Claim

Petitioners' habeas claims do not actually seek habeas relief. Petitioners should not be permitted to relabel a conditions of confinement claim as a habeas claim to circumvent the PLRA. In *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016), the Ninth Circuit clarified that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Nettles* noted that civil rights claims are the exclusive vehicle for suits about prison life outside the core of habeas and that "[i]t would fully frustrate congressional intent to hold that prisoners could evade the requirements of the PLRA by the simple expedient of putting a different label on their pleadings." *Id.* at 932. Petitioners' attempt to relabel their conditions of confinement claims as habeas claims to avoid PLRA exhaustion requirements is precisely what the Ninth Circuit criticized in *Nettles*.

Unlike a core habeas claim, Petitioners' allege that the *conditions* at FCC Lompoc are dangerous because of COVID-19 and the BOP's alleged inadequate response to the pandemic. The Complaint is replete with references to Lompoc's allegedly inadequate *conditions*. *See e.g.,* Compl. at 38:16-17 and 38:24-25. Under the habeas heading of their Complaint, Petitioners allege, "Because of the conditions at Lompoc, Petitioners and Class members cannot take steps to protect themselves." Compl. at 43:16-17.

1 Petitioners' own allegations illustrate that their habeas claim is really a conditions of
2 confinement claim.
3       Petitioners' authority is not persuasive. Unlike *Wilson v. Williams* and *Martinez
4 Brooks v. Easter*, Petitioners are not arguing that no set of conditions would be sufficient
5 to protect them from COVID-19; in fact, they are arguing for better conditions and set
6 forth specific demands for sanitation supplies and masks. Compl. at 47-48. Petitioners'
7 reliance on *Calderon v. Barr*, 2020 WL 2394287 at *3-4 (E.D. Cal. May 12, 2020) is
8 misplaced as *Calderon* supports Respondents' position. *Calderon* stated that the
9 immigration detainee's "COVID-19 action is essentially a conditions of confinement
10 civil rights action contained within a 28 U.S.C. 2241 habeas wrapper" and warned
11 against "the risk of turning 28 U.S.C. 2241 into a general civil rights statute by the mere
12 expedient of a petitioner seeking that release remedy, perhaps among other remedies, in
13 every habeas action in which conditions of confinement are at issue[.]"
14       As noted in the Motion (at 6:15-7:5), the vast majority of courts that have
15 considered habeas claims in the COVID-19 prison context have found that complaints
16 concerning conditions of confinement are not habeas claims despite being titled as such.
17 Petitioners do not even attempt to distinguish any of the cases cited in the Motion,
18 thereby conceding they should control here. Permitting Petitioners claims to proceed
19 with their habeas claim is inconsistent with the weight of authority, and would, as the
20 *Castillo v. Barr* court noted, encourage litigants to seek habeas relief for any purported
21 violation of civil rights so as to evade the PLRA's requirements. *See also Wilson v.
22 Ponce*, Case No. CV 20-4451-MWF at Dkt. No. 58 at 9 (holding that habeas relief
23 sought is a "prisoner release order" governed by and barred by the PLRA).
24       2.    The BOP's Inmate Placement Determinations Are Not Reviewable
25 Petitioners argue that the BOP's home confinement evaluation process is
26 unconstitutionally restrictive. Opp., 10:20-11:4. Although Petitioners disagree with the
27 BOP's home confinement decisions, the BOP has sole discretion over inmate placement
28 decisions. 18 U.S.C. §§ 3621(b), 3625. *See also Reeb v. Thomas*, 636 F.3d 1124, 1126-

3

28 (9th Cir. 2011). Nothing in the CARES Act limits or proscribes the BOP's sole discretion as to inmate placement decisions, nor does anything in the CARES Act require that the BOP release Petitioners.

Petitioners again ignore the binding authority cited in the Motion. Petitioners instead rely on *Farmer v. Brennan*, 511 U.S. 825 (1994), which is inapposite for several reasons. First, *Farmer* was not a habeas case, but an Eighth Amendment case that resolved the issue of inconsistent tests for what constituted deliberate indifference. *Id.* at 832. Second, *Farmer* did not analyze the BOP's unreviewable discretion in making inmate placement decisions or 18 U.S.C. § 3621. Third, although the petitioner in *Farmer* had initially sought an order requiring the BOP to place her in a co-correctional facility, she subsequently dropped that request for relief. *Id.* at 831, n.1. Fourth, although the *Farmer* petitioner had sought an injunction barring future confinement in *any* penitentiary, the Supreme Court did not address or grant that relief and remanded to the district court for further proceedings on the Eighth Amendment claim.

Although Petitioners continue to repeat selected language from the Attorney General's March 26 and April 3 memoranda, they ignore that the these memoranda also require that the BOP must be mindful of public safety in making individualized home confinement evaluations. The Attorney General's April 3, 2020 Memorandum states:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates. Thus, while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate

> is unique and each requires the same individualized determinations we have always made in this context.

*See* April 3, 2020 Memorandum at Page 3. Petitioners assert that committing a sex crime or a violent crime should not be a barrier to transfer to home confinement (Opp. at 10:21-11:6) and seek to override the BOP's sole authority to make individualized determinations as to suitability for home confinement. However, there is no legal authority to do so.

### 3. Exhaustion Should Not Be Waived

Given that Petitioners can utilize the compassionate release process under 18 U.S.C. § 3582(c)(1)(A) (and the Opposition acknowledges some already have at 14:11-21) it is disingenuous for Petitioners to argue that they should be excused from exhaustion requirements under the PLRA or otherwise. Moreover, Petitioners' assertion that COVID-19 is "spreading like wildfire" is contradicted by current data. Petitioners do not even contend that they even attempted to utilize the BOP administrative process. Respondents incorporate their arguments regarding exhaustion in Section B.2, *infra.*

### B. Petitioners' Eighth Amendment Claims Should Be Dismissed

#### 1. Petitioners Have Not Sufficiently Alleged Deliberate Indifference

##### *a. Petitioners Have Not Plead that They Are Subject to an Unreasonable Risk of Harm*

As noted above, since May 16, 2020, the number of COVID-19 cases has nearly tripled across the nation, the number of deaths has nearly doubled, the number of cases in California has increased five-fold, and the number of deaths in California has more than doubled. These numbers belie Petitioners' argument that "[w]hile society has chosen to implement protective rules to prevent the spread of COVID-19, prisoners are forced to live in conditions that dramatically increase not only their risk of contracting a COVID-19 infections, but also their risk of dying from a COVID-19 infection." *See* Opp. at 16:15-19. These "protective rules" have not slowed, let alone prevented, the

1  spread of the coronavirus, as the rates of infection and deaths continue to soar
2  nationwide and in California.

3        In contrast, the numbers of positive cases at FCC Lompoc have decreased and
4  stabilized, as it currently reports 12 inmate and two staff cases of COVID-19. These
5  statistics show that the BOP has not been deliberately indifferent to the inmates' needs at
6  FCC Lompoc, and that the BOP has not denied Petitioners "the minimal civilized
7  measure of life's necessities" in addressing the harm COVID-19 presents in its prisons,
8  including at FCC Lompoc. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Petitioners cannot
9  show that they are incarcerated under conditions posing a substantial risk of harm as the
10 ravages from COVID-19 expose everyone—prisoner and non-prisoner alike. *See*
11 *Farmer*, 511 U.S. at 837; *id.* at 844 ("A prison official's duty under the Eighth
12 Amendment is to ensure reasonable safety."); *see also Hallinan*, 2020 WL 3105094, at
13 *6 (no Eighth Amendment violation even though the facility "reported 19 inmate deaths
14 and 664 active inmate and staff infections at FCC-Butner").

15       Petitioners also fault the BOP for not decreasing the population of FCC Lompoc,
16 but they fail to acknowledge that its population has decreased from 2,680 (Compl. ¶ 2) to
17 2,438, a decrease of 242 inmates or a 9% population reduction.[5] Even without the
18 Court's intervention, the BOP is taking its obligation to combat COVID-19 seriously,
19 including by reducing its prison population. That the BOP has not released as many
20 people as Petitioners would like does not indicate an Eighth Amendment violation. *See*
21 *Hallinan*, 2020 WL 3105094, at *16 ("the fact that respondents have not 'maximized'
22 use of home confinement and other release provisions to reduce the FCC-Butner
23 population does not establish an Eighth Amendment violation").

24       Petitioners cannot satisfy the objective component of an Eighth Amendment
25 violation. Indeed, the only case cited by Petitioners on this point is a district court
26 opinion issued early in the COVID-19 pandemic, *Martinez-Brooks v. Easter*, 2020 WL

---

[5] https://www.bop.gov/locations/institutions/lom/ and
https://www.bop.gov/locations/institutions/lof/ (last accessed July 21 2020).

6

2405350 (D. Conn. May 12, 2020). *See* Opp. at 17:11-12.[6] But *Martinez-Brooks* should not persuasive here because, among other things, it was premised upon the proposition that the inability to stay six feet apart at all times was a per se Eighth Amendment violation, which has been squarely rejected by other courts such as *Wragg v. Ortiz*, 2020 WL 2745247 at *22. Moreover, *Martinez Brooks* noted the factual dispute over conditions precluded the court from making a finding on deliberate indifference and the court denied the TRO on the Eighth Amendment claim. 2020 WL 2405350 at *29. Respondents request that the Court find that compliance with CDC recommendations, including "access to soap, tissues, gloves, masks, regular cleaning, signage and education, quarantine of new prisoners, and social distancing during transport" satisfies the objective component of the Eighth Amendment. *Valentine*, 956 F.3d at 801-02; *Chunn v. Edge*, 2020 WL 3055669, at *1 (E.D.N.Y. Jun. 9, 2020) ("Rather than being indifferent to the virus, MDC officials have recognized COVID-19 as a serious threat and responded aggressively."); *Grinis v. Spaulding*, 2020 WL 2300313, at *3 (D. Mass. May 8, 2020) ("Both the BOP and FMC Devens have made significant changes in operations in response to COVID-19.").

          b.      *Petitioners Have Not Sufficiently Alleged the Subjective Prong of the Deliberate Indifference Test*

The Complaint acknowledges the many steps that the BOP took to address COVID-19, including mass testing, the provision of masks to inmates and correctional officers, and the cohorting and quarantining of inmates. *See* MTD at 3:2-4:9. Despite acknowledging (in no less than 20 places) the efforts the BOP has undertaken at Lompoc, Petitioners hyperbolically mischaracterize Respondents actions as an "unprecedented failure to control or even slow the outbreak in any way, shape, or

---

[6] The other cases cited by Petitioners did not involve convicted prisoners. *See Fraihat v. U.S. Immigration and Customs Enforcement*, 2020 WL 1932570, at *1 (C.D. Cal. Apr. 20, 2020) (involving immigration detainees); *Basank v. Decker*, 2020 WL 1481503, at *1 (S.D.N.Y. Mar. 26, 2020) (same). The Eighth Amendment does not apply to immigration detainees. *See Cameron*, 2020 WL 3867393, at *4 ("For prisoners incarcerated following a conviction, the government's obligation arises out of the Eighth Amendment's prohibition on cruel and unusual punishment.") (citation omitted).

form.[7]" Opp. 22:14-15. However, COVID-19 prison jurisprudence is clear that there is no Eighth Amendment deliberate indifference claim where prison officials respond reasonably to this novel pandemic and have held that efforts identical to what the BOP has done at FCC Lompoc do not constitute deliberate indifference. MTD at 15:1-16:26. *See Swain v. Junior*, –F.3d–, 2020 WL 3167628, at *6 (11th Cir. Jun. 15, 2020) (no Eighth Amendment liability if prison officials respond reasonably to a risk to inmate health, "*even if the harm ultimately was not averted*"); *Wilson v. Williams*, –F.3d–, 2020 WL 3056217 at *7-8 (6th Cir. Jun. 9, 2020) (no tenable Eighth Amendment claim where BOP had responded reasonably to the risk of COVID-19 at FCI Elkton by implementing the same BOP Action Plan used at FCC Lompoc); *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) ("after accounting for the protective measures [the prison] has taken, the Plaintiffs have not shown a substantial risk of serious harm that amounts to cruel and unusual punishment"). Petitioners do not attempt to explain why the three circuit-level decisions are distinguishable, thereby conceding that they should be controlling here.

Petitioners also contend that *Chunn* and *Grinis* are distinguishable because of the number of inmates infected. Opp. at 22:22-23:11. This factual difference, however, is not determinative because numerous courts have found that whether the harm is averted or not does not make an Eighth Amendment violation. *See* MTD at 14:15-18. Finally, as stated above, *Hallinan* found no Eighth Amendment violation even though there had been 19 inmate deaths from COVID-19. 2020 WL 3105094, at *6.

In short, Petitioners cannot show that BOP officials had a "sufficiently culpable state of mind," that they "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," and acted with "the unnecessary and wanton infliction of pain." *Farmer*, 511

---

[7] Petitioners inflammatorily suggest that Mamadou Kaba's death was a COVID-19 death and that the BOP's investigation into the cause of his death is tantamount to "refusing to disclose the cause of death or to even state that it was not due to COVID-19." Opp., 21 at 9-14. Petitioners also mischaracterize Judge Fitzgerald's Order Denying Temporary Restraining Order as making a finding regarding deliberate indifference and do not mention that Judge Fitzgerald denied, in part, their second attempt to obtain a TRO at Terminal Island, and has instead ordered that a neutral assess the conditions at FCI Terminal Island before ruling on the Eighth Amendment claim. *See Wilson v. Ponce*, DE 58 at 12-13.

8

U.S. at 833, 837; *Whitley v. Albers*, 475 U.S. 612, 619 (1986) (citation omitted). Petitioners cannot show that the BOP acted with "obduracy and wantonness," as opposed to "inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Wilson*, 501 U.S. at 299. Nor can Petitioners show that that the BOP's "current attitudes and conduct" amount to reckless disregard. *See Toguchi*, 391 F.3d at 1060. To the contrary, Petitioners admit that the BOP "[a]ttempted to 'solve' the overcrowding and communal housing issues"; conducted testing; and considered home confinement for some inmates. Opp. at 18:26-19:23; *see also* MTD at 3:8-4:9. Respondents recognize that Petitioners are dissatisfied with these efforts, but dissatisfaction does not rise to an Eighth Amendment violation. Indeed, nearly all federal courts have concluded that an Eighth Amendment violation could not lie where prison officials responded reasonably to the COVID-19 crisis with steps substantially similar to what the BOP has done at FCC Lompoc.

For these reasons, Petitioners' Eighth Amendment claim should be dismissed.

        2.    <u>The Eight Amendment Claims Should Be Dismissed Because Petitioners Have Failed to Satisfy PLRA Exhaustion Requirements</u>

Petitioners seek to avoid dismissal by ignoring the cases in the COVID-19 context holding that exhaustion under the PLRA is required before inmates may bring suit concerning prison conditions. *See e.g., Valentine*, 956 F.3d at 805 (rejecting inmates' exhaustion arguments and noting that administrative "relief by [the prison] remains possible (and the procedure available), even if [the prison] has not acted as swiftly as Plaintiffs would like"); *Swain*, 2020 WL 3167628, at *1; *Wragg*, 2020 WL 3074026, at *2 (D.N.J. Jun. 10, 2020).

Petitioners cite *Jones v. Bock*, 549 U.S. 199, 216 (2007) for the proposition that exhaustion is an affirmative defense. Opp. at 25:6-9. *Jones*, however, noted that if grounds for dismissal appears on the face of a complaint, it is still subject to dismissal under Fed. R. Civ. P. 12(b)(6) and that its holding "is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Jones*, 549 U.S. at 216.

Moreover, an inmate's concession as to nonexhaustion is a valid ground for dismissal so long as no exception to exhaustion applies and a court may even dismiss an action sua sponte for failure to exhaust administrative remedies. *Govind v. Cash*, 2013 WL 5220809 at *7 (C.D. Cal. Sept. 10, 2013). The cases Petitioners cite do not support the proposition that administrative remedies are not available at FCC Lompoc. *Sapp v. Kimbrell*, 62 F.3d 813, 826 (9th Cir. 2010), held that the prison's screening of the prisoner's grievance was proper, administrative remedies were available, and the prisoner's suit *was* barred by failure to exhaust under the PLRA. *See* Opp. at 24:6-14. Petitioners also quote Justice Sotomayor's statement made in connection with the Court's denial of an application to stay a preliminary injunction in *Valentine v. Collier*, 140 S. Ct. 1598, 1601 (2020). Opp. at 24:23-25:3. Justice Sotomayor's statement is not a holding and merely states that it is possible that grievance procedures could constitute a dead-end such that exhaustion is not required.

Although Petitioners contend that that they have adequately alleged that administrative remedies are unavailable (*id.* at 19:18-20:6), their allegations do not support this contention. There is four-tiered administrative remedy process available. 28 C.F.R. §§ 542.10-542.19. Petitioners have not alleged that they ever requested an informal resolution related to the administrative remedy process and were denied. Inmates are automatically considered for referral to home confinement, whether inmates specifically request it or not. *See* Dkt. No 25 at 32:11-13. To suggest that the BOP's automatic consideration of inmates for referral to home confinement means that exhaustion as to prison conditions is unavailable (so as to circumvent PLRA exhaustion requirements) is unavailing. None of the named Petitioners alleges he sought to pursue the formal administrative remedy process and that FCC Lompoc interfered with that attempt, rendering administrative remedies "effectively unavailable."

Petitioners' admitted failure to satisfy the exhaustion requirement under the PLRA is another reason why their Eighth Amendment claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Respondents respectfully request that the Court dismiss Petitioners' Complaint.

Dated: July 21, 2020                              Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


            /s/ Keith M. Staub
KEITH M. STAUB
CHUNG H. HAN
JASMIN YANG
DAMON A. THAYER
PAUL B. GREEN
Assistant United States Attorney
Attorneys for Respondents