NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
CHUNG H. HAN (Cal. Bar No. 191757)
DANIEL A. BECK (Cal Bar No. 204496)
JASMIN YANG (Cal. Bar No. 255254)
PAUL B. GREEN  (Cal. Bar No. 300847)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-7423
        Facsimile: (213) 894-7819
        E-mail: Keith.Staub@usdoj.gov
                Chung.Han@usdoj.gov
                Daniel.Beck@usdoj.gov
                Jasmin.Yang@usdoj.gov
                Paul.Green@usdoj.gov

Attorneys for Respondents
Louis Milusnic and Michael Carvajal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES; VINCENT REED; FELIX SAMUEL GARCIA; ANDRE BROWN; and SHAWN L. FEARS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff-Petitioners,<br><br>                  v.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons,<br><br>            Defendant-Respondents. | No. CV 20-4450-CBM-PVCx<br><br>**RESPONDENTS' SUBMISSION RE: PROPOSED SPECIAL MASTERS AND PROPOSED SCOPE AND POWERS OF SPECIAL MASTER**<br><br>Honorable Consuelo B. Marshall<br>United States District Judge |

1

## I. INTRODUCTION

During the Court's September 1, 2020 Status Conference, the Court ordered the parties to meet and confer regarding a special master in this case, to exchange a proposed list of special masters no later than September 4, 2020, to meet and confer regarding the special master by September 8, 2020, and for "the parties to file a stipulation or proposed list of special masters" by September 10, 2020. *See* Dkt. No. 86. The parties have each suggested a candidate for the special master, but after their meet and confer discussion on September 8, 2020, were unable to arrive at an agreement. Petitioners proposed Magistrate Judge Suzanne Segal ("Ret.") and Respondents proposed District Judge Andrew Guilford ("Ret."). Respondents interpreted the Court's September 1, 2020, minute order contemplating a joint proposal. When Respondents emailed Petitioners their portion of the joint submission, Petitioners responded that the minute order allows for individual filings. Respondents therefore hereby submit their proposed Special Master followed by their position regarding the scope of the Special Master's appointment. A proposed order is lodged herewith.

## II. PARTIES' PROPOSED SPECIAL MASTERS

### A. Petitioners Propose Hon. Suzanne H. Segal (Ret.)

Petitioners propose Hon. Suzanne H. Segal (Ret.).

### B. Respondents Propose Hon. Andrew J. Guilford (Ret.)

Respondents propose Hon. Andrew J. Guilford (Ret.). Judge Guilford's biography and rate sheet are attached hereto as **Exhibit A**.

Judge Guilford's 14 years of service as a district judge for the United States District Court for the Central District of California make him ideally suited to assist the Court and the parties with the issues in this case. Judge Guilford has presided over 1,400 prisoner rights actions, including claims involving habeas matters, conditions of

confinement, and prison conditions litigation.[1] Because the matters raised by Petitioners during the September 1, 2020 Status Conference concern a wide range of disputes, including the interpretation of the Court's Preliminary Injunction Order, Dkt. No. 45, and not simply discovery disputes, Judge Guilford's experience as a district judge will enable him to efficiently assist with the resolution of any disputes.

## III. RESPONDENTS' POSITION REGARDING SCOPE OF SPECIAL MASTER APPOINTMENT

### A. Scope of Master

Unless a statute provides otherwise, Federal Rule of Civil Procedure 53(a) limits the appointment of a special master to situations where: (1) the appointment is consented to by the parties; (2) the special master's holding trial proceedings and making or recommending findings of fact on non-jury issues is warranted by some exceptional condition or the need to perform an accounting or resolve difficult computation of damages; or (3) to address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district. In addition, the scope of the special master's duty must be limited to specific tasks and the use of the special master should only be where it is necessary. *Burlington Northern R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.3d 1064, 1071-72 (9th Cir. 1991) (noting that the use of special masters is restricted to situations where they are necessary to aid judges in the performance of specific judicial duties as they may arise in the progress of a case and the special master may not "displace the court").

Respondents consent to the appointment of a special master with a limited scope of duties to assist the parties with the resolution of Petitioners' allegations that Respondents are not in compliance with the Court's preliminary injunction order.

---

[1] A review of Judge Guilford's dockets in Westlaw's Judicial Analytics indicates that he has presided over 1,475 prisoner rights cases including conditions of confinement, habeas corpus, and prison conditions cases.

3

Specifically, the scope of the special master should be limited to assisting with the resolution and mediation of the following disputes raised by Petitioners as outlined in the Joint Status Report, Dkt. No. 84:

    a. Identification and notice to class and disputes over class membership;

    b. Frequency of periodic updates regarding future class members;

    c. Confidential legal calls;

    d. Protective order regarding home confinement review worksheets;

    e. Home confinement evaluation process; and

    f. Any other disputes consented to by the parties.

Respondents object to the broad scope of the special master's duties proposed by Petitioners because they have failed to demonstrate why any expanded scope is justified under Fed.R.Civ.P. 53(a)(1)(B) or (C). Respondents propose that the special master may issue reports, proposed findings, and recommendations to the Court and that the procedures and standards for objections to and review of the special master's proposed findings and recommendations under Fed.R.Civ.P. 53(f) be followed. Respondents do not consent to the entry of final judgments or orders by the special master.

Respondents object to any order purporting to provide the special master with powers and authority that the district court does not have, such as the power to micro-manage the operation of FCC Lompoc or to order the release of inmates or direct that specific inmates be transferred to home confinement. *See Livas v. Myers*, 2020 WL 1939583, at *8 (W.D. La. Apr. 22, 2020) (denying habeas petition seeking release of inmates due to COVID-19 as the Court cannot serve as "a de facto 'super' warden" of the BOP facility); *Hoptowit v. Ray*, 682 F.2d 1237, 1263 (9th Cir. 1982) (vacating order of reference for special master finding it was not needed but noting that "[a]n order placing a master in control of the prison would have been error as an overreaching of judicial authority"), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Federal courts are "ill equipped" to deal with problems of prison administration.

*See Turner v. Safley*, 482 U.S. 78, 84 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989)); *Benjamin v. Jacobson*, 172 F.3d 144, 182 (2d Cir. 1999) (en banc) (Calabresi, J., concurring) ("The in banc majority argues at length that Congress meant to get the federal courts out of the business of running jails, and it cites any number of congressional statements to that effect. I agree."); "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 84-85 ("Prison administration is [] a task that has been committed to the responsibility of [the legislative and executive branches], and separation of powers concerns counsel a policy of judicial restraint."). *See also Holleman v. Zatecky,* 951 F.3d 873, 880 (7th Cir. 2020) (recognizing Supreme Court's disapproval of excessive judicial involvement in day to day prison management and declining to interfere with prison transfer because "[w]e are not super-wardens who sit to critique the efficacy or wisdom of prison management choices.").

Respondents submit a proposed order of appointment for the special master, attached hereto as **Exhibit B**.

    **B.**    **Objections to Petitioners' Proposals**

        1.    <u>Hybrid Role as Special Master and FRE 706 Expert and Compliance Monitor Is Not Appropriate</u>

During the parties' meet and confer, Petitioners indicated that they will propose that the Court appoint the special master as not only a special master, but an expert under FRE 706. Respondents object to this and to any expanded scope of the special master's rule beyond what is necessary to assist the parties in resolving their disputes concerning the Court's Preliminary Injunction Order. The Court has already appointed Dr. Homer Venters as the FRE 706 expert in this case. *See* Dkt. No. 74. Dr. Venters has already

1  completed his site inspection of FCC Lompoc and his report is due by September 30, 2020. *Id.*

2  Moreover, given that the circumstance warranting the Court's appointment of a special master is the parties' dispute over Petitioners' interpretation of the Court's Preliminary Injunction Order, a second FRE 706 expert is inappropriate, redundant and unnecessary. "Ultimately, the most important question a court must consider when deciding to appoint a neutral expert witness is whether doing so will promote accurate factfinding." *Gorton v. Todd*, 793 F.Supp.2d 1171, 1179 (E.D. Cal. 2011) (quoting Charles Alan Wright, et al., *Federal Practice and Procedure* § 6304 (3d ed. Supp. 2011)). "[E]xpert witnesses should not be appointed under Rule 706 where not necessary or significantly useful for the trier of fact to comprehend a material issue in a case. Further, in order to demonstrate such necessity, there also must be some evidence, admissible or otherwise, that demonstrates a serious dispute that could be resolved or understood through expert testimony." *Id.* at 1181. The issues Petitioners raised in the parties' Joint Status Report, Dkt. No. 84, and the parties' disputes over the interpretation of the Preliminary Injunction Order will not be aided by expert testimony. The functions served by an FRE 706 expert are separate and distinct from those served by a special master. "The key distinction between an expert witness appointed under Rule 706 and a master appointed under Rule 53 us that the former testifies while the latter receives testimony or performs other judicial functions. Accordingly, the standards for appointment under these provisions are very different." Charles Alan Wright, et al., *Federal Practice and Procedure* § 6303 (3d ed.). As noted in *Armstrong v. Brown*, a case involving Petitioners' counsel, permitting a Rule 706 expert to make findings regarding compliance with an injunction/remedial plan in an adjudicative capacity is an "impermissible delegation of authority." 768 F.3d 975, 987 (9th Cir. 2014). Although Petitioners' counsel is familiar with the Ninth Circuit's vacation of portions of an injunction that permitted a FRE 706 expert to make findings and perform an adjudicative

6

role regarding alleged noncompliance with an injunction, they have offered no explanation as to why they are seeking to adopt procedures that were overturned by the Ninth Circuit.

The Court and the parties do not require specialized scientific, medical, or technical expertise to evaluate whether Respondents have complied with the Preliminary Injunction Order. Petitioners have failed to identify how a second FRE 706 expert will aid in factfinding or even what factfinding is necessary to resolve the parties' disputes over the Preliminary Injunction Order. There is no basis for the appointment of a second FRE 706 expert. Given that FRE 706 experts and special masters serve different functions, Petitioners fail to demonstrate how or why the same person should perform both functions of both testifying to this Court and assisting the parties with the resolution of their disputes.

Respondents further object to the extent Petitioners are requesting that the special master also serve as a compliance monitor regarding the Preliminary Injunction Order. Respondents acknowledge that there are instances of special masters serving as compliance monitors in the prison context. *See, e.g., Hook v. State of Ariz.*, 120 F.3d 921, 922 (9th Cir. 1997) (special master appointed to monitor compliance with consent decree allowing state prisoners to receive holiday packages following history of noncompliance); *Thompson v. Enomoto*, 815 F.2d 1323, 1324 (9th Cir. 1987) (special master to monitor enforcement of consent decree regarding conditions at the California State Prison at San Quentin). However, those cases involve the enforcement of consent decrees or years of non-compliance, whereas here there has been no finding that Respondents have failed to comply with the Court's Preliminary Injunction Order. Respondents dispute that they have failed to comply with the Preliminary Injunction Order. Petitioners' allegations of non-compliance and their interpretation of the Preliminary Injunction Order to require things (such as a declaration regarding

compassionate release decisions) that are mentioned nowhere in the Preliminary Injunction Order is not a basis to order a compliance monitor.

Finally, Respondents object to the extent that Petitioners may attempt to use the Special Master to obtain discovery.  Respondents submit that the Special Master may request a party to produce documents only to the extent he/she deems it necessary to perform the scope of his or her duties.  The parties reserve the right to object to the production of documents and/or electronically stored information ("ESI") on privilege or other grounds articulated under Fed.R.Civ.P. 26 and 34.  The Special Master shall consider and rule on any objections.  Any order on discovery is appealable to the Court in accord with Fed.R.Civ.P. 53(f)(2).  Any documents produced under this section shall be produced only to the Special Master and may not be used by the parties for use in any other litigation.  Finally, Respondents object to the extent that Petitioners request that the special master summon and interrogate party witnesses, or attempt to utilize the special master as a means of obtaining discovery.

### 2. Ex Parte Communications

Petitioners have proposed that the special master be able to have *ex parte* communications with the parties.  Respondents object to the special master having *ex parte* communications with the parties.  Fed.R.Civ.P. 53(b)(2)(B) states that the order appointing a master must state, "the circumstances, *if any*, in which the master may communicate ex parte with the court or a party." (emphasis added.)  "The commentary on Rule 53 discourages any *ex parte* communications between a court appointee and a party, noting that "[i]n most settings, … ex parte communications with the parties should be discouraged or prohibited" by the district court."  *U.S. v. Apple, Inc.*, 78 F.3d 131, 138 (2d Cir. 2015) (citing advisory committee notes to 2003 amendment to Fed.R.Civ.P. 53(b)).  *See also* Charles Alan Wright, et al., *Federal Practice and Procedure* § 2602.2 (3d ed.) (noting that "[a]bsent settlement considerations, or the review of confidential

documents to resolve privilege questions, ex parte communications between the master and the parties probably should be discouraged or prohibited.")

Courts routinely prohibit special masters from having *ex parte* communications with the parties. *See e.g., In re Toyota Motor Corp.*, 2010 WL 3260180 at *4 (C.D. Cal. Aug. 13, 2010) ("The Special Masters may not communicate *ex parte* with the parties regarding pending matters requiring adjudication by the Special Masters, unless the parties have consented in writing. Otherwise, the Special Masters may only communicate *ex parte* with the parties concerning purely administrative matters, such as availability for hearing dates."); *Equal Employment Opportunity Commission v. Western Distributing Co.*, 2019 WL 2208512 at *6 (D. Colo. 2019) (appointment order of special discovery master prohibited ex parte communications between master and parties). Although Petitioners assert that they have had special masters engage in *ex parte* communications with parties in other cases, all of those cases are distinguishable as they involved FRE 706 experts, not special masters. *See Clark v. State of Cal.*, CV 96-1486 (N.D. Cal. Aug. 18, 1998) (order appointing FRE 706 expert permitted *ex parte* communications between expert and parties); *Gray v. County of Riverside*, EDCV 13-0444-VAP (OPx) (C.D. Cal. June 7, 2016) (consent decree appointing FRE 706 expert permitted *ex parte* communications between experts and the parties); *Turner v. County of San Bernardino*, EDCV 16-00355-VAP (DTBx) (C.D. Cal. Dec. 14, 2018) (consent decree appointing FRE 706 expert permitted *ex parte* communications between experts and the parties). For the reasons stated earlier and as noted in *Anderson*, is in inappropriate for the same person to serve as both the special master and an FRE 706 expert and there is no compelling reason why the Court should issue an order permitting unlimited *ex parte* communications between a special master and the parties in this case.

3. <u>Special Master Under the PLRA</u>

During the parties' meet and confer, Petitioners represented that they would seek to exempt the special master from the limitation on compensation under 18 U.S.C. §

3626(f)(2), the PLRA's special master provision, which provides that the special master's fees will be limited to amount charged under 18 U.S.C. § 3006A and paid with funds appropriated by the Judiciary. Respondents note that the process the Court ordered regarding the parties' selection of a special master is inconsistent with the procedure outlined to select a special master in 18 U.S.C. § 3626(f)(2) and no findings have been made regarding the necessity of the appointment of a special master under 18 U.S.C. § 3626(f)(1). The Court previously ruled that the PLRA's limitations regarding prison release orders "do not apply here." *See* Dkt. No. 45 at 42:7-9. Respondents note that Fed.R.Civ.P. 53(g) contains no limitation on the special master's compensation or on the source of the funds used to pay the special master's fees. Although Respondents do not object to the special master being paid in excess of what is permitted under 18 U.S.C. § 3626(f)(2), Respondents do not waive their arguments regarding the applicability of the PLRA to this action generally.

Dated: September 10, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

   */s/ Jasmin Yang*
KEITH M. STAUB
CHUNG H. HAN
DANIEL A. BECK
JASMIN YANG
PAUL B. GREEN
Assistant United States Attorney

Attorneys for Respondents