**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| YONNEDIL CARROR TORRES, *et al.*,<br><br>Plaintiff-Petitioners,<br><br>vs.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc, *et al.*,<br><br>Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx<br><br>**ORDER GRANTING MOTION TO ENFORCE COMPLIANCE WITH PRELIMINARY INJUNCTION AND FOR ORDER TO SHOW CAUSE** |

The matter before the Court is Plaintiff-Petitioners Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears' ("Petitioners'") Motion to Enforce Compliance with Preliminary Injunction and for Order to Show Cause. (Dkt. No. 93.) The matter is fully briefed.

**I.     BACKGROUND**

This action is brought on behalf of inmates at FCI Lompoc and USP Lompoc (collectively, "Lompoc") challenging the Director of the Bureau of Prisons ("BOP") and Warden of Lompoc's response during the COVID-19 pandemic. The Complaint asserts two causes of action: (1) Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to 28 U.S.C. §§ 2241, 2243; (2) and Unconstitutional Conditions of

Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702, "Injunctive Relief Only." On July 14, 2020, the Court granted Petitioners' motion for a preliminary injunction[1] to require Respondents to make "full and speedy use of their authority under the CARES Act and evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions." (Dkt. No. 45 (the "Preliminary Injunction Order").) A site inspection of Lompoc was conducted on September 1 and 2, 2020 by Dr. Venters, the court-appointed Rule 706 expert. Dr. Venters' report regarding his site visit was filed on September 25, 2020. (Dkt. No. 101.)

## II. DISCUSSION

Petitioners move for an order seeking "enforcement" of the Court's Preliminary Injunction Order. Petitioners contend Respondents have failed to make "full and speedy use of their authority under the CARES Act" to evaluate at least two subcategories of class members for home confinement: (1) those who have already been approved for home confinement but have not yet been released ("Approved Class Members"); and (2) those who were denied home confinement and designated instead to a Residential Re-entry Center ("RRC" or "hallway house") even though they have no history of violence, sex offense, or terrorism and do not have "High" PATTERN scores ("RRC Class Members").

**A. Approved Class Members**

As to Approved Class Members, Petitioners contend Respondents identified 14 Approved Class Members with actual release dates to home confinement but it is unclear whether the remaining 113 Approved Class Members have been released to

---

[1] The parties agreed to convert Petitioners' *Ex Parte* Application for Temporary Restraining Order to an expedited motion for preliminary injunction. (Dkt. Nos. 41, 42.)

home confinement.  (*See* Dkt. Nos. 78, 82, 87.)  Petitioners argue Respondents have not responded to their requests for information regarding which Approved Class Members have actually been released to home confinement, whether they are being required to quarantine in the Special Housing Unit  prior to release for a certain period of time even though the inmates have a release plan where they can self-isolate, and why it is taking so long for the inmates to be released to home confinement.

Respondents argue the Court cannot order the release of inmates because the PLRA requires a 3-judge panel for release of inmates "in any civil action with respect to prison conditions."  However, the Court previously found that Petitioners properly assert a habeas claim because they are challenging the fact of confinement (not the conditions of confinement), and therefore the PLRA's prison release order provisions do not apply.  (Preliminary Injunction Order at 42 ("Having found Petitioners assert a proper habeas claim pursuant to § 2241 challenging the fact of their confinement, the PLRA's limitations regarding prison release orders do not apply here."); Dkt. No. 99, Order re: Respondents' Motion to Dismiss, at 4 ("Having found Petitioners assert a proper habeas claim pursuant to § 2241 challenging the fact of their confinement, Petitioner's habeas claim is not foreclosed by the PLRA.").)  Moreover, the Court has not ordered the release of inmates.

Respondents also contend the Court's Preliminary Injunction Order does not require immediate transfer of inmates to home confinement, the transfer of a specific number of inmates, or transfer by a stated time.  However, the Court's Preliminary Injunction Order required Respondents to make "full and speedy use of their authority under the CARES Act and evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions."  By failing to expeditiously release Approved Class Members to home confinement, Respondents are not making full and speedy use of their CARES

Act authority in violation of the Preliminary Injunction. *See Martinez-Brooks v. Easter*, 3:20-CV-569 MPS, Dkt. 70 at 1-2 (D. Conn. May 29, 2020) (respondents must release approved class members to home confinement to come into compliance with TRO).[2]

**B.     RRC Class Members**

As to RRC Class Members, Petitioners contend nearly 100 medically vulnerable class members, including class members who have no history of violence, sex offenses, or terrorism, were denied home confinement and instead deemed suitable for community placement at a halfway house. Petitioners argue if these RRC Class Members have a viable release plan and are not otherwise a danger to public safety, Respondents' refusal to grant them home confinement demonstrates Respondents' failure to make full use of their CARES Act authority and to put substantial weigh on class members' risk factors for severe illness or death from COVID-19.[3] Petitioners also contend it appears some RRC Class Members who were already approved for RRC placement were not even evaluated for home confinement. Respondents contend Petitioners are complaining about the BOP's decision to transfer inmates to RRCs versus home confinement, which is not within the scope of the Preliminary Injunction Order because nothing in the Court's order prohibits Respondents from transferring inmates to RRCs.

If Respondents are designating medically vulnerable class members to RRCs

---

[2] Respondents also contend there is no evidence that inmates are at a greater risk of COVID-19 while incarcerated within Lompoc than in the outside world. However, Dr. Venters' Expert Report raises concerns regarding the safety of Lompoc inmates and measures that should be implemented to prevent spread of COVID-19 at Lompoc.

[3] *See Martinez-Brooks v. Easter*, 3:20-CV-569, Dkt. No. 70 at 6 (D. Conn. May 29, 2020) (ordering for "each medically vulnerable inmate who has been approved for community placement at an RRC and who does not have a violent offense of conviction, a sexually-related offense of conviction, or a "High" PATTERN score, the Warden shall either (a) release the inmate to home confinement or (b) demonstrate that public safety or medical considerations or the absence of any home in which to place the inmate would make it unsafe to move the inmate immediately to home confinement.").

when those inmates are otherwise suitable for home confinement, Defendants are failing to comply with the Court's Preliminary Injunction Order requiring Respondents to make full use of their CARES Act authority and give substantial weight to the inmate's risk factors for serious illness or death from COVID-19. *See Martinez-Brooks v. Easter*, 3:20-CV-569 MPS, Dkt. 70 at 6 (D. Conn. May 29, 2020) (prospect of heightened supervision at RRCs does not outweigh the "medical considerations that make release to home confinement necessary to make the habeas remedy effective for those inmates" who were designated to RRCs but do not have a violent offense, a sexually related offense, or a High PATTERN score).

### III.   CONCLUSION

Accordingly, the Court **GRANTS** the Motion as follows:

1. **No later than October 16, 2020**, Respondents are ORDERED to file a declaration under seal confirming that all class members who were identified as having been approved for home confinement in Dkt. Nos. 78, 82, and 87 have been released to home confinement, including the date of each inmate's release to home confinement. The declaration shall identify each approved class member identified in Dkt. Nos 78, 82, and 87 who has not been released to home confinement by the date of the filing of the declaration, and explain the reason for the delay in his release to home confinement. The declaration shall also include an explanation of the steps required to place Lompoc inmates on home confinement after an inmate has been approved for home confinement, and identify the shortest amount of time in which placement of an inmate on home confinement can be accomplished;

2. **No later than October 16, 2020**, Respondents are ORDERED to file a declaration under seal identifying Lompoc inmates who were denied home confinement and instead designated to a Residential Re-entry Center ("RRC" or "halfway house"), who have no history of violence, no sex-offense- or terrorism-related convictions, and do not have a "High" PATTERN score ("RRC Class Members"); and

3. **No later than October 16, 2020,** Respondents are ORDERED

5
ORDER

to file a declaration under seal identifying each RRC Class Member who was denied home confinement but has a viable release plan, which explains why home confinement was denied and how public safety or other considerations would make it unsafe to release the inmate to home confinement.

**IT IS SO ORDERED.**

DATED:  October 8, 2020.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE