Terry W. Bird – Bar No. 49038
　tbird@birdmarella.com
Dorothy Wolpert – Bar No. 73213
　dwolpert@birdmarella.com
*Naeun Rim – Bar No. 263558
　nrim@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
　sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
　kshin@birdmarella.com
Oliver Rocos – Bar No. 319059
　orocos@birdmarella.com
Christopher J. Lee – Bar No. 322140
　clee@birdmarella.com
Jimmy Threatt – Bar No. 325317
　jthreatt@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Donald Specter – Bar No. 83925
　dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
　snorman@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Peter J. Eliasberg – Bar No. 189110
　peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
　pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Attorneys for Plaintiff-Petitioners Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES, et al.,<br><br>　　　Plaintiff-Petitioners,<br><br>　　vs.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc, et al.,<br><br>　　　Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx<br><br>**PETITIONERS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION REGARDING RESPONDENTS' NON-COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTION**<br><br>Matters referred to Hon. Pedro V. Castillo |

3709352.2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. "TIME SERVED" IS A CATEGORICAL BARRIER ..................................... 1

III. RESPONDENTS USE OLD VIOLENT AND TERRORISM CONVICTIONS AS CATEGORICAL BARRIERS ......................................... 2

IV. RESPONDENTS USE "PATTERN" AS A CATEGORICAL BARRIER ............................................................................................................... 3

V. THE DATA SHOWS RESPONDENTS APPLY A HOST OF OTHER INAPPROPRIATE BARRIERS TO HOME CONFINEMENT ...................... 3

    A. Respondents Deny Home Confinement Based On "Age", "No COVID Risk Factors", And "No Underlying Conditions" ..................... 3

    B. Misuse Of Criminal History To Deny Home Confinement .................... 4

    C. Respondents Deny Home Confinement On Other Irrelevant Bases ........................................................................................................ 4

    D. Denials Based On "Seriousness Of Current Offense" ............................ 4

    E. Denials Because Inmate "Needs Relocation" Are Improper ................. 5

    F. Denials Based On Alleged Gang Affiliation Are Improper ................... 5

VI. CONCLUSION ..................................................................................................... 5

## I. INTRODUCTION[1]

Although the 285 Inmates in the Data have no demerits in the majority of the categories of information identified in the Review Worksheets, each were denied home confinement. The Data unambiguously support the evidence Petitioners have previously submitted that those denials were largely, if not exclusively, due to Respondents' use of improper categorical barriers. (Dkt. No. 169 at 12-14.) The Data further show Respondents deny home confinement for a host of other improper reasons too. The most egregious are denials on the basis Respondents do not consider inmates to be old or vulnerable enough, but there are more issues than there is space to fully discuss them here.[2] *See* Section V.

In short, the Data show Respondents are violating the Preliminary Injunction and that the relief sought is warranted.

## II. "TIME SERVED" IS A CATEGORICAL BARRIER

Within the 285 Inmates in Exhibit A, "Time Served" is a reason given for denying home confinement to 210—74%.[3] 37 of those 210 inmates have served more than 50% of their sentence, and 7 have served more than two thirds. One inmate, No. 259, has served 82.3% of his sentence and has a LOW PATTERN Score, but was still denied. Importantly, ***66 of those 210 inmates were denied home confinement based on "Time Served" alone.***[4] Exhibit B.[5]

---

[1] Capitalized terms have the same meaning as in the related data submission. References to Exhibits are references to the Exhibits to the related data submission.

[2] For example, Nos. 11, 114, and 281 each were denied home confinement in part based on disciplinary infractions. But since those disciplinary infractions each occurred more than 1 year ago, the applicable guidance says they are irrelevant.

[3] "Time Served" includes those denied for not serving enough time, having a distant projected release date, and where there was a public safety factor of sentence length. There does not appear to be a principled distinction between these reasons.

[4] 33 of those 66 inmates have a MINIMUM PATTERN, remainder are LOW.

[5] A further four inmates (Nos. 28, 142, 253, and 262) were denied home confinement on the basis of "Time Served" in combination with their "Age" or "No

3709352.2                              1
PETITIONERS' SUPPLEMENTAL BRIEF REGARDING RESPONDENTS' NON-COMPLIANCE
WITH PRELIMINARY INJUNCTION

Two inmates are particularly illustrative of Respondents' use of time served as a categorical barrier; Nos. 83 and 181. Both have served 64.2% of their sentences, have no violent, sexual, or terrorism offenses, are in minimum and low security, have no public safety factors or gang affiliations, have MINIMUM PATTERN scores, no disciplinary history, no history of escape, and complete release plans, but were denied on the sole basis of "Time Served."

Petitioners anticipate Respondents will contend time served is just one of many factors and that each review is based on the totality of circumstances. As Nos. 83 and 181 prove, however, that is mere sophistry. Time served is unquestionably a categorical barrier, which is improper and a violation of the Preliminary Injunction for those reasons stated in Petitioners' briefing. (Dkt. No. 169 at 17-20.)

## III. RESPONDENTS USE OLD VIOLENT AND TERRORISM CONVICTIONS AS CATEGORICAL BARRIERS

23 of the 285 Inmates were denied in whole or in part on the basis they had a "History of Violence" or "Prior Terrorism Offense." Exhibit C. The information in the Review Worksheets does not show, however, that any of those 23 inmates committed any violent or terror offenses within the past ten years. For example, No. 93 committed a violent offense "greater than 15 years" ago and No. 141, who is now 43, committed a violent offense while a juvenile. Disturbingly, Nos. 61, 204, 207, 210, and 218 were denied home confinement on the basis of "History of Violence," but *no violent offense was noted in their Review Worksheets at all*.

Although the guidance does not permit Respondents to use such ancient, completed sentences as a barrier to home confinement, the Data shows that is how Respondents are using them. This is yet another example of Respondents' failure to comply with the Preliminary Injunction. (Dkt. No. 169 at 20-21.)

---

Underlying Conditions." As set out below, neither of those reasons can justify denying home confinement to class members. *See* Section IV.A.

## IV. RESPONDENTS USE "PATTERN" AS A CATEGORICAL BARRIER

"PATTERN" was a reason for denying home confinement to 141 of the 285 Inmates—49%. Of those 141 inmates, 36 had a PATTERN score of LOW. Exhibit D. In fact, "PATTERN" was the *sole* reason for denying eight inmates, one of which, No. 81, had a LOW PATTERN score and is due to be released in less than two weeks. That "PATTERN" score alone is used to deny home confinement shows that Respondents are using it as a categorical barrier. For all those reasons stated in Petitioners' briefing, that is improper. (Dkt. No. 169 at 21-22.)

Further supporting that PATTERN is an improper categorical barrier is Respondents' capricious and irrational reference to it. Although 106 of the 285 Inmates have LOW PATTERN scores, only 36 had PATTERN noted as a basis for denying them home confinement.[6] If a LOW PATTERN score is not a basis for denying one inmate, it is plain that it is not a basis for denying another.[7]

## V. THE DATA SHOWS RESPONDENTS APPLY A HOST OF OTHER INAPPROPRIATE BARRIERS TO HOME CONFINEMENT

The Data further shows that Respondents are using a wide range of other inappropriate considerations to deny home confinement. Although not the focus of Petitioners' Motion, they support that Respondents are failing to comply with the Preliminary Injunction's mandate to make "full and speedy use of their authority under the CARES Act" to maximize transfers to home confinement suitable inmates who were at risk of severe illness or death from COVID-19. (Dkt. No. 45 at 49.)

### A. Respondents Deny Home Confinement Based On "Age", "No COVID Risk Factors", And "No Underlying Conditions"

The Preliminary Injunction provisionally certified a class of individuals comprising "all current and future people in post-conviction custody at FCI Lompoc

---

[6] Filtering Column R for "LOW" identifies 106 inmates. Filtering that data by selecting in Column W denials without "PATTERN" results in 70 inmates.

[7] In fact, 8 inmates *granted* home confinement had a LOW PATTERN score.

and USP Lompoc over the age of 50, and all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc of any age" with certain underlying health conditions. (Dkt. No. 45 at 48.) Although Respondents identified all 285 Inmates as class members, they denied home confinement to 20 inmates in whole or in part on the basis of "Age," "No COVID Risk Factors," or "No Underlying Conditions." Exhibit E. In fact, No. 84 was denied *solely on the basis Respondents contend he has "No COVID Risk Factors*," when his very presence in the class shows he is at risk. These denials are an affront to the Preliminary Injunction that conclusively prove that Respondents are violating it.

### B. Misuse Of Criminal History To Deny Home Confinement

Exhibit F identifies 22 inmates denied on the basis of their criminal past notwithstanding that they did not commit violent, sexual, or terrorism related offenses. None of the applicable guidance supports such prior offenses even being considered, let alone forming the basis for a categorical denial of home confinement. (Dkt. No. 169-2, Exs. 2-6.) Respondents' baseless use of such prior convictions to deny home confinement is yet another violation of the Preliminary Injunction.[8]

### C. Respondents Deny Home Confinement On Other Irrelevant Bases

The Data also show that Respondents are looking for any reason they can to deny home confinement, no matter its relevance. For example, inmates were denied because of acts by their spouse (No. 5), because it would "diminish seriousness of offense" (No. 108), and because they had "close ties to Mexico" (No. 185).[9] These highly dubious reasons are simply not relevant under the applicable guidance.

### D. Denials Based On "Seriousness Of Current Offense"

The "Seriousness of the Current Offense" is not a metric tracked in the

---

[8] To the extent Respondents contend prior offenses show a likelihood of an inmate re-offending, that is the precise function of the PATTERN score. In any event, 6 of these 22 inmates have MINIMUM PATTERN scores, and 7 more have LOW.

[9] Nos. 21, 32, 49, 54, 77, 229, and 254 were similarly denied home confinement on suspiciously weak bases.

Review Worksheets and there appears to be no standardized way for evaluating that information. Yet, 34 inmates were denied in whole or in part on the basis of "Seriousness of Current Offense." These denials are questionable at best. For example, No. 69 was denied solely on the basis of the seriousness of his offense, which was a $3.6m fraud. No. 247 was denied in part due to seriousness of his offense, which was "laundering at least $4m in drug money." Without wishing to minimize these offenses, they do not appear to justify continuing to expose these vulnerable inmates to the risk of serious harm from COVID-19.

### E. Denials Because Inmate "Needs Relocation" Are Improper

18 of the 285 inmates were denied home confinement in whole or in part on the basis "Needs Relocation." Respondents themselves, however, have made it clear that relocation is *not* a barrier to home confinement, it merely means that that process might take more time. (*See, e.g.*, Dkt. No. 174 at 5-7 (relocation is not a barrier to home confinement, it merely takes time to resolve).) Since the need for relocation is indisputably not a barrier to home confinement, Respondents' denial of home confinement to 18 inmates on the basis they need relocation is unjustifiable.

### F. Denials Based On Alleged Gang Affiliation Are Improper

Finally, although 52 of the 285 Inmates have alleged "Gang" affiliations, only 32 were denied home confinement on that basis.[10] Just as Respondents' inconsistent use of LOW PATTERN score to deny home confinement shows that is not a genuine basis for denial, so too does Respondents' inconsistent use of alleged gang affiliation show that is not a genuine reason for denying home confinement either.[11]

## VI.  CONCLUSION

The Data show Respondents' improper use categorical barriers, capricious and irrational use of data, and failure to comply with the Preliminary Injunction. For those reasons stated above, together with those in Petitioners' prior briefing,

---

[10] Two are not gangs: "History of Fraud" (No. 68), "Explosives Expert" (No. 77).
[11] 10 inmates denied on the basis of "Gang" had LOW or MINIMUM PATTERN.

Petitioners' Motion should be granted.

DATED: March 26, 2021

Respectfully submitted,

Terry W. Bird
Dorothy Wolpert
Naeun Rim
Shoshana E. Bannett
Kate S. Shin
Oliver Rocos
Christopher J. Lee
Jimmy Threatt
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:    /s/ Oliver Rocos
      Oliver Rocos
Attorneys for Plaintiff-Petitioners Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears
3709352.2

6

PETITIONERS' SUPPLEMENTAL BRIEF REGARDING RESPONDENTS' NON-COMPLIANCE WITH PRELIMINARY INJUNCTION