TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
CHUNG H. HAN (Cal. Bar No. 191757)
DANIEL A. BECK (Cal. Bar No. 204496)
JASMIN YANG (Cal. Bar No. 255254)
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7423
    Facsimile: (213) 894-7819
    E-mail: Keith.Staub@usdoj.gov
           Chung.Han@usdoj.gov
           Daniel.Beck@usdoj.gov
           Jasmin.Yang@usdoj.gov
           Paul.Green@usdoj.gov

Attorneys for Respondents
Louis Milusnic and Michael Carvajal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES, *et al.*,<br><br>    Plaintiff-Petitioners,<br><br>v.<br><br>LOUIS MILUSNIC, *et al.*,<br><br>    Defendant-Respondents. | No. CV 20-4450-CBM-PVCx<br><br>**RESPONDENTS' RESPONSE TO PETITIONERS' SUPPLEMENTAL DATA SUBMSSION**<br><br>**[Declarations of Patricia V. Bradley and David Brewer filed under seal at Dkt. 206]**<br><br>Honorable Pedro V. Castillo<br>United States Magistrate Judge |

## I.  INTRODUCTION AND SUMMARY

Petitioners' motion was premised on their contention that Respondents have been improperly applying "categorical barriers" when conducting home confinement evaluations. Petitioners did not submit any percipient or expert evidence to support that contention. *See* Dkt. 169. In contrast, Respondents submitted detailed testimony establishing that Petitioners' theory was incorrect on each point. Dkt. 173 ("Arnold Decl."), ¶¶ 22-23 (explaining that inmates Petitioners claimed had been excluded for "time served" were in fact denied after considering other factors, such as needing to complete court-approved drug treatment programs or not having a suitable intended residence, and providing specific examples of inmates with Low and Medium PATTERN scores, and with less time served than Petitioners' examples, who were approved for home confinement). Petitioners' attempt to *artificially impose* a categorical prohibition on the BOP from considering time served is inconsistent with the BOP's discretionary authority pursuant to statute and with the Attorney General's guidance. As Respondents explained, the BOP's exercise of its discretion under the CARES Act involves weighing multiple factors specific to each inmate. Dkt. 174. In reply, Petitioners did not present any contrary evidence to salvage their categorical barrier theory. *See* Dkt. 180.

During the March 19, 2021, hearing, however, Petitioners' counsel represented *for the first time* that they had compiled an internal spreadsheet database (which is inconsistent with their contentions of a *class-wide* violation of the preliminary injunction) that Respondents were allegedly not properly exercising their discretion relative to some *specific subsets* of inmates. The Court granted Petitioners leave to submit that spreadsheet, and in spite of their claimed urgency, Petitioners submitted the filing at the last possible moment on the evening of March 26, 2021. Dkt. 202.

The supplemental spreadsheet does nothing to carry Petitioners' burden to submit evidence showing that Respondents have violated the preliminary injunction. It does not show any improper 'categorical' bars being applied. As Petitioners' supplemental brief concedes, the spreadsheet's central code category—W – "REASON FOR DENIAL ON

WORKSHEET"—reflects their counsel's subjective attempt to simplify the underlying worksheet data: "Petitioners have standardized the reasons for denial so that they can be categorized and more easily referred to." Dkt. 201 at p. 4 n.5. Petitioners argue that they have not waived attorney work product protection regarding this internal database. But much more importantly, Petitioners' counsel is not competent or qualified to make and offer such simplified assertions regarding the alleged meaning of the BOP worksheets, which their counsel did not prepare, and do not understand.[1] Petitioners have effectively treated their motion as an afterthought, substituting vague speculations and unsupported arguments by legal counsel that do not meet their heavy burden of proof.

As explained in the declaration of Warden Patricia V. Bradley, filed concurrently herewith, the review worksheets do not show what Petitioners' counsel claims. As she explains: "I did not make broad or sweeping decisions based on any particular factor, but instead considered all of the factors and used my best correctional judgment to make a decision[]." Bradley Decl., ¶ 9. The review worksheets do not simplistically delineate the discretionary decisions; they are just internal worksheets, and Petitioners do not submit evidence showing they mean what they claim: "Petitioners characterize multiple factors including the applicability of a public safety factor for sentence length, percent of time served, projected release date and as relating to 'time served only' which is disingenuous and a misunderstanding of my consideration of the relevant factors." Id. ¶ 14. Petitioners' "data," in fact, shows that amongst the inmates who were not approved for home confinement, there was a wide range of percentage of time served (from none to 94.2%, a wide range of ages, and a wide range of PATTERN scores (from minimum to high) demonstrating that Respondents conducted a holistic review for each inmate.

Federal statutes authorize the BOP to make placement decisions, and Ninth Circuit authority precludes district courts from second-guessing the BOP's placement decisions.

---

[1] Petitioners' Exhibit A purports to identify 285 inmates denied home confinement but does not assert how these decisions violated the terms of the preliminary injunction. As of March 29, 2021, only 237 of these inmates were incarcerated at FCC Lompoc. Petitioners only assert categorical decision-making led to the denials for approximately 66 inmates listed on Exhibit B. Petitioners admit various factors were considered in the denial of approximately 101 inmates in Exhibits C-F. These admissions contradict their assertion that these decisions were made categorically.

2

Here, the BOP properly exercised this discretion. Petitioners' challenge of approximately 10 percent of the home confinement decisions does not demonstrate a violation of the preliminary injunction. Respondents respectfully request that the motion be denied.

## II.  ARGUMENT

### A.  The BOP Alone Has Discretion Over Placement Designations

The BOP has the authority to designate an inmate's place of imprisonment pursuant to 18 U.S.C. § 3621(b). Among other things, the BOP must consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; and (4) any statement by the court that imposed the sentence. 18 U.S.C. § 3621(b)(1)-(4). The Ninth Circuit has repeatedly held that a district court does not have jurisdiction to challenge an inmate's place of imprisonment. *See Reeb v. Thomas*, 636 F.3d 1124, 1126-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP placement decisions under 18 U.S.C. §§ 3621-25); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011). Nothing in the CARES Act or the preliminary injunction modifies the BOP's authority to make placement decisions. Among the decisions Petitioners criticize are decisions for inmates who have previously escaped from custody, introduced narcotics into FCC Lompoc, failed to voluntarily surrender for their sentences, been charged and/or convicted for domestic violence, ignited a bomb at a school, and violated the terms of their supervised release. *See* Declaration of David Brewer filed concurrently herewith ("Brewer Decl.") at 34:7, 49:28-20:2, Bradley Decl. at 22:11, 29:3-4 and 21-22; 30:10, 34:27, 35:16-17; 40:24, and 46:20.

### B.  The BOP Did Not Use Time Served, or Any Other Factor, as a Categorical Disqualifier

Petitioners' supplemental filing claims, without explanation, that their Exhibit B identifies inmates who were denied home confinement on the basis of "Time Served" only. Dkt. 201 at 5. Petitioners offer no evidence to support this claim, and not even an explanation for how it was derived, despite this being a linchpin of their entire motion. Respondents have previously submitted testimony refuting Petitioners' claim that they

were using categorical time-served disqualifiers in making home confinement decisions. *See* Arnold Decl. ¶¶ 22-23. Warden Bradley's testimony again refutes Petitioners' unsupported claim: "I did not make broad or sweeping decision based on any particular factor, but instead considered all of the factors and used my best correctional judgment to make a decision whether to preliminarily approve an inmate for home confinement, refer the inmate to the Correctional Programs Branch Home Confinement Committee for consideration, or deny home confinement placement." Bradley Decl. ¶ 9. Further, Warden Bradley refutes Petitioners' characterization of the inmates identified in Exhibit B as being denied on the basis of time served only: "I did not set any specific time limits for amount of time served or remaining to be served. I did consider the amount of time served, time remaining to be served and when relevant how recently the sentencing occurred as factors *among the many other factors* which I was weighing in reaching my decision." *Id.* ¶ 13 (emphasis added).

  Petitioners, moreover, mischaracterize and conflate several factors (public safety factor for sentence length, percent of time served, projected release date) as relating to "time served" in their characterization for the reason an inmate was denied home confinement. An inmate's sentence length is a reflection of the sentencing court's consideration of the factors set forth in 18 U.S.C. § 3553, including the seriousness of the offense, need to promote respect for the law, need to provide just punishment for the offense, need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes, among other things. The amount of time that the inmate has served or has remaining to serve is a reflection of the extent to which these objectives have had a chance to be reached. A public safety factor of sentence length is only assigned to male inmates with 10, 20 or 30 years remaining to serve and identifies the minimum security level for the facility the BOP has determined is appropriate to meet the security needs of the inmate. BOP Program Statement 5100.08, *Inmate Security Designation and Custody Classification* (September 4, 2019).

  Under 18 U.S.C. §§ 3621(b)(2) and (3), the BOP must consider "the nature and circumstances of the offense" and "the history and characteristics of the prisoner" in

making placement determinations. The May 8, 2020, Memorandum, moreover, directed that the BOP may prioritize for home confinement those inmates "who only have a relatively short amount of time remaining on their sentence." Dkt. No. 169-1, Ex. 5 at 27 (defined as inmates who "have served 50% or more of their sentence, or have 18 months or less remaining on their sentence and have served 25% or more of their sentence"). Time served, in fact, goes hand in hand with 18 U.S.C. § 3621(b)(3) that the BOP must consider "the history and characteristics of the prisoner," the Attorney General memorandum to consider the "inmate's conduct in prison," and BOP guidance that the institution must review "the inmate's institutional discipline history for the last twelve months." *Id.* Ex. 2 at 15, Ex. 4 at 21. Not only did the BOP not use time served as a categorical disqualifier, but the BOP is permitted to take time-served into consideration and Petitioners' conflated definition of "time served" misleadingly collapses several factors that are reflective of the seriousness of the offense, the extent to which the objectives set forth in 18 U.S.C. § 3553 have had the opportunity to be accomplished, and the security needs of the inmate. Nothing in the CARES Act or the preliminary injunction prohibit Respondents from considering the length of sentence, the percentage of time served, or projected release date.

### C. Petitioners' Efforts To Code "Standardized" Reasons for Denial Illustrates Their Lack Of Competent Evidence

Petitioners claim to have "standardized the reasons for denial" in the review worksheets, but in making that claim, Petitioners not only grossly oversimplify and mischaracterize the BOP's home confinement evaluation process, they *distort and corrupt the data* so as to fit their incorrect preexisting contention that the BOP made its home confinement decisions on a categorical basis. Worse, Petitioners present this claim without submitting any competent foundational testimony for their coding exercise, akin to what an expert witness would normally provide when attempting to establish a reliable

5

foundation for opinions about what a set of coded data supposedly shows regarding the real world.[2] As the moving party, Petitioners fail to carry their burden of proof.

Warden Bradley's declaration states that she "carefully considered the nature and circumstances of the inmate's offense, the history and characteristics of the inmate, the nature of the inmate's release plan, the extent to which home confinement will afford the inmate a reasonable opportunity to adjust to and prepare for reentry in the community" and "gave substantial weight to the inmate's risk factors for severe illness or death from COVID-19 based on age or Underlying Health Conditions as defined by the Preliminary Injunction Order." Bradley Decl. ¶¶ 7-8. Although the home confinement review worksheets *summarized* Respondents' decision-making process, Respondents conducted a holistic review of over 2000 inmates for home confinement consideration and used their best correctional judgment (as statutorily mandated) and considered several factors in making their decisions. Respondents provide detailed explanations of their decision-making process for each of the inmates still in custody at FCC Lompoc identified in Exhibits B-F of Petitioners' submission. Bradley Decl. at 5:9-52:1; Brewer Decl. at 5:9-52:1. That Petitioners disagree with approximately 167 out of over 2,000 evaluations does not establish that Respondents failed to provide substantial weight to the risk of severe illness from COVID-19 in making home confinement decisions or that they violated the preliminary injunction.

### III. CONCLUSION

Petitioners' motion should be denied.

---

[2] Despite having this "data compilation" for "months," Petitioners chose not to include it with their motion, and did not even mention it until the March 19, 2021 hearing. This alone warrants its exclusion from consideration. *See United States ex re. Giles v. Sardie*, 191 F.Supp.2d 1117, 1127 (C.D. Cal. 2000).

| | | |
|---|---|---|
| 1 | Dated: April 2, 2021 | Respectfully submitted, |
| 2 | | |
| 3 | | TRACY L. WILKISON<br>Acting United States Attorney<br>DAVID M. HARRIS |
| 4 | | Assistant United States Attorney<br>Chief, Civil Division |
| 5 | | JOANNE S. OSINOFF<br>Assistant United States Attorney |
| 6 | | Chief, General Civil Section |
| 7 | | |
| 8 | |    */s/ Jasmin Yang*<br>JASMIN YANG |
| 9 | | Assistant United States Attorney<br>Attorneys for Respondents |