TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
PAUL B. LA SCALA (Cal Bar No. 186939)
CHUNG H. HAN (Cal. Bar No. 191757)
DANIEL A. BECK (Cal. Bar No. 204496)
JASMIN YANG (Cal. Bar No. 255254)
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7423
    Facsimile: (213) 894-7819
    E-mail: Keith.Staub@usdoj.gov
          Chung.Han@usdoj.gov
          Paul.LaScala@usdoj.gov
          Daniel.Beck@usdoj.gov
          Jasmin.Yang@usdoj.gov
          Paul.Green@usdoj.gov

Attorneys for Respondents
Louis Milusnic and Michael Carvajal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES, *et al.*,<br><br>    Plaintiff-Petitioners,<br><br>    v.<br><br>LOUIS MILUSNIC, *et al.*,<br><br>    Defendant-Respondents. | No. CV 20-4450-CBM-PVCx<br><br>**RESPONDENTS' NOTICE OF MOTION AND MOTION TO DISSOLVE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Supporting Declarations and Proposed Order filed concurrently]<br><br>Hearing Date: June 22, 2021<br>Time:    10:00 a.m.<br>Courtroom:    8B<br><br>Honorable Consuelo B. Marshall,<br>United States District Judge |

# NOTICE OF MOTION AND MOTION TO DISSOLVE PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that, on June 22, 2021, at 10:00 a.m., or as soon thereafter as they may be heard, Defendants-Respondents Louis Milusnic and Michael Carvajal ("Respondents"), will, and hereby do, bring a Motion to Dissolve Preliminary Injunction before the Honorable Consuelo B. Marshall, United States District Judge, located at Courtroom 8B of the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

Respondents hereby move for entry of an order dissolving the preliminary injunction issued in this matter on July 14, 2020 (Dkt. 45) pursuant to the Court's inherent authority to modify a preliminary injunction and on the ground that there is a significant change in facts that warrants dissolution of the injunction.

This motion is based on this notice, the attached memorandum of points and authorities, the declarations and request for judicial notice filed concurrently with this motion, the pleadings on file in this matter, and upon such other and further arguments, documents, and grounds as may be presented to the Court at or before the hearing of this motion. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on May 14, 2021.

Dated: May 25, 2021

TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

/s/ Jasmin Yang
Jasmin Yang
Assistant United States Attorney

Attorneys for Respondents

i

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Ten months ago, the Court's preliminary injunction required Respondents to expedite their evaluation of medically vulnerable inmates at FCC Lompoc for home confinement due to the risk of severe illness from COVID-19. The facility had just experienced a severe outbreak of COVID-19. No vaccine was available or imminent. The legal theory as to why habeas corpus could be used to enjoin Respondents without running afoul of the Prison Litigation Reform Act ("PLRA"), was that it was not possible, at that time, to keep inmates confined in prison without violating their constitutional rights to be free of unreasonable COVID-19 risk. Dkt. 45 at 14:16-18.

Significant new developments reducing COVID-19 risk have eliminated the empirical premises of the Court's Preliminary Injunction. As federal courts have affirmed, COVID-19 risk can now be controlled by vaccination – which has been (and continues to be) offered to all inmates at FCC Lompoc – and by compliance with the BOP's COVID-19 response plan. The COVID-19 vaccine is 94-95% effective in preventing symptomatic COVID-19 infection, and nearly 100% effective at preventing serious illness from COVID-19. The idea that inmates face a constitutionally impermissible COVID-19 risk unless they are released, because nothing could be done to change their conditions of confinement to address that risk, is no longer scientifically defensible.

Due to BOP's vaccination efforts and its continued compliance with its COVID-19 response plan, there have been no cases of COVID-19 among the general inmate population at FCC Lompoc in 5 months and no inmate COVID-19 hospitalizations in over 9 months. Over the same period – in stark contrast to conditions inside the prison – COVID-19 spread rapidly outside the prison in California. Moreover, Respondents have performed home confinement reviews of nearly all inmates and have reduced the inmate population by almost 30 percent. Based on these new developments, Respondents respectfully request that the Court dissolve the preliminary injunction in this matter.

## II. FACTUAL BACKGROUND

On July 14, 2020, the Court issued a preliminary injunction requiring Respondents to "evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness or death from COVID-19 based on age (over 50) or Underlying Health Conditions." Dkt. 45 at 49. The Court found that "meaningful social distancing is not possible at Lompoc absent a reduction in the inmate population, thereby placing medically vulnerable inmates at significant risk of contracting COVID-19." Dkt. 45 at 32. It determined that FCC Lompoc failed "to take reasonable measures to reduce risk of serious harm to inmates by failing to make meaningful use of [its] home confinement authority as expanded by the CARES Act." Dkt. 45 at 35.

On March 22, 2021, the Court ordered its expert, Dr. Homer Venters, to "complete a second site visit of FCC Lompoc no later than April 21, 2021 and submit his report no later than May 12, 2021." Dkt. 191 at 2. Dr. Venters visited FCC Lompoc on April 20 and 21, 2021, and Respondents filed his report with the Court on May 12, 2021. Dkt. 239, 239-1. Respondents' expert, Dr. Jeffrey Beard, also visited FCC Lompoc on April 20 and 21, 2021. Declaration of Jeffery Beard ("Beard Decl.") ¶ 129. Both experts observed improvements in social distancing at FCC Lompoc. Dkt. 239-1 at 18; Beard Decl. ¶ 153.

FCC Lompoc has made the Pfizer and Moderna vaccines available to all staff and inmates. Declaration of Jessica Figlenski ("Figlenski Decl.") ¶¶ 17, 19, 22(c), 23; Beard Decl. ¶ 154. FCC Lompoc continues to offer the vaccine to newly arriving inmates. Figlenski Decl. ¶ 23. Both vaccines are 94-95% effective in preventing symptomatic COVID-19. Declaration of Asma Tekbali (Tekbali Decl.") ¶ 26. The Pfizer vaccine was shown in clinical trials to be 100% effective at preventing severe disease. Data from Israel shows that the Pfizer and Moderna vaccines are highly effective across all age groups at preventing symptomatic and asymptomatic COVID-19 infections, hospitalizations, severe disease, and death, including the B.1.1.7 variant. *Id.* at ¶ 26. As

1  of May 18, 2021, 1,091 out of 1,862 (58.6%) of the inmates at FCC Lompoc have been
2  fully vaccinated, as percentage that well exceeds the 38% vaccine rate in the nation and
3  the 49.2% rate in California.[1]  Figlenski Decl. ¶ 22(b); Tekbali Decl. ¶ 28.
4         From September 2020 to March 2021, FCC Lompoc had 95 new cases of COVID-
5  19.  Dkt. 239-1 at 13.  The last known case of COVID-19 among inmates in the general
6  population at FCC Lompoc was December 31, 2020.  Figlenski Decl. ¶ 16.  The last lab-
7  confirmed inmate COVID-19 case FCC Lompoc occurred on March 26, 2021 when an
8  incoming inmate was tested as part of intake quarantine procedures.  *Id*.  There have
9  been no COVID-related hospitalizations at FCC Lompoc since August 20, 2020.
10 Figlenski Decl. ¶ 15.
11        As of May 4, 2021, FCC Lompoc has conducted 2,083 home confinement reviews
12 pursuant to the Court's Preliminary Injunction, with more reviews being conducted as
13 FCC Lompoc runs monthly updates to the class list. Declaration of Melissa Arnold filed
14 at Dkt. 243 ("Arnold Decl.") ¶¶ 5-6. FCC Lompoc has performed home confinement
15 reviews of nearly all the inmates at FCC Lompoc.  FCC Lompoc has now placed 141
16 class members in home confinement, transferred 215 to Residential Reentry Centers
17 ("RRCs"), released 82 on account of compassionate release orders, and released 124
18 other inmates for other reasons.  Arnold Dec. ¶ 7.  These actions and other population
19 management efforts have resulted in a nearly 30 percent reduction of the inmate
20 population at FCC Lompoc, which is currently under capacity.  Declaration of Charles
21 Hubbard filed concurrently herewith ("Hubbard Decl.") at ¶ 5.[2]

---

[1] https://covid19.ca.gov/vaccination-progress-data/ (last accessed May 24, 2021) showing 49.2% of Californians are fully vaccinated.

[2] Petitioners alleged as of May 15, 2020, there were 2,680 inmates at FCC Lompoc. Dkt. 16 ¶ 2.  As of May 25, 2021, the population of FCC Lompoc is 1,891.  *See* https://www.bop.gov/locations/institutions/lom/; https://www.bop.gov/locations/institutions/lof/

### III. LEGAL STANDARD

The Court has the power to modify a preliminary injunction based on new facts. *See System Federation No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961). The burden is on the movant to establish that "a significant change in facts" justifies the dissolution of the preliminary injunction. *Karnoski v. Trump*, 926 F.3d 1180, 1198-99 (9th Cir. 2019) (vacating district court's striking of motion to dissolve preliminary injunction and remanding to district court for consideration on the merits). This involves a two-step inquiry: (1) whether there has been a significant change in facts since the issuance of the preliminary injunction and (2) whether the change in facts supports a dissolution of the preliminary injunction based on "the same criteria that govern the issuance of a preliminary injunction. *Id.*

### IV. FCC LOMPOC'S OFFER OF THE VACCINE TO ALL INMATES AND THE LACK OF ANY CASE IN MONTHS WARRANT DISSOLVING THE PRELIMINARY INJUNCTION.

As shown below, an analysis of the criteria for injunctive relief demonstrates that the Court's July 14, 2020 preliminary injunction should be dissolved.

#### A. The current facts demonstrate that Petitioners have no likelihood of success on the merits.

Last July, the Court concluded that Petitioners showed a likelihood of success on the merits of their habeas claim as to the objective and subjective prongs of the Eighth Amendment inquiry. *See* Dkt. 45 at 16-19, 30-38. Regarding the objective prong, the Court found that "Petitioners show they are at substantial risk of exposures to COVID-19." Dkt. 45 at 18. This finding was based on declarations that the virus had "spread among inmates at Lompoc" and that "the conditions at Lompoc which preclude effective social distancing measures place inmates at risk for contracting COVID-19." *Id.* at 17. Ten months later, this finding no longer holds true because: (1) FCC Lompoc has offered the vaccine to all inmates, empowering them to choose whether to further protect

themselves from the risk of harm to COVID-19; and (2) the BOP's Pandemic Response Plan has worked in preventing new infections or cases of serious disease.

          1.     The Objective Risk from COVID-19 Has Diminished Dramatically; Any Remaining Risk Is Due to Inmates Refusing the Vaccine.

The Preliminary Injunction was premised on this Court's finding that it had habeas jurisdiction because "no set of conditions of confinement could be constitutional" as a result of the COVID-19 pandemic. Dkt. 45 at 14:16-18. But the changed circumstances described above make clear that inmates are not being exposed to a risk that is "objectively, 'sufficiently serious'" that it "result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To the contrary, BOP has worked expeditiously to provide inmates with the COVID-19 vaccine, which is 94-95% effective at preventing COVID-19 infection and nearly 100% effective at preventing serious illness from COVID-19. *United States v. Miller*, 2021 WL 1115863 at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen."). All Lompoc inmates have been offered the vaccine, and all 1,091 inmates who chose to accept it are now fully vaccinated. Figlenski Decl. ¶ 22(b). The BOP's assiduous efforts to make the vaccine quickly available to all FCC Lompoc inmates, in conjunction with its continued adherence to the Pandemic Response Plan, also preclude any finding that the BOP has "disregard[ed] an excessive risk to inmate health," as would be necessary to satisfy the Eighth Amendment's subjective "deliberate indifference" requirement. *Farmer*, 511 U.S. at 837; *see id.* at 834 (explaining that the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain.").

Now that all inmates have been offered the vaccine and continue to have access to the vaccine, any objective risk of serious illness from exposure to COVID-19 is within the inmate's own control. Although 729 inmates have declined the vaccine (Figlenski Decl. ¶ 22(b)), numerous courts have concluded in the compassionate release context

that an inmate cannot move for compassionate release based on COVID-19 concerns but also refuse the vaccine.  *United States v. Jackson*, 2021 WL 806366 at *1-2 (D. Minn. Mar. 3, 2021) ("Jackson's decision to refuse the vaccine flies in the face of any medical recommendation regarding the vaccines.  While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. Figueroa*, 2021 WL 1122590 at *5 (E.D. Cal. Mar. 24, 2021) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Austin*, 2021 WL 1137897 at *2 (E.D. Mich. Mar. 25, 2021) ("A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination.  Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated.")

Petitioners cannot show that the BOP is causing an objective risk of harm from COVID-19 or acting with deliberate indifferent to the virus's threat when the BOP has expeditiously provided all of them with access to a vaccine that eliminates the risk of serious harm.

### 2. The BOP's Pandemic Plan Has Prevented New COVID Cases.

The Court's earlier finding of objective risk of harm from COVID-19 is also outdated; the BOP's Pandemic Response Plan has worked to prevent new cases and quickly identified and isolated cases in its intake quarantine procedures.  There are no current COVID-19 cases at FCC Lompoc.[3]  At the FCI, "there have been no inmates positive for COVID-19 in the general population since October of last year."  Beard Decl. ¶ 155; Figlenski Decl. ¶ 16.  The last COVID-19 case in the USP general population was on December 31, 2020.  Figlenski Decl. ¶ 16.  For FCC Lompoc, "BOP

---

[3] https://www.bop.gov/coronavirus/ (last accessed May 25, 2021).

reported a total of 95 new cases . . . from September 2020 to March 2021. Approximately half of these (48) occurred in new admission settings where all people are tested, and the rest either in pre-release quarantine or new cases elsewhere in the facility." Dkt. 239-1 at 13.  In fact, there have been no new cases of COVID-19 among FCC Lompoc inmates in its general population since December 31, 2020 and the most recent case in March, 26, 2021 was an incoming inmate who was detected as part of intake quarantine testing and isolated pursuant to BOP's Pandemic Response Plan. Figlenski Decl. ¶ 16.

Moreover, in their April 20-21, 2021 inspections of FCC Lompoc, Drs. Beard and Venters observed improved conditions at FCC Lompoc that promote effective social distancing.  Dr. Beard concluded: "The removal of beds at FCI Lompoc has made a real difference in the dorms, which allows for better social distancing."  Beard Decl. ¶ 153. And Dr. Venters identified social distancing as one of the "Strengths of the BOP/Lompoc COVID-19 response."  Dkt. 239-1 at 17-18 ("Although social distancing remains a challenge, with some areas noted below in deficiencies, it was clear that the bunks in at least two areas I inspected had been moved in the days before my inspection to allow for greater social distancing.").

Regarding the subjective prong of the Eighth Amendment inquiry, the Court found last July that Respondents did not "make meaningful use" or "promptly consider home confinement or compassionate release" of "medically vulnerable inmates in light of COVID-19." Dkt. 45 at 38 & n.57.  Even putting aside the numerous measures the BOP has taken to keep inmates safe at FCC Lompoc, including vaccinations, increased social distancing, and additional measures pursuant to the Pandemic Response Plan, which themselves preclude a finding of deliberate in difference, this July 2020 finding is outdated.  FCC Lompoc has conducted 2,083 home confinement reviews pursuant to the Court's Preliminary Injunction, with more reviews being conducted as FCC Lompoc runs monthly updates to the class list.  Arnold Decl. ¶¶ 5-6.  In other words, FCC Lompoc has performed home confinement reviews of nearly all the inmates at FCC Lompoc.  FCC Lompoc has now placed 141 class members in home confinement,

7

transferred 215 to Residential Reentry Centers ("RRCs"), released 82 on account of compassionate release orders, and released 124 other inmates for other reasons. *Id.* ¶ 7.

**B.      The current facts demonstrate that Petitioners will not be irreparably harmed if the preliminary injunction is dissolved and that the balance of equities and public interest support the dissolution of the injunction.**

The Court relied on the risk of irreparable harm to Petitioners' health in light of COVID-19 to satisfy the last three criteria governing the issuance of a preliminary injunction – i.e., irreparable harm, balance of equities, and public interest. *See* Dkt. 45 at 38-41. No one can reasonably dispute that the risk of infection has been reduced drastically.[4] As noted above, despite robust testing, FCC Lompoc has had no new cases in the past two months and no cases in its general population for over five months. Dkt. 239-1 at 17-18 (¶ 27c); Figlenski Decl. ¶ 16. Furthermore, as of May 18, 2021, only 37.5% of Americans, and 38.95% of Californians have been fully vaccinated, while as of May 19, 2021, 1091 of the 1862 inmates (58.6%) at FCC Lompoc have been fully vaccinated. Figlenski Decl. ¶ 16; Tekbali Decl. ¶ 28. "The near halt of COVID-19 infections within FCC Lompoc after vaccinations began is proof that vaccinations are effective and a key factor in resuming normalcy." Tekbali Decl. Conclusion ¶ 5.

Because the risk of infection has been greatly reduced, the balance of equities no longer tips in Petitioners' favor. There are currently no COVID-19 positive inmates at FCC Lompoc in contrast to the COVID-19 rates in California. *See* Tekbali Decl. Conclusion ¶ 3. The preliminary injunction no longer serves a useful purpose in expediting home confinement or compassionate release if the risk of exposure outside of FCC Lompoc is no different or greater than the risk within FCC Lompoc.

Finally, there is no public interest in expediting the home confinement and compassionate release processes when the risk of harm to the inmates' health has been

---

[4] In *Wilson v. Ponce*, CV 20-4451, a similar COVID-19 prison conditions case concerning FCI Terminal Island, despite the absence of any Court-ordered relief, FCI Terminal Island was able to avoid new outbreaks of COVID-19 by following the BOP's Pandemic Response Plan and offering vaccines to inmates.

8

mitigated. The Court acknowledged the "public safety concerns if inmates are released or placed on home confinement, including concerns regarding increased criminal activity." Dkt. 45 at 39. Moreover, the lengthy duration of the Preliminary Injunction, issued in the early days of the pandemic, is precisely the type of procedural ill that Congress enacted the PLRA to prevent. The PLRA imposes strict time limits on preliminary injunctions in order to compel district courts to timely reexamine the injunctions' merits based on current conditions, rather than letting them continue endlessly by default. While "core" habeas corpus jurisdiction is not controlled by the PLRA's *automatic* dissolution of preliminary injunctions after three months, its premise—that COVID-19 risk at FCC Lompoc cannot be redressed short of ordering release—remains subject to the same limitations on preliminary injunctive relief. What may have appeared true ten months ago, in an unprecedented pandemic, is simply not true today. Scientists have provided us with incredible reduction of COVID-19 risk. FCC Lompoc staff have worked countless additional hours to comply with the Preliminary Injunction, on top of their demanding jobs operating a correctional institution during a pandemic. Given the change in circumstances, continuing the Preliminary Injunction (and its associated burden) is unwarranted.

## V. CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court dissolve the preliminary injunction issued in this matter on July 14, 2020, due to a significant change in facts. Respondents have offered the vaccine to all inmates. Respondents have mitigated to the risk of COVID-19 infection among FCC Lompoc's inmates to the point where no new cases have occurred in its general population in over five months. Moreover, Respondents have performed home confinement reviews of nearly all the inmates at FCC Lompoc. The preliminary injunction requiring expedited processing of home release evaluations and compassionate release requests due to the risk of COVID-19 no longer serves a purpose.

Dated: May 25, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

　　*/s/ Jasmin Yang*
JASMIN YANG
Assistant United States Attorney
Attorneys for Respondents