Terry W. Bird – Bar No. 49038
  tbird@birdmarella.com
Dorothy Wolpert – Bar No. 73213
  dwolpert@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
  sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
  kshin@birdmarella.com
Oliver Rocos – Bar No. 319059
  orocos@birdmarella.com
Christopher J. Lee – Bar No. 322140
  clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Naeun Rim – Bar No. 263558
  nrim@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Plaintiff-Petitioners Yonnedil
Carror Torres, Vincent Reed, Felix Samuel
Garcia, Andre Brown, and Shawn L. Fears

Donald Specter – Bar No. 83925
  dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
  snorman@prisonlaw.com
Sophie Hart – Bar No. 321663
  sophieh@prisonlaw.com
Patrick Booth – Bar No. 328783
  patrick@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Peter J. Eliasberg – Bar No. 189110
  peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
  pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YONNEDIL CARROR TORRES, et al.,<br><br>Plaintiff-Petitioners,<br><br>vs.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc, et al.,<br><br>Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx<br><br>**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION**<br><br>Hearing Date: June 29, 2021<br>Time:          10:00 a.m.<br>Courtroom:   8B<br><br>Honorable Consuelo B. Marshall |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................... 2

    A. Procedural History ......................................................................... 2

    B. Home Confinement Guidance ......................................................... 5

    C. Inmates Remain At Serious Risk Of Harm From COVID-19 ............... 6

III. LEGAL STANDARD ............................................................................... 6

IV. THE PRELIMINARY INJUNCTION SHOULD REMAIN IN PLACE ......... 7

    A. The Preliminary Injunction Is Necessary To Protect Inmates From The Unconstitutional Risk Of Harm At Lompoc ........................ 7

    B. Home Confinement Remains A Critical Part Of The BOP's Response To The COVID-19 Pandemic ............................................ 8

    C. Respondents' Motion Is Simply Another Effort To Circumvent Its Home Confinement Obligations ................................................. 9

V. CONCLUSION ...................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bellevue Manor Associates v. United States*,
    165 F.3d 1249 (9th Cir.1999) ................................................................. 6

*Helling v. McKinney*,
    509 U.S. 25 (1993) ................................................................................. 1

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) .............................................................. 6

*Orantes-Hernandez v. Gonzales*,
    504 F. Supp. 2d 825 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009) ................................... 7

*United States v. Austin*,
    2021 WL 1137987 (E.D. Mich. Mar. 25, 2021) ................................... 8

*United States v. Figueroa*,
    2021 WL 1122590 (E.D. Cal. Mar. 24, 2021) ...................................... 8

*United States v. Jackson*,
    2021 WL 806366 (D. Minn. Mar. 3, 2021) .......................................... 8

**Federal Statutes**

18 U.S.C.
    § 3624(c)(2) ........................................................................................... 5

CARES Act, Pub. L. No. 116-136
    § 12003(b)(2) ......................................................................................... 5

PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO
DISSOLVE THE PRELIMINARY INJUNCTION

# I.    INTRODUCTION

Nowhere is Respondents' resistance to judicial oversight clearer than in its consistent opposition to the preliminary injunction entered in this action on July 2020 (the "Preliminary Injunction).  Respondents have repeatedly tested its limits, denying home confinement to as many inmates as possible and delaying transfer to those approved.  This Court and Magistrate Castillo have found that in doing so, Respondents have breached it in a multitude of ways.  (Dkt. Nos. 105, 229.)  Despite *never* having been in compliance with the Preliminary Injunction, Respondents now seek to dissolve it.  There is no basis for doing so.

As is set out in Petitioners' contemporaneous opposition to Respondents' Motion for Summary Judgment, inmates at Lompoc remain in substantial danger of harm from COVID-19 a full year after a huge outbreak that infected over 1,000 inmates and claimed at least four lives.  (Dkt. No. 257.)  Respondents have failed to enact basic testing programs, maintain a "grossly inadequate system of health care," and have enacted a woefully deficient vaccination program that fails to provide the minimal information inmates need to make an informed decision as to whether to get vaccinated.  (*See id.* at 7-12.)  Lompoc still houses a "pool of extremely high-risk, unvaccinated patients," who remain at increased risk in a setting where social distancing is impossible.  (*Id.* at 15.)  Respondents' refusal to comply with the Preliminary Injunction and to reduce the risk to the incarcerated population demonstrates that the ongoing threat is the result of their own deliberate indifference.  (*Id.* at 21-24.)  While there are no longer hundreds of cases of COVID-19 at Lompoc, the constitution requires Respondents to take reasonable measures to *prevent* future outbreaks.  *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life threatening condition in their prison on the ground that nothing yet had happened to them."). Given that hundreds of those incarcerated remain unvaccinated and the continued uncertainty regarding the duration of immunity and protection

1

from variants, there is no significant change in circumstances that would warrant the dissolution of the Preliminary Injunction.

The BOP's own guidance supports the necessity of the Preliminary Injunction to ensure home confinement continues.  As recently as April 13, 2021, the BOP stated that "***it is imperative to continue reviewing at-risk inmates for placement on home confinement in accordance with the CARES Act and guidance from the Attorney General***."  Declaration of Oliver Rocos ("Rocos Decl.") Ex. 1 at 1.  As this Court is aware, the Attorney General's guidance was that the BOP "maximize appropriate transfers to home confinement of all appropriate inmates." *Id.*, Ex. 2 at 1.  Since the BOP is clear that home confinement remains a cornerstone of its response to the pandemic, Respondents' assertion that judicial oversight of its home confinement process is no longer required should be disregarded.

Respondents' motion is simply the culmination of their ongoing efforts to thwart the Court's order that they fulfill their obligations to protect the inmates in their care.  Having consistently violated the Preliminary Injunction, Respondents hope through this motion to avoid ever having to comply with it.  That attempt at an end run around their violations should be denied.

## II.    FACTUAL BACKGROUND[1]

### A.    Procedural History

On July 14, 2020, the Court granted Petitioners' motion for a preliminary injunction to require Respondents to make "full and speedy use of their authority under the CARES Act and evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health

---

[1]    Although the Court is familiar with the background, Petitioners repeat the essential facts for ease of reference and refer to further facts as necessary below.

1  Conditions."[2]  (Dkt. No. 45 at 49 (the "Preliminary Injunction").)  The Court also

2  provisionally certified a class of individuals comprising "all current and future

3  people in post-conviction custody at FCI Lompoc and USP Lompoc over the age of

4  50, and all current and future people in post-conviction custody at FCI Lompoc and

5  USP Lompoc of any age" with certain underlying health conditions.  (*Id.* at 48.)

6      Following the Preliminary Injunction, Respondents began identifying class

7  members using SENTRY records and reviewing class members for home

8  confinement.  (*See generally* Dkt. Nos. 50-51.)  The decisions regarding home

9  confinement with respect to each class member are documented in review

10  worksheets (the "Review Worksheets") that Respondents filed for each class

11  member denied home confinement.  (*See, e.g.*, Dkt. No. 78 at Exs. A-B.)

12      On September 10, 2020, Petitioners filed a motion to enforce compliance with

13  the preliminary injunction, including on the basis Respondents were not promptly

14  transferring those granted home confinement.  (Dkt. No. 93.)  The Court granted

15  that motion on October 8, 2020.  (Dkt. No. 105.)  Nevertheless, the parties continued

16  to dispute additional issues regarding Respondents' compliance with the Preliminary

17  Injunction.  On December 29, 2020, following the November 24, 2020 Status

18  Conference, the Court referred the parties' disputes to the Honorable Pedro V.

19  Castillo, the assigned magistrate judge on the matter.  (Dkt. No. 151).

20      The parties briefed the matter and a hearing was held on March 19, 2021,

21  following which the parties were ordered to submit supplemental briefing.  (Dkt.

22  Nos. 163, 174, 180, 188.)  The parties submitted that supplemental briefing by April

23  5, 2021.  (Dkt. Nos. 188, 201-202, 205-207.)

24      In support of Petitioners' supplemental briefing, Petitioners submitted under

25  seal a series of excel spreadsheets that summarized the Review Worksheets for 285

26

27  [2]  Petitioners' *Ex Parte* Application for a Temporary Restraining Order was

28  converted into an expedited motion for a preliminary injunction. (Dkt. Nos. 41, 42.)

3

inmates denied home confinement, together with citations to the respective Review Worksheets.  (Dkt. No. 202.)[3]  Among many other issues, the evidence showed that Respondents were failing to comply with the Preliminary Injunction by denying home confinement on the basis inmates had not served "enough" time or had spent convictions for violent crimes committed decades ago.  (Dkt. No. 201 at 1-2.)  Even more concerning was the fact that class members were being denied home confinement in whole or in part on the basis they were not old enough or did not have enough "COVID Risk Factors" or "No Underlying Health Conditions" even though, by virtue of being members of the provisional class, *this Court already had found them to be at risk of severe harm or death from COVID-19*.[4] (Dkt. No. 201 at 3-4.)  One inmate was denied solely on the basis Respondents contend he has "No COVID Risk Factors" (Dkt. No. 201 at 4), notwithstanding that this Court already determined that his age, 51, means that he is vulnerable to suffering a severe illness or even death from COVID-19.  (Dkt. No. 45 at 48.)

On April 29, 2021, Magistrate Judge Castillo issued a Report and Recommendation (the "Recommendation").  (Dkt. No. 229.)  Magistrate Judge Castillo determined that Respondents were not complying with the Preliminary Injunction and recommended this Court issue a further order requiring Respondents to take specific steps in order to bring their home confinement process into alignment with the applicable guidance—something they should have been doing all along.  (*Id.*)  Respondents objected to the Recommendation and Petitioners opposed that objection, seeking that it be entered in full.  (Dkt. Nos. 245, 253.)  The

---

[3]  Petitioners identified the 285 individuals in their filings out of the many hundreds denied home confinement because they did not have any demerits in the majority of categories of information in the Review Worksheets.  (Dkt. No. 201 at 1.)  They are identified for illustrative purposes only, and do not reflect the full range of issues identified in Respondents' home confinement review process.  (*Id.*)
[4]  The full range of Respondents' violations are identified in Petitioners' briefing regarding the motion to enforce. (*See* Dkt. Nos. 169, 180, and 201-202.)

1  Recommendation remains pending.

2  **B.    Home Confinement Guidance**

3      As this Court is aware, home confinement was recognized at the outset of the

4  pandemic as a valuable tool in protecting the health and lives of inmates.  As early

5  as March 26, 2020, then Attorney General William Barr issued a memorandum (the

6  "March 26 Memo") directing the BOP to prioritize the use of "various statutory

7  authorities to grant home confinement for prisoners seeking transfer in connection

8  with the COVID-19 pandemic."  Rocos Decl., Ex. 3 at 1.  Congress passed the

9  CARES Act the following day, and in so doing authorized the Attorney General to

10  lengthen the maximum amount of time a prisoner may be placed on home

11  confinement pursuant to § 3624(c)(2) upon finding "emergency conditions will

12  materially affect the functioning of the [BOP]."  CARES Act, Pub. L. No. 116-136,

13  § 12003(b)(2).

14      In an April 3, 2020 memorandum (the "April 3 Memo"), then Attorney

15  General Barr exercised his power under the CARES Act and declared that

16  "emergency conditions are materially affecting the functioning of the BOP."  Rocos

17  Decl., Ex. 2.  That memorandum further directed the BOP to continue processing

18  inmates eligible for home confinement under pre-CARES Act standards, to "expand

19  the cohort of inmates who can be considered for home release . . . to the most

20  vulnerable inmates at the most affected facilities," and to "immediately review all

21  inmates who have COVID-19 risk factors, as established by the CDC."  *Id.* at 1.

22  The BOP was ordered to "***immediately maximize appropriate transfers to home***

23  ***confinement of all appropriate inmates***".  *Id.* (emphasis added).

24      Various guidance has been issued since that date regarding the criteria the

25  BOP should consider when conducting home confinement reviews, including

26  memoranda on April 22, 2020, May 8, 2020, and November 16, 2020.  (Dkt. No.

27  169-1, Exs. 4-6.)  Crucially, however, the Attorney General's April 3 Memo has

28  never been withdrawn and home confinement continues to be a critical tool the BOP

1  must use to protect inmates.

2         As recently as April 13, 2021, the BOP reaffirmed that COVID-19 presents a

3  life-threatening risk to vulnerable inmates in prison and restated that as a part of its

4  "***ongoing effort to protect the health and safety of staff and inmates during the***

5  ***COVID-19 pandemic, it is imperative to continue reviewing at-risk inmates for***

6  ***placement on home confinement in accordance with the CARES Act and***

7  ***guidance from the Attorney General***" (the "April 13 Memo").  Rocos Decl., Ex. 1

8  at 1 (emphasis added).  That guidance identified factors the BOP should consider for

9  home confinement.  *Id.*  It does not, however, refer to vaccinations at all, much less

10 state that inmates who have been vaccinated or offered the vaccine are not eligible

11 for home confinement.  *Id.*

12        **C.     Inmates Remain At Serious Risk Of Harm From COVID-19**

13        As set out in the contemporaneously filed Opposition to Respondents' Motion

14 for Summary Judgment, while COVID-19 cases at Lompoc have remained low for

15 some time inmates remain at a substantial risk of severe illness or death from a

16 further outbreak in the facility and widespread additional harm.  (*See generally* Dkt.

17 No. 257.)  Since the outset of the pandemic more than a year ago, Respondents have

18 failed to take the basic steps necessary to prevent the spread of COVID-19 and there

19 is every chance that another severe and deadly outbreak could occur at any time.

20 **III.    LEGAL STANDARD**

21        A party seeking to modify or dissolve a preliminary injunction bears the

22 burden of establishing "a significant change in facts" justifying that relief.  *Karnoski*

23 *v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019).  District courts must "take all the

24 circumstances into account in determining whether to modify or vacate a prior

25 injunction or consent decree."  *Bellevue Manor Associates v. United States,* 165

26 F.3d 1249, 1256 (9th Cir.1999).  In particular, courts must determine "whether the .

27 . . injunction has outlived its purpose and usefulness—in other words, whether

28 evolving circumstances have resolved the underlying problems, thereby rendering

the injunction unnecessary." *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 830–31 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009).

## IV.    THE PRELIMINARY INJUNCTION SHOULD REMAIN IN PLACE

### A.    The Preliminary Injunction Is Necessary To Protect Inmates From The Unconstitutional Risk Of Harm At Lompoc

As set forth in detail in Petitioners' contemporary Opposition to Respondents' Motion for Summary Judgment, inmates at Lompoc remain at serious risk of harm from COVID-19.  (Dkt. No. 257.)  Even now, after more than 1,000 inmates contracted COVID-19 and at least four died from it, Lompoc's testing, medical care, and hygiene processes all remain far below the minimum necessary to provide a safe environment.  (*Id.* at 7-12.)  Respondents' deliberate indifference is manifest not only from their repeated failures to comply with the Preliminary Injunction, but from their refusal to implement those necessary changes.  (*Id.* at 21-24.)

In particular, while Respondents tout their vaccination program, 41.4% of inmates remain unvaccinated and Respondents have failed to provide a vaccination program that offers the minimum necessary vaccine education.  (*Id.* at 15-19.) Many of those who are unvaccinated are vaccine hesitant due to their serious underlying conditions—the exact same conditions that put them at a high risk of severe illness or death from COVID-19.  Yet, Respondents have refused to offer them the education and medical assurance they need in order to make an informed decision.  (*Id.*)  Dr. Venters, the Court-appointed expert, has concluded that Respondents' vaccination program has resulted in a "pool of extremely high-risk, unvaccinated patients," who remain at a very substantial risk of severe harm from COVID-19.  (*Id.* at 15.)

Respondents' citations to cases concerning the denial of compassionate release to inmates who received or were offered the vaccine are inapposite and serve merely to highlight the flaws in their vaccination program.  Mot. at 5-6.  Petitioners

7

are not seeking compassionate release, merely relief that would ensure their confinement is constitutional.  Even so, not one of the authorities Respondents cite state that an individual can be denied home confinement where they refuse a vaccine *even when they have not been provided with sufficient information to make an informed vaccination decision*.  *See United States v. Jackson*, 2021 WL 806366, at *1 (D. Minn. Mar. 3, 2021) ("The record does not bear out Jackson's claim that he was not provided with sufficient information about the vaccine"); *United States v. Figueroa*, 2021 WL 1122590 at *4-5 (E.D. Cal. Mar. 24, 2021) (noting defendant had failed to show how the advice he did receive justified his refusal to accept the vaccine); *United States v. Austin*, 2021 WL 1137987, at *2 & n.1 (E.D. Mich. Mar. 25, 2021) (noting defendant refused the vaccine without justification without stating what information he received).

The Preliminary Injunction was imposed precisely because Respondents were failing to take steps to protect those who were most at risk of harm from COVID-19. Since the evidence is clear that Respondents are still failing to protect those individuals who remain at risk, there is no "significant change in facts" that would justify the dissolution of the Preliminary Injunction.

**B.    Home Confinement Remains A Critical Part Of The BOP's Response To The COVID-19 Pandemic**

Further supporting the ongoing necessity of the Preliminary Injunction is the fact that despite a year having passed since the pandemic began, the BOP's April 13 Memo is clear that home confinement remains a cornerstone of the BOP's response. Far from home confinement being obsolete in light of developing facts, the BOP states that "*it is imperative to continue reviewing at-risk inmates for placement on home confinement in accordance with the CARES Act and guidance from the Attorney General*."  Rocos Decl., Ex. 1 at 1.  The Attorney General's exhortation to the BOP that it "maximize appropriate transfers to home confinement of all appropriate inmates" remains controlling guidance.  *Id.*, Ex. 2 at 1.  According to the

8

1  BOP itself, home confinement is just as crucial to protecting inmates from COVID-

2  19 as it ever was.  Respondents are under a clear obligation to continue to review at

3  risk inmates for home confinement and to grant it where appropriate.  In the absence

4  of any change in that fact, the Preliminary Injunction should be maintained.

5      **C.    Respondents' Motion Is Simply Another Effort To Circumvent Its**

6          **Home Confinement Obligations**

7      Finally, the fact that Respondents filed this motion to dissolve the Preliminary

8  Injunction without having actually complied with it demonstrates their contempt for

9  it and home confinement as a whole and their determination to deny this life-saving

10  measure to as many inmates as possible.

11      As set forth in Petitioners' multiple motions to enforce the Preliminary

12  Injunction, Respondents have so far denied home confinement on a broad range of

13  apparently baseless reasons, including that inmates: have not served enough time;

14  have stale, prior convictions for violent crimes; have a PATTERN score above

15  minimum; are not old enough; do not have enough underlying conditions; have a

16  "serious" current offense, albeit not violent or sexual in nature; have an alleged gang

17  affiliation; or any other basis they can identify such as a concern it would "diminish

18  the seriousness of the offense" or because the inmate "had close ties to Mexico."[5]

19  (*See* Dkt. No. 201.)  Even when Respondents have granted home confinement, they

20  have repeatedly delayed inmates' transfer for months.  (*See, e.g.*, Dkt. No. 159, Ex.

21  A (noting inmate was still incarcerated at Lompoc despite having been granted

22  home confinement five months earlier).)  Respondents' tactics in minimizing home

23  confinement, rather than "maximizing" it as they are required to do, have been

24  highly effective.  Although 2,083 medically vulnerable inmates have been reviewed

25  for home confinement, only 141—less than 7%—were granted it.  Mot. at 3.

26

27  [5]  Full details of those improper bases for denying home confinement are contained

28  in Petitioners' prior filings.  (Dkt. Nos. 93, 169, 180, 201-202, 253.)

9

This Court has found that Respondents violated the Preliminary Injunction in delaying transfer of inmates, (Dkt. No. 105), yet that tactic still continues today. (*See* Dkt. No. 243 ¶ 12 (home confinement reviews for two inmates are "paused" while they await "relocation approval").)  Magistrate Judge Castillo also found *just weeks ago* that Respondents have violated the Preliminary Injunction in multiple ways by improperly considering irrelevant factors and information.  (Dkt. No. 229.)

Properly understood, Respondents' motion is simply yet another attempt to evade the requirements of the Preliminary Injunction by reading into it an exception for inmates who have been vaccinated or who have even been offered the vaccination.  *But there is no basis for that argument.*  Respondents do not point to a single piece of guidance anywhere that says vaccinations are even relevant to home confinement decisions, let alone any guidance sufficient to counteract the clear mandate of the Attorney General and the BOP itself that home confinement must be ongoing.  No such guidance exists.

In sum, dissolving the Preliminary Injunction now would merely allow Respondents to escape their repeated, widespread violations of the Preliminary Injunction and to continue to flout their obligation to consider home confinement for suitable individuals.  Respondents should not be permitted to make an end run around this Court's orders.

## V.    CONCLUSION

For the above reasons, Petitioners respectfully request the Court deny Respondents' motion.

DATED:  June 8, 2021                    Respectfully submitted,

                                        Terry W. Bird
                                        Dorothy Wolpert
                                        Shoshana E. Bannett
                                        Kate S. Shin
                                        Oliver Rocos
                                        Christopher J. Lee
                                        Bird, Marella, Boxer, Wolpert, Nessim,
                                        Drooks, Lincenberg & Rhow, P.C.

                                        By:      /s/ Oliver Rocos
                                                    Oliver Rocos
                                             Attorneys for Plaintiff-Petitioners


DATED:  June 8, 2021                    Donald Specter
                                        Sara Norman
                                        Sophie Hart
                                        Patrick Booth
                                        Prison Law Office

                                        By:      /s/ Sara Norman
                                                    Sara Norman
                                             Attorneys for Plaintiff-Petitioners


DATED:  June 8, 2021                    Naeun Rim
                                        Manatt, Phelps & Phillips, LLP

                                        By:      /s/ Naeun Rim
                                                    Naeun Rim
                                             Attorneys for Plaintiff-Petitioners

PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO
DISSOLVE THE PRELIMINARY INJUNCTION