# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| M.R. a minor, by and through his Guardian *ad Litem*, VERONICA HAMID, <br><br> Plaintiff, <br><br> v. <br><br> WATTS LEARNING CENTER FOUNDATION, INC., *et al.*, <br><br> Defendants. | CV 20-07707 TJH (PDx) <br><br> Order <br><br> JS-6 |

The Court has considered Defendant Watts Learning Center Foundation, Inc.'s ["Watts Foundation"] motion for summary judgment or, in the alternative, for partial summary judgment, together with the moving and opposing papers.

In 1997, the Watts Foundation was incorporated – by three people who agreed to act as its first board of directors – as a nonprofit public benefit corporation with a tax-exempt status under § 501(c)(3) of the Internal Revenue Code. Since 2009, the Watts Foundation has operated the Watts Learning Center Charter Middle School ["Watts Charter School"] as a publicly funded charter school.

M.R. attended Los Angeles Unified School District's ["LAUSD"] South Park Elementary School through sixth grade. When he was in the fourth grade, M.R.

fractured his leg on the playground. Apparently, that was M.R.'s fourth bone fracture. Thereafter, he was diagnosed with having osteogenesis imperfecta, which is commonly known as brittle bone disease.

For the 2019-2020 academic year, M.R.'s mother and Guardian *ad Litem*, Veronica Hamid, enrolled him in seventh grade at the Watts Foundation's Watts Learning Center Charter Middle School ["Watts Charter School"]. On September 20, 2019, about three weeks into the school year, M.R. tripped while running in a physical education class and fractured his leg.

While the parties disagree as to who knew, or should have known, at the Watts Charter School about M.R.'s brittle bone disease and the accommodations that he required and, indeed, was entitled to receive, because of that diagnosis, there is no dispute that the Watts Charter School did not provide M.R. with any accommodations. Hamid blames the Watts Charter School and the LAUSD for not providing M.R. with accommodations, while the Watts Foundation blames Hamid and the LAUSD for failing to provide it with sufficient notice as to M.R.'s diagnosis and required accommodations.

On June 12, 2020, M.R. filed this action in the Los Angeles Superior Court against the Watts Charter School and LAUSD for their failure to accommodate his disability. M.R. asserted claims against the Watts Foundation and the LAUSD for: (1) Violation of Title II of the Americans with Disabilities Act ["ADA"], 42 U.S.C. §§ 12131, *et seq.*; (2) Violation of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*; (3) Violation of § 504 of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.* ["Rehabilitation Act"]; (4) Violation of Cal. Govt Code § 11135; (5) Violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ["Unruh Act"]; (6) Violation of the Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.* ["Disabled Persons Act"]; (7) Negligence; and (8) Negligent hiring, supervision and retention of an employee.

The Watts Foundation removed based on federal question jurisdiction.

Because Cal. Govt Code § 11135 provides for only equitable relief and M.R. no

longer attends the Watts Charter School, he dismissed his § 11135 claim in his opposition brief.

**Summary Judgment Standard**

When considering a motion for summary judgment, where M.R., as the nonmoving party, has the burden of proof at trial for his claims, summary judgment should be granted if he failed to produce evidence to establish a *prima facie* case for any claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). However, the Watts Learning center – as the moving party without the burden of proof at trial – has the initial burden to point out that M.R. did not have enough evidence to establish a *prima facie* case for each of his claims. *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008). If the Watts Foundation's initial burden is met, then the burden shifts to M.R. to establish, with admissible evidence, a *prima facie* case for each of his claims. *See Celotex*, 477 U.S. at 322. If M.R. meets his burden of establishing a *prima facie* case for each of his claims, then the Watts Foundation's motion for summary judgment will be denied. Neither party, here, needs to prove, or disprove, that there are triable issues of material fact.

At this juncture, the Court cannot weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Further, the Court must accept M.R.'s facts as true and draw all reasonable inferences in his favor. *See Liberty Lobby*, 477 U.S. at 255.

**Preliminary Matters**

The parties set forth, at times, incorrect summary judgment burdens.

Further, the parties' briefs contained very few direct citations to the evidence. Instead, the parties cited to their statements of controverted or uncontroverted facts, which then cited, at times, to declarations, which, then, cited, at times, to exhibits or to deposition transcripts, which, then, cited, at times, to exhibits. The Court is puzzled as to why the parties did not simply provide direct citations to their evidence. "Judges are not like pigs, hunting for truffles buried in briefs, much less buried in disorganized,

scattershot evidentiary submissions." *Faulkner v. Wausau Bus. Ins. Co.*, 571 F. App'x. 566, 569 (9th Cir. 2014).

After wasting a significant amount of time searching for evidence, the Court stopped searching. Consequently, neither party met its summary judgment burden as to any issue which required the Court to consider either their facts or fact-based arguments. However, the Court will make legal determinations that are not dependant on disputed facts.

Finally, the Watts Foundation argued that co-defendant LAUSD lacked standing to file its opposition to the instant motion because the instant motion was directed only to M.R.'s claims against the Watts Foundation. The Watts Foundation, and its counsel, should know that the Court deems every case pending before it to be a quest for the truth. If LAUSD, as a party to this case, thinks that it has evidence or arguments that could assist the Court in its determination of the truth, the Court welcomes its efforts.

**Charter Schools – Private Entities with Public Benefits**

The parties strongly disagree as to whether the Watts Foundation is a private or public entity. Indeed, throughout his opposition brief, M.R. referred to the Watts Foundation as "the Corporation" to emphasize her position.

The Watts Foundation is a private, not public, entity that operates the Watts Charter School. The Watts Charter School is a privately run, but publicly funded, school. As a publicly funded charter school, the Watts Charter School is entitled to some, but not all, of the benefits that public schools enjoy.

"For **certain purposes**, [a charter] school is 'deemed to be a "school district,"' is 'part of the Public School system,' falls under the 'jurisdiction' of that system, and is subject to the 'exclusive control' of public school officers." *Wells*, 39 Cal. 4th at 1186. (Citations omitted and emphasis added). In California, charter schools exist pursuant to the Charter Schools Act, Cal. Educ. Code §§ 47600, *et seq*. ["CSA"]. The CSA "is intended to allow 'teachers, parents, pupils, and community members to establish … schools that operate independently from the existing school district

structure.' By this means, the CSA seeks to expand learning opportunities, encourage innovative teaching methods, provide expanded public educational choice, and promote educational competition and accountability within the public school system. If statutory requirements are met, public school authorities must grant the petition of interested persons for a charter to operate such a school within a public school district." *Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164, 1186 (2006) (citations omitted).

"A charter school must operate under the terms of its charter, and must comply with the CSA and other specified laws, but is otherwise exempt from the laws governing school districts." *Wells*, 39 Cal. 4th at 1186. "A charter school may elect to operate as, or be operated by, a nonprofit corporation organized under the Nonprofit Public Benefit Corporation Law." *Wells*, 39 Cal. 4th at 1186. "A charter school is eligible for its share of state and local public education funds, which share is calculated primarily, as with all public schools, on the basis of its [average daily attendance]." *Wells*, 39 Cal. 4th at 1186.

"Though charter schools are deemed part of the system of public schools for purposes of academics and state funding eligibility, and are subject to some oversight by public school officials, … charter schools … are operated, not by the public school system, but by distinct outside entities … that are given substantial freedom to achieve academic results free of interference by the public educational bureaucracy." *Wells*, 39 Cal. 4th at 1200-1201.

The California Supreme Court, in *Wells,* clarified that charter schools are operated "by distinct outside entities"; the CSA assigns "no … sovereign significance to charter schools or their operators"; and "[e]xcept in specified respects," charter schools are exempt from the laws governing school districts. *Wells*, 39 Cal. 4th at 1201.

In 2020, the California Court of Appeal, in *Los Angeles Leadership Academy v. Prang*, 46 Cal. App. 5th 270 (2020), concluded that "[the California] Legislature has specified precisely how, and to what extent, and under which statutory provisions

charter schools are deemed to be part of the system of public schools, or deemed to be a 'school district.'" 46 Cal. App 5th at 279. (Citations omitted). Further, the Court of Appeal acknowledged that "the law is clear that 'public benefit corporations are not public entities.' That term – public entities – "is defined … throughout the California codes," and "[i]n every instance, the entities listed as public entities – from traditional bodies like counties and cities to more recent innovations like public authorities and public corporations – have one thing in common: Each is vested with some degree of sovereignty. A charter school has no sovereign authority … ." *Los Angeles Leadership Academy,* 46 Cal. App 5th at 281. (Citations omitted).

**Unruh Act Claim**

The California Court of Appeal, in *Brennan B. v. Superior Court of Contra Costa County*, 7 Cal. App. 5th 367 (2020), undertook an in-depth, historical analysis of the Unruh Act to conclude that public school districts are not subject to the Unruh Act because they are not business establishments. However, public school districts are subject to the Disabled Persons Act, which substantially overlaps and compliments the Unruh Act but is more narrowly focused. *Brennan B.*, 7 Cal. App. 5th at 404. Further, as with the Unruh Act, a violation of the ADA is a *per se* violation of the Disabled Persons Act. *Brennan B.*, 7 Cal. App. 5th at 404.

Thus, the question, here, is whether a charter school operated by a nonprofit public benefit corporation is a business establishment under the Unruh Act.

The California Court of Appeal, in *Brennan B.*, reached its holding regarding public school districts after considering that, *inter alia*: (1) The overall function of a public school district is not to enhance its economic value; (2) Public school districts do not provide a physical plant for patrons to use at their convenience or for which they pay a fee; (3) Commercial transactions with the general public are not an integral part of a public school district's overall operations; (4) The attributes and activities of a public school district are not the functional equivalent of a classic place of public accommodation or amusement; (5) Whatever commercial activities a public school

district may engage in – such as allowing school clubs or booster organizations to sell goods to raise funds for extracurricular student activities, or allowing school athletic departments to charge a small admission fee for student athletic events – do not involve the sale of access to the basic education that public school districts are charged by the state with delivering to every school-age child pursuant to state constitutional mandates; and (6) Public school districts do not sell the right to participate in the basic educational programs and services they deliver. *Brennan B.*, 7 Cal. App. 5th at 389. (Citations omitted.)

Charter schools share the same characteristics that the *Brennan B.* Court relied upon to conclude that public school districts are not business establishments subject to liability for violations of the Unruh Act. Further, as explained in *Wells*, 39 Cal. 4th at 1186, charter schools are, at times, deemed to be school districts. Consequently, like public school districts, charter schools are not business establishments subject to liability under the Unruh Act but, like public school districts, they are subject to liability under the Disabled Persons Act.

Consequently, partial summary judgment will be granted in favor of the Watts Foundation as to M.R.'s Unruh Act claim.

**ADA Claims**

M.R. alleged claims against the Watts Foundation under both Title II and Title III of the ADA. Title II applies only to public entities, 42 U.S.C. § 12132, while Title III applies only to private entities that provide public accommodations, 42 U.S.C. § 12181-82. Public schools are subject to Title II, and not Title III, of the ADA. *K.M. ex rel. Bright v. Tustin Unified School District*, 725 F.3d 1088, 1097 (9th Cir. 2013). Therefore, because charter schools are part of California's public school system, *see Wells*, 39 Cal. 4th at 1200-1201, the Watts Foundation is subject only to Title II of the ADA.

Consequently, partial summary judgment will be granted in favor of the Watts Foundation as to M.R.'s Title III ADA claim.

**Exhaustion of the ADA and Rehabilitation Act Claims**

M.R. alleged that the Watts Charter School violated the ADA and the Rehabilitation Act by discriminating against him based on his disability, thereby excluding him from educational services, programs or activities. Though M.R. did not allege a claim for violation of the Individuals with Disabilities Education Act ["IDEA"], he is, nevertheless, required to first exhaust the IDEA administrative process before bringing claims under the ADA or the Rehabilitation Act if the relief sought by those claims is, also, available through the IDEA. 20 U.S.C. § 1415(l). To satisfy IDEA administrative exhaustion, a case must initially be submitted to an IDEA hearing officer. *Fry*, 137 S. Ct. at 754. Here, M.R. did not exhaust the IDEA administrative process.

The IDEA exhaustion requirement is triggered if a complaint charges the denial of a free and appropriate public education ["FAPE"], regardless of whether a plaintiff alleges claims under the IDEA, the ADA or the Rehabilitation Act. *See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 754 (2017). A FAPE "comprises 'special education and related services' – both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Fry, 137 S. Ct. at 748–49 (citing 20 U.S.C. §§ 1401(9), (26), (29)). However, administrative exhaustion is not required when a plaintiff seeks redress for harms independent of a FAPE denial. *Fry*, 137 S. Ct. at 754-5.

The question, here, then, is whether M.R.'s ADA and Rehabilitation Act claims are based on the Watts Charter School's failure to provide him with a FAPE. Like in *D.D. by and through Ingram v. Los Angeles Unified School District*, 18 F.4th 1043 (9th Cir. 2021) (*en banc*), the crux of M.R.'s complaint, here, is that the Watts Charter School failed to provide a required accommodation that he needed to access his education, namely a state-mandated physical education class required pursuant to Cal. Educ. Code § 5122(a). That alleged failure amounts to an allegation that Watts Charter School failed to provide M.R. with a FAPE. Consequently, M.R. needed to exhaust

the IDEA administrative process before filing this case.

The failure to exhaust the IDEA administrative process is not jurisdictional, but, instead, is a claims processing affirmative defense, *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 907 n.2 (9th Cir. 2020), that should be dealt with by way of a summary judgment motion, *see McIntyre*, 976 F.3d at 909 n.6, as the Watts Foundation has done here.

Consequently, partial summary judgment will be granted in favor of the Watts Foundation as to M.R.'s claims based on violations of Title II of the ADA and the Rehabilitation Act.

Accordingly,

**It is Ordered** that partial summary judgment be, and hereby is, **Granted** in favor of Watts Learning Center Foundation and against Plaintiff M.R. as to his claims for violations of the the Unruh Act, the ADA and the Rehabilitation act.

**It is further Ordered** that the motion for summary judgment or, in the alternative, for partial summary judgment be, and hereby is, **Denied** as to all other claims, with leave to renew.

**It is further Ordered** that the Court declines to retain supplemental jurisdiction over Plaintiff's remaining state law claims.

**It is further Ordered** that this case be, and hereby is, **Remanded** to the Los Angeles Superior Court.

Date: March 23, 2022

Terry J. Hatter, Jr.
Senior United States District Judge