Terry W. Bird – Bar No. 49038
  tbird@birdmarella.com
Dorothy Wolpert – Bar No. 73213
  dwolpert@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
  sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
  kshin@birdmarella.com
Oliver Rocos – Bar No. 319059
  orocos@birdmarella.com
Christopher J. Lee – Bar No. 322140
  clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Naeun Rim
  nrim@manatt.com
Ima E. Nsien – Bar No. 304096
  insien@manatt.com
David Boyadzhyan – Bar No. 311386
  dboyadzhyan@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4380
Facsimile: (310) 312-4224

Attorneys for Plaintiff-Petitioners Richard
Garries, and Andrew Ybarra

Donald Specter – Bar No. 83925
  dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
  snorman@prisonlaw.com
Sophie Hart – Bar No. 321663
  sophieh@prisonlaw.com
Patrick Booth – Bar. No. 328783
  patrick@prisonlaw.com
Jacob J. Hutt – MJP No. 804428
  jacob@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Peter J. Eliasberg – Bar No. 189110
  peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
  pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

C. Ryan Fisher – Bar No. 312864
  cfisher@manatt.com
MANATT. PHELPS & PHILLIPS, LLP
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tele: (714) 371-2500
Facsimile (714) 371-2550

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICHARD GARRIES; ANDREW YBARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff-Petitioners,<br><br>vs.<br><br>LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons,<br><br>Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx<br><br>**DECLARATION OF NAEUN RIM IN SUPPORT OF AMENDED JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, AND CLASS NOTICE**<br><br>Filed Concurrently with Amended Notice of Motion and Motion; and Proposed Order |

1

Assigned to Hon. Consuelo B. Marshall
Courtroom 8D

# DECLARATION OF NAEUN RIM

I, Naeun Rim, declare as follows:

1.      I am an active member of the Bar of the State of California and a Partner with Manatt, Phelps & Phillips, LLP, attorneys of record for Plaintiff-Petitioners Richard Garries and Andrew Ybarra in this action.  I make this declaration in support of the Amended Joint Motion for Certification of Settlement Class, Preliminary Approval of Settlement Agreement and Class Notice.  Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the amended settlement agreement executed by the parties.

3.      Attached hereto as **Exhibit B** is a true and correct copy of the amended proposed class notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on June 27, 2022, at Los Angeles, California.

*/s/ Naeun Rim*
Naeun Rim

# EXHIBIT "A"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RICHARD GARRIES; ANDREW YBARRA, individually and on behalf of all others similarly situated, | No. CV 20-4450-CBM-PVCx **SETTLEMENT AGREEMENT** |
| Plaintiff-Petitioners, | |
| v. | |
| LOUIS MILUSNIC, in his capacity as Warden of Lompoc; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons, | |
| Defendant-Respondents. | |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into effective May 17, 2022 by Plaintiff-Petitioners Richard N. Garries and Andrew G. Ybarra[1] on behalf of the members of the proposed class defined herein in Section 1 (the "Settlement Class"), on the one hand (collectively, the "Petitioners"), and the Defendant-Respondents, Bryan Birkholz in his official capacity as the current Warden[2] (the "Warden") of the Federal Correctional Complex located in Lompoc, California ("FCC Lompoc") and Michael Carvajal in his official capacity as Director of the Bureau of Prisons (the "BOP"), on the other hand (collectively, the "Respondents").

## RECITALS

Whereas, on May 16, 2020, several FCC Lompoc inmates brought this action (the "Action") by filing a Complaint—Class Action For Declaratory and Injunctive Relief And Petition For Writ of Habeas Corpus [Dkt. no. 1] and then on June 1, 2020 filing a Corrected Complaint—Class Action For Declaratory and Injunctive Relief And Petition For Writ of Habeas Corpus [Dkt. no. 16] (the "Petition") alleging that the Respondents were violating the Eighth Amendment rights of FCC Lompoc prisoners by (i) failing to make full use of their home confinement and compassionate release authority, and (ii) failing to implement adequate measures to prevent the spread of COVID-19 at FCC Lompoc;

Whereas Respondents deny and vigorously dispute that any FCC Lompoc inmate at issue in the present litigation has been treated with deliberate indifference relative to COVID-19 risk;

[1]    Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears were also named Petitioners when this action was filed, but the parties have agreed to dismiss them from the case because they are no longer in custody at Lompoc.

[2]    Bryan Birkholz is a successor of named defendant Louis Milusnic in the official capacity of warden of FCC Lompoc.

1

Whereas, on March 26, 2020, Attorney General William Barr issued a memorandum that directed the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," and provided a non-exhaustive list of discretionary factors for evaluating inmates for home confinement;

Whereas, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the Director of the BOP to lengthen the amount of time prisoners can be placed on home confinement under Section 3624(c)(2), provided that the Attorney General makes a finding that "emergency conditions will materially affect the functioning of the Bureau";

Whereas, on April 3, 2020, Attorney General Barr issued a memorandum in which he found that "emergency conditions are materially affecting the functioning of the Bureau" and directed the Bureau to "move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions" while cautioning that the BOP must continue to make "individualized [home confinement] determinations";

Whereas, on July 14, 2020, United States District Judge Consuelo B. Marshall entered an order in this Action issuing a Preliminary Injunction (the "Preliminary Injunction Order") [Dkt. no. 45] that provisionally certified a class of FCC Lompoc inmates who are medically vulnerable to COVID-19 and set forth certain directives as to their review for placement on home confinement;

Whereas the Preliminary Injunction Order required the Respondents to file a list of provisional class members with the Court along with a declaration explaining the process used to identify the provisional class members in the list;

Whereas the Respondents have been reviewing provisional class members for potential home confinement release and filing declarations setting forth their decisions in that regard;

2

1    Whereas the BOP has statutory authority to transfer prisoners to home
2    confinement under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541;
3        Whereas the parties have been actively litigating this case;
4        Whereas the parties desire to resolve the present litigation on the mutually
5    acceptable terms set forth below, which they agree are a fair, reasonable and
6    adequate resolution of this case;
7        NOW, THEREFORE, in consideration of the promises set forth herein, the
8    parties agree and covenant as follows:

**SETTLEMENT TERMS**

**Settlement Class**

1.       For purposes of this Agreement, the "Underlying Health Conditions"
are defined as "all current and future people in post-conviction custody at FCI
Lompoc and USP Lompoc over the age of 50, and all current and future people in
post-conviction custody at FCI Lompoc and USP Lompoc of any age with
underlying health conditions including chronic obstructive pulmonary disease;
serious heart conditions such as heart failure, coronary artery disease, or
cardiomyopathies; Type 2 diabetes; chronic kidney disease; sickle cell disease;
immunocompromised state from a solid organ transplant; obesity (body mass index
of 30 or higher); asthma; cerebrovascular diseases; cystic fibrosis; hypertension or
high blood pressure; immunocompromised state from blood or bone marrow
transplant; immune deficiencies, HIV, or those who use corticosteroids, or use
other immune weakening medicines; neurologic conditions such as dementia; liver
diseases; pulmonary fibrosis; thalassemia; Type 1 diabetes; and smokers," as
defined in the Preliminary Injunction Order [Dkt. no. 45, at p. 48].

2.       This Agreement is entered into on behalf of all members of the
"Settlement Class," also referred to as the "Class Members," which consists of any
person who is incarcerated at FCC Lompoc anytime from the date this Agreement

3

is signed by the parties, i.e. May 17, 2022, until the termination date of this Agreement, i.e. December 17, 2022, unless otherwise modified by the parties pursuant to the terms of this Agreement, who has one or more of the Underlying Health Conditions.  However, any person who has been transferred or released from FCC Lompoc will no longer be a member of the class after that transfer or release even if he was previously a member, unless the person is returned to FCC Lompoc.

**Inmate Home Confinement Reviews**

3.      To the extent they have not already done so, the Respondents agree to have all members of the Settlement Class reviewed for home confinement pursuant to Attorney General Barr's March 26 and April 3, 2020 memoranda, the current BOP guidance at the time of each review, and the standards set forth in the July 14, 2020 Preliminary Injunction Order [Dkt. no. 45], the October 8, 2020 Order Granting Motion to Enforce Compliance with Preliminary Injunction and for Order to Show Cause [Dkt. no. 105], and the August 27, 2021 Order Accepting Findings, Conclusions and Recommendations of United States Magistrate Judge [Dkt. no. 290] (collectively, the "District Court Preliminary Injunction Orders").

4.      Consistent with the Preliminary Injunction Order, Respondents shall continue to make full and speedy use of their authority under the CARES Act and evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness or death from COVID-19 based their Underlying Health Conditions.

5.      To the extent that the standards set forth in the District Court Preliminary Injunction Orders differ from Attorney General Barr's March 26 and April 3, 2020 memoranda or the current BOP guidance that is in effect at the time of each review, the standards for home confinement review set forth in the District Court Preliminary Injunction Orders shall control.

4

6.      Respondents will continue to create Review Worksheets for each person being reviewed that include: (i) a list of the person's COVID-19 risk factors; (ii) the person's age; (iii) the offense/s of conviction; (iv) the person's projected release date (PRD); (v) the percentage of statutory time served; (vi) a list of pending charges or detainers, if applicable; (vii) the person's security level; (vii) the person's PATTERN risk level; (viii) if the release plan has been deemed unsuitable, the reasons for that conclusion; and (ix) the person's DST, if he or she has one. If Respondents determine that a Class Member is not eligible for home confinement, they will provide a written explanation of the factual basis for any factors relied upon for the denial.

7.      Respondents shall complete all steps necessary to finalize the transfer to home confinement of class members within one month of the decision to grant that inmate home confinement. If Respondents are unable to meet this deadline for any particular class member, they shall submit to Petitioners' counsel a written explanation of why they were unable to do so no later than one month and one week after the grant of home confinement.

## Conditions of Confinement

8.      <u>Testing</u>: Respondents will follow the BOP's guidelines regarding the testing of inmates as set forth in the most recent version of Module 3 of the BOP COVID-19 Pandemic Response Plan and COVID-19 Modified Operations Matrix. This includes re-testing of close contacts of positive patients during widespread institution transmission. As defined in Module 4 of the BOP COVID-19 Pandemic Response Plan, an individual is considered a close contact if they have not been wearing appropriate PPE and a) have been within 6 feet of an infected person for a cumulative total of 15 minutes or more over a 24-hour period starting from 2 days before illness onset (or, for asymptomatic patients, 2 days prior to test specimen collection) OR b) had direct contact with infectious secretions of a COVID-19

5

case.  Considerations when assessing close contacts include the proximity to the infected person, duration of exposure, and the clinical symptoms of the person with COVID-19 (i.e., coughing likely increases exposure risk as does an exposure to severely ill persons).

9.      As long as it is consistent with the guidelines in Modules 3 and 4 of the BOP COVID-19 Pandemic Response Plan, Respondents will use a Test-In/Test-Out strategy for inmates placed in quarantine.

10.     Symptoms checks: FCC Lompoc will perform daily symptoms checks for all people who have been placed in quarantine, as set forth in the BOP COVID-19 Pandemic Response Plan, Module 4, for as long as that requirement remains in effect.

11.     Worker screening: When FCC Lompoc is at Operational Level 3, as defined in the Modified Operations Matrix and Module 8 of the BOP COVID-19 Pandemic Response Plan, FCC Lompoc will follow the BOP guidelines to screen workers assigned to health service units, for as long as those guidelines remain in effect.

12.     Medical isolation: FCC Lompoc will follow BOP guidelines regarding the use of the Special Housing Unit (SHU) for medical isolation, as set forth in the BOP COVID-19 Pandemic Response Plan, Module 4, for as long as these guidelines remain in effect. Specifically, the medical isolation must be "operationally distinct" from disciplinary or administrative restricted housing and include daily medical visits; access to mental health services; make efforts to provide similar access to radio, clock/watch, reading materials, personal property, and commissary as in the individual's regular housing unit; and consider increased telephone privileges to maintain mental health and connection during isolation.

6

**Monthly Updates**

13.     In lieu of filing reports with the district court, the Respondents shall provide Petitioners' counsel with monthly updates ("Monthly Updates") to the class list, Review Worksheets, and charts of class members approved for placement on home confinement reflecting dates of projected release and dates of actual release, through the termination date of this Agreement. The Monthly Updates shall also include a report regarding FCC Lompoc's compliance with the provisions of paragraphs 8 – 12 of this agreement, for as long as the referenced Modules of the BOP COVID-19 Pandemic Response Plan and COVID-19 Modified Operations Matrix remain in effect.

**Resolution and Release of Claims/No Admission of Wrongdoing**

14.     The parties agree that this Agreement resolves all claims in the above-captioned case.

15.     Upon final approval of this Agreement by the district court, the named Petitioner and all members of the Settlement Class, as defined in Paragraph 2 above, individually and behalf of all their respective heirs, beneficiaries, successors and assigns, in consideration of the benefits of this Agreement, release and forever discharge the Respondents and BOP, and all their respective present and former officers, employees, agents, heirs, successors and assigns, from all actions, causes of action, suits, claims, or controversies, for any and all forms of non-monetary relief arising from or based on either: (i) any denial of home confinement or exercise of the BOP's statutory authority under the CARES Act to transfer prisoners to home confinement which may be brought during the time this Agreement is in effect, except as otherwise provided under this Agreement, or (ii) any acts or omissions alleged or that could have been alleged in the Action relating to risks associated with the COVID-19 pandemic occurring prior to the Effective Date. For the avoidance of doubt, this release applies to any and all Class

7

Members' habeas corpus cases pursuant to 28 U.S.C. § 2241 seeking any relief due to the COVID-19 pandemic for acts or omissions occurring prior to the Effective Date.

16.    This Agreement shall in no way be deemed an admission by any party of liability, fault, misconduct, or a violation of any policies, procedures, or federal, state, or local laws or regulations. Neither this Agreement nor the fact of this settlement shall be construed to be, nor shall it be, admissible in any proceeding as evidence of an admission by any party of a violation of any policies, procedures, or federal, state, or local laws or regulations; nor shall this Agreement or the fact of settlement constitute evidence of any admission by any party as to any issue of law or fact. This Agreement is entered into by all parties for the purposes of compromising disputed claims and avoiding the expenses and risks of litigation. This Agreement shall only ever be admissible in a proceeding to enforce its terms.

<b>Duration and Termination of Settlement</b>

17.    The parties intend that this Agreement will remain in place until a) December 17, 2022, b) the day the national emergency declaration with respect to the Coronavirus Disease 2019 (COVID–19) under the National Emergencies Act (50 U.S.C. 1601 et seq.) terminates; or c) the day the Attorney General determines that emergency conditions no longer materially affect the functioning of the Bureau of Prisons, whichever is earlier, but upon the mutual consent of the parties, this date of termination may be modified, shortened or extended.

18.    Upon termination of this Agreement, without the need for any further order of any state or federal court, all jurisdiction of any court to enforce this Agreement shall end, apart from the enforcement of any judgment or order to pay fees and costs.

## Certification of the Settlement Class, Vacatur, and Dismissal

19.     This Agreement is not a consent decree and shall not be incorporated into any judgment of the district court. To the contrary, this is a private settlement agreement governed by the provisions of 18 U.S.C. § 3626(c)(2)(A) which the parties agree is a fair, reasonable and adequate resolution of this Action.

20.     Petitioners and Respondents shall jointly move pursuant to Fed. R. Civ. P. 23(e) & (h) and 41(a)(2) to approve this Agreement, for certification of a settlement class consisting of the Settlement Class, and to dismiss with prejudice the Petition concurrent with the district court's final approval of the Agreement. The motion for approval of this Agreement must request that the district court:

a.     Preliminarily approve the Agreement as being a fair, reasonable, and adequate settlement within the meaning of Federal Rule of Civil Procedure 23 and applicable law, and consistent with due process;

b.     Preliminarily approve the certification of a settlement class;

c.     Appoint Petitioners Garries and Ybarra as class representatives;

d.     Dismiss Petitioners Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears from this action, since they are no longer incarcerated at FCC Lompoc;

e.     Appoint Petitioners' counsel as class counsel;

f.     Approve the Notice Plan set forth below; and

g.     Set the date and time of a fairness hearing at which the district court will decide whether to approve the Agreement as being a fair, reasonable, and adequate settlement of the claims of the certified class.

21.     Concurrently with the contemplated motion seeking preliminary approval of the Agreement and provisional class certification, the parties will jointly submit to the district court a motion to vacate the District Court Preliminary Injunction Orders, meaning the July 14, 2020 Preliminary Injunction Order [Dkt. no. 45], the October 8, 2020 Order Granting Motion to Enforce Compliance with Preliminary Injunction and for Order to Show Cause [Dkt. no. 105], and the August 27, 2021 Order Accepting Findings, Conclusions and Recommendations of United States Magistrate Judge [Dkt. no. 290], with such vacatur to be entered only if, and not before, the time the Court enters an order granting final approval of this Agreement.  It is understood and agreed to by the parties that the entry of an order vacating the Preliminary Injunction Orders is a condition precedent to the effectiveness of this Agreement and the obligations of the parties thereunder, and that the parties shall request that such an order shall not issue unless and until the Agreement has been finally approved by the district court.

22.     Promptly after this Agreement is signed, the parties will stipulate to request that the district court issue an order shortening time so that the matter is submitted to the Court for final approval of the settlement no later than June 30, 2022.  The parties shall also request that the district court stay its rulings on the Respondents' pending motion to dissolve the preliminary injunction [Dkt. no. 250], the Respondents' motion for summary judgment [Dkt. no. 251], and the Petitioners' motion for class certification [Dkt. no. 345] until after the fairness hearing on this Agreement is held. If the Agreement is approved by the district court in connection with the fairness hearing, the parties agree that these three motions will then be withdrawn as moot.

23.     **Notice to Class Members.**  The parties will propose to the district court a notice that shall be given to Class Members upon preliminary approval of the Agreement via the following:

10

a.   Posting in FCC Lompoc, including at locations and in formats accessible to disabled inmates;

b.   Posting an electronic version of the notice on the electronic bulletin board of TRULINCS available to all Class Members in FCC Lompoc.

24.   "Effective Date" means the date when the district court has issued (1) an order finally approving this Agreement; (2) an order vacating its Preliminary Injunction Order; and (3) an order dismissing the Action with prejudice.

25.   The parties shall use their best efforts to ensure that the Agreement becomes effective. If, notwithstanding such best efforts, the Effective Date does not occur and it becomes apparent that the Effective Date will not occur, the parties shall attempt to negotiate a new agreement resolving the claims in this Action. Should the parties be unable to negotiate a new agreement, the parties shall be returned to their respective positions in the Action as of the date of the execution of the Agreement.

## Dispute Resolution Procedures

26.   Throughout the duration of the Agreement, the parties agree to enforce the Agreement and to only resolve any dispute, controversy or claim arising out of or relating to this Agreement pursuant to the procedures outlined below.

27.   The following Dispute Resolution Procedures will govern any dispute, controversy or claim arising out of or relating to this Agreement, or any breach or enforcement of this Agreement:

a. In the event of any dispute, controversy or claim arising out of or relating to this Agreement, or any breach or enforcement of this Agreement, counsel for the parties shall meet and confer with each

11

other before seeking intervention from the Court. The parties agree to meet and confer within 5 days of notice of a dispute.

b. Any party to this Agreement may request that a mediator, or a United States Magistrate Judge for the Central District of California, participate in a meet and confer, or in a meeting subsequent to a meet and confer, in order to facilitate informal resolution of the issue.

c. If the parties are unable to resolve their dispute informally, Petitioners may move for reinstatement of the Action in the Central District of California, alleging that the Respondents have breached the Agreement. If the district court finds that there has been such a breach, Petitioners' sole remedy will be reinstatement of the injunctive relief claims brought in the lawsuit at the time of the alleged breach.

d. Petitioners agree not to seek any attorneys' fees and/or costs for any time spent in any portion of dispute resolution.

**Other Provisions**

28.    It is understood between the parties that certain presently unforeseeable events or conditions, including but not limited to changes in the established treatment practices or standard of care for treatment of COVID-19 infection or the prevalence or effect of COVID-19 in the state of California, may prevent or obviate the need for compliance with this Agreement. If so, the parties agree to enter into good-faith discussions to attempt to resolve such issues or modify or terminate this Agreement as appropriate. In the event the parties are unable to reach agreement, the Dispute Resolution Procedures set forth above shall apply.

29.    The provisions of this Agreement may be temporarily suspended or modified in part or in their entirety if the Respondents or their designees determine

12

that a "genuine emergency" exists at FCC Lompoc. Genuine emergency means any extraordinary circumstances under which it is reasonable to conclude that there is any actual or potential threat to the security of FCC Lompoc, or to the safety of the staff, prisoners or other persons within any one of the institution's facilities. If a "genuine emergency" lasts longer than forty-eight hours, or occurs more than once in a one-week period, Respondents shall report to Petitioners' counsel, within forty-eight hours except for good cause, the date of the emergency, the nature of the emergency, and which provisions of this Agreement have been temporarily suspended. For the avoidance of doubt, this Section is subject to the Dispute Resolution Procedures in Paragraphs 26 and 27.

### Attorneys' Fees and Costs

29.     Respondents shall pay Petitioners the amount of $375,000.00 in attorney's fees. The parties shall otherwise bear their own costs. Petitioners agree to accept Respondents' payment of $375,000.00 as full and complete satisfaction of Petitioners' claims for attorneys' fees, costs, and litigation expenses, inclusive of any interest. Petitioners' counsel will provide Respondents' counsel with the necessary information for the transfer of these funds. Respondents shall make payment of the fees amount within forty-five (45) days of the district court's final approval of this Agreement.

      a.     Petitioners represent that their claims for attorney's fees, litigation costs, and other expenses have been assigned to their counsel.

      b.     This Agreement does not waive Petitioners' tax liability or their attorneys' tax liability or any other liability owed to the United States government.

13

**Miscellaneous Provisions**

30.    **Notices.** All notices contemplated by this Agreement, other than notice to the Class Members, shall be in writing and shall, unless expressly provided otherwise herein, be delivered by email to the Parties' counsel.

31.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the Action. This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

32.    **Modifications and Amendments.** No amendment, change, or modification to this Agreement shall be valid unless in writing signed by the parties or their counsel.

33.    **Governing Law.** This Agreement is governed by federal law and must be interpreted under federal law and without regard to conflict of laws principles.

34.    **Public Agreement.** The parties agree that this Agreement may be made public, and Petitioners expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

35.    **Further Assurances.** The Parties shall execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Agreement and to carry out this Agreement's expressed intent.

///

///

///

///

///

14

1   IN WITNESS WHEREOF, the parties, by and through their authorized counsel,

2   intending to be legally bound, have executed this agreement on the dates shown

3   below.

4                                       Plaintiff-Petitioners and Class Representatives
                                        Richard N. Garries and Andrew G. Ybarra, by
5                                       and through Counsel,

6

7   DATED: June 20, 2022               Donald Specter
                                        Sara Norman
8                                       Sophie Hart
                                        Patrick Booth
9                                       Jacob J. Hutt
10                                      PRISON LAW OFFICE

11

12                                      _____
                                        DONALD SPECTER
13                                      Attorneys for Plaintiff-Petitioners

14  DATED: June 20, 2022               Naeun Rim
15                                      Ima E. Nsien
                                        David Boyadzhyan
16                                      C. Ryan Fisher
17                                      MANATT, PHELPS & PHILLIPS, LLP

18

19                                      _____
                                        NAEUN RIM
20                                      Attorneys for Plaintiff-Petitioners

21

22

23

24

25

26

27

28
                                        15

DATED: June 20, 2022

Terry W. Bird
Dorothy Wolpert
Shoshana E. Bannett
Kate S. Shin
Oliver Rocos
Christopher J. Lee
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

_____

OLIVER ROCOS
Attorneys for Plaintiff-Petitioners

16

401276299.1

1    DATED: June 20, 2022         Peter J. Eliasberg

2                               Peter Bibring

3                               ACLU FOUNDATION OF SOUTERN CALIFORNIA

4

5                               PETER BIBRING

6                               Attorneys for Plaintiff-Petitioners

7

8                               Defendant-Respondents, Bryan Birkholz and Michael J. Carvajal, in their Official Capacity and by and through Counsel,

9

10    DATED: June 20, 2022        TRACY L. WILKISON
United States Attorney

11                               DAVID M. HARRIS
Assistant United States Attorney

12                               Chief, Civil Division
JOANNE S. OSINOFF

13                               Assistant United States Attorney
Chief, General Civil Section

14

15                               DANIEL A. BECK
Assistant United States Attorney

16                               Attorneys for Respondents-Defendants

17

18

19

20

21

22

23

24

25

26

27

28

401276299.1

17

# EXHIBIT "B"

**NOTICE OF CLASS ACTION SETTLEMENT**
**Federal Correctional Complex Lompoc**
***Garries v. Milusnic*, C.D. Cal. Case No. CV 20-4450-CBM-PVCx**

In May 2020, individuals incarcerated at FCI Lompoc filed a class action lawsuit against prison officials alleging that they failed to take the necessary steps to protect the incarcerated population from COVID-19, including release to home confinement.  The prison officials denied these allegations and filed a motion to dismiss the case.  The Court, however, did not dismiss the case, but issued an order establishing a provisional class and requiring the BOP to take certain actions to make the process for seeking home confinement more effective.  The Court also appointed a medical doctor to inspect the prison to find out if proper precautions for COVID were being followed.  The prison officials then filed a motion asking the court to rule in their favor.

Instead of taking the case to a final judgment, the BOP and incarcerated men appointed to represent the provisional class reached an agreement to settle all the claims.  The settlement is described in a document called the Settlement Agreement.  That agreement requires prison officials at FCI Lompoc to follow for a limited time the procedures required by the Court for processing home confinement applications.  It also requires the prison to comply with BOP procedures for keeping incarcerated individuals safe from COVID.

All the details of the settlement are contained in the Settlement Agreement.  You can review the copy of the Settlement Agreement and the motion to approve the attorneys' fees posted on TRULINCS. Paper copies have also been placed in the law libraries. You may also contact counsel for Plaintiff-Petitioners at the address listed at the bottom of this notice if you are unable to access a copy of the Settlement Agreement.

## <u>ABOUT THE SETTLEMENT</u>

The following is only a summary of the provisions of the settlement. The written agreement between the parties has the full terms of the proposed settlement that was preliminarily approved by the Court.

### The Settlement Class

The class of individuals covered by the Settlement Agreement (the "Settlement Class") is defined as follows: all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc over the age of 50, and all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc of any age with underlying health conditions including chronic obstructive pulmonary disease; serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; Type 2 diabetes; chronic kidney disease; sickle cell disease; immunocompromised state from a solid organ

transplant; obesity (body mass index of 30 or higher); asthma; cerebrovascular diseases; cystic fibrosis; hypertension or high blood pressure; immunocompromised state from blood or bone marrow transplant; immune deficiencies, HIV, or those who use corticosteroids, or use other immune weakening medicines; neurologic conditions such as dementia; liver diseases; pulmonary fibrosis; thalassemia; Type 1 diabetes; and smokers ("Underlying Health Conditions").

## Home Confinement

The Settlement Agreement requires Lompoc to continue complying with the Court's previous orders regarding home confinement, which require Lompoc to do the following, among other things:

- Make full and speedy use of BOP's CARES Act authority to review members of the Settlement Class for transfer to home confinement;
- Assign substantial weight to the class member's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions;
- Refrain from denying a class member home confinement under the CARES Act on the sole basis of the amount of time served or some other variation of a time component without other good cause;
- Refrain from denying a class member home confinement under the CARES Act on the sole basis of a prior offense without other good cause;
- If home confinement is denied, provide a declaration to counsel for Plaintiff-Petitioners explaining in detail why the reasons for denial substantially outweigh the class member's risk factors for severe illness and death from COVID-19.

## Conditions Related to COVID-19

The Settlement Agreement also requires Lompoc to comply with certain provisions of the BOP Pandemic Response Plan guidelines, including:

- Test for COVID-19 systematically, including re-testing of close contacts of positive patients during widespread institution transmissions.
- Perform daily symptoms checks for COVID-19 for all people who have been placed in quarantine.
- Screen workers assigned to health services units for symptoms of COVID-19.
- Make medical isolation in the SHU for COVID-19 "operationally distinct" from disciplinary or restricted housing by providing daily medical visits, access to mental health services, efforts to provide similar access to radio, clock/watch, reading materials, personal property, and commissary as in regular housing units, and consider increased telephone privileges to maintain mental health and connection during isolation.

Lompoc must provide written monthly reports to counsel for Plaintiff-Petitioners regarding its compliance with these requirements.

Because this case is a class action challenging policies and procedures, everyone who is a member of the class is bound by the terms of the settlement. This case does not, however, prevent members of the Settlement Class from seeking relief based on grounds other than those at issue in this action (e.g., motions for compassionate release). This case does not seek money damages and none will be awarded. Part of the settlement requires the BOP to pay lawyers for the individuals $375,000 in attorney fees and expenses.

## OBJECTIONS

The federal court will consider written objections to the settlement agreement when deciding whether to approve the settlement. Any class member may object to the proposed settlement; the objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection. Objections must include at the top of the first page the case name (*Torres v. Milusnic*) and the case number (Case No. CV 20-4450-CBM-PVCx). Objections must be postmarked by **August 2, 2022**, and must be sent to the following address:

Clerk of the Court
United States District Court
Central District of California
First Street Courthouse
350 West 1st Street
Los Angeles, California 90012

### FAIRNESS HEARING

The Court will hold a hearing on the fairness of the Settlement Agreement on **September 27, 2022**, at 350 West 1st Street, Los Angeles, California 90012, Rm. 8D. Members of the Settlement Class may be represented at that hearing by their counsel. The hearing will be open to the public.

### LOMPOC PLAINTIFFS' CLASS COUNSEL

Members of the Settlement Class may contact counsel for Plaintiff-Petitioners about the Settlement Agreement by sending mail to the following address:

LOMPOC PLAINTIFFS' CLASS COUNSEL
c/o Melissa Goodman and Peter Eliasberg
American Civil Liberties Union of Southern California
1313 W. 8th Street,
Los Angeles, California 90017

Be sure to include your name and registration number, and state in your letter that you are writing about the Lompoc class action.