Terry W. Bird – Bar No. 49038
tbird@birdmarella.com
Dorothy Wolpert – Bar No. 73213
dwolpert@birdmarella.com
Shoshana E. Bannett – Bar No. 241977
sbannett@birdmarella.com
Kate S. Shin – Bar No. 279867
kshin@birdmarella.com
Oliver Rocos – Bar No. 319059
orocos@birdmarella.com
Christopher J. Lee – Bar No. 322140
clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Naeun Rim – Bar No. 263558
nrim@manatt.com
David Boyadzhyan – Bar No. 311386
dboyadzhyan@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Plaintiff-Petitioners Richard
Garries and Andrew Ybarra

Donald Specter – Bar No. 83925
dspecter@prisonlaw.com
Sara Norman – Bar No. 189536
snorman@prisonlaw.com
Sophie Hart – Bar No. 321663
sophieh@prisonlaw.com
Patrick Booth – Bar. No. 328783
patrick@prisonlaw.com
Jacob J. Hutt – MJP No. 804428
jacob@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

Peter J. Eliasberg – Bar No. 189110
peliasberg@aclusocal.org
Peter Bibring – Bar No. 223981
pbibring@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

C. Ryan Fisher – Bar No. 312864
cfisher@manatt.com
MANATT. PHELPS & PHILLIPS,
LLP
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Tele: (714) 371-2500
Facsimile (714) 371-2550

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICHARD GARRIES; ANDREW YBARRA, individually and on behalf of all others similarly situated, <br><br>       Plaintiff-Petitioners, <br><br>   vs. <br><br> LOUIS MILUSNIC, in his capacity as Warden of Lompoc, et al., <br><br>       Defendant-Respondents. | CASE NO. 2:20-cv-04450-CBM-PVCx <br><br> **JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES** <br><br> *[Concurrently filed with Decl. of Naeun Rim and Decl. of Charlynn Weber]* <br><br> Date; October 4, 2022 <br> Time: 9:00 a.m. <br> Hon. Consuelo B. Marshall, Courtroom 8D |

1

401486858.2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that Plaintiff-Petitioners ("Petitioners") Richard Garries and Andrew Ybarra, and on behalf of all others similarly situated, and Defendant-Respondents ("Respondents") Bryan Birkholz, in his official capacity as Warden of FCI Lompoc and USP Lompoc, and Colette Peters, in her official capacity as Director of the Bureau of Prison,[1] will jointly move and hereby do seek an order pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) and (h) granting final approval of the Settlement Agreement that was preliminarily approved by this Court, Dkt. 444, and granting Class Counsel's Unopposed Motion for Attorney Fees following that approval, Dkt. Nos. 439, 529, 530, 531, 567.

   This motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Naeun Rim and Charlynn Weber, all accompanying

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[1] Bryan Birkholz is a successor of named defendant Louis Milusnic in the official capacity of warden of FCC Lompoc, and Colette Peters is a successor of named defendant Michael J. Carvajal in his official capacity as the Director of the Bureau of Prisons.

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

exhibits, the filings in this action, the Proposed Order, and any and all evidence, argument, or other matters that may be presented at the hearing.

*Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*

DATED:  August 30, 2022          Respectfully submitted,

Naeun Rim
David Boyadzhyan
C. Ryan Fisher
Manatt, Phelps & Phillips, LLP

By:  _____ */s/ Naeun Rim* _____
                    Naeun Rim
        Attorneys for Plaintiff-Petitioners

DATED:  August 30, 2022          Terry W. Bird
Dorothy Wolpert
Shoshana E. Bannett
Kate S. Shin
Oliver Rocos
Christopher J. Lee
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:  _____ */s/ Oliver Rocos* _____
                    Oliver Rocos
        Attorneys for Plaintiff-Petitioners

DATED:  August 30, 2022          Donald Specter
Sara Norman
Sophie Hart
Patrick Booth
Prison Law Office

By:  _____ */s/ Don Specter* _____
                    Don Specter
        Attorneys for Plaintiff-Petitioners

3

401486858.2

1 │ DATED:  August 30, 2022

Peter Eliasberg
Peter Bibring
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA

By: _____*/s/ Peter Bibring*_____
Peter Bibring
Attorneys for Plaintiff-Petitioners

DATED:  August 30, 2022

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

By: _____*/s/ Daniel A. Beck*_____
CHUNG H. HAN
DANIEL A. BECK
JASMIN YANG
PAUL B. GREEN
Assistant United States Attorneys

Attorneys for Defendants-Respondents

4

401486858.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...............................................................................7

II.    BACKGROUND ................................................................................9

    A.    Complaint ................................................................................9

    B.    Preliminary Injunction .........................................................10

    C.    Discovery, Mediation and Settlement...................................12

    D.    Summary of Key Settlement Agreement Terms....................12

III.   ANALYSIS .......................................................................................14

    A.    The class notice met the requirements of due process...........14

    B.    The Settlement Agreement is fair, reasonable, and adequate.............15

    C.    None of the Comments refute the presumption that the Settlement Agreement is fair, reasonable, and adequate ....................17

        1.    2241 Petitions ..............................................................18

        2.    Amendments to 2241 Petitions....................................20

        3.    Objections ....................................................................21

        4.    Other Comments ..........................................................23

    D.    Petitioners' Unopposed Motion for Attorneys' Fees and Expenses should be granted ................................................24

IV.    CONCLUSION .................................................................................25

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

## TABLE OF AUTHORITIES

<u>Page</u>

### CASES

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ............................................................. 15

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ........................................................................... 17

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ............................................................. 16

*Harris v. Vector Mktg. Corp.,*
   No. C-08–5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)......... 15, 16

*In re Oracle Sec. Litig.,*
   829 F. Supp. 1176 (N.D. Cal. 1993)..................................................... 16

*In re Syncor ERISA Litig.,*
   516 F.3d 1095 (9th Cir. 2008) ............................................................. 15

*Lane v. Facebook, Inc.,*
   696 F.3d 811 (9th Cir. 2012) ............................................................... 15

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ........................................................... 15, 16

*Pride v. Correa,*
   719 F.3d 1130 (9th Cir. 2013) ............................................................. 19

### STATUTES

28 U.S.C. § 2241............................................................................passim

CARES Act....................................................................................passim

National Emergencies Act (50 U.S.C. 1601 et seq.) ......................................... 8, 14

### OTHER AUTHORITIES

Eighth Amendment to the United States Constitution ............................................ 10

### RULES

Fed. R. Civ. P. 23................................................................................15, 23

Fed. R. Civ. P. 23(e)(2)............................................................................. 17

Fed. R. Civ. P. 23(h) ............................................................................... 14

Fed. R. Civ. P. 25(d) ................................................................................. 9

Rule 706 ................................................................................................ 12

6

401486858.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In May 2022, after engaging in more than two years of litigation, the parties entered into a Settlement Agreement to settle class claims for injunctive relief in this suit. The parties now jointly respond to class-member objections and comments and request final approval of the Settlement Agreement. If the Court grants final approval, the Settlement Agreement will dispose of all class claims in the case.

The Court should grant final approval of the Settlement Agreement because it is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. *See* Dkt. Nos. 443, 443-1. The Court also should grant the unopposed motion for attorneys' fees, which is contingent upon approval of the Settlement Agreement. *See* Dkt. Nos. 439, 529, 530, 531, 567.

The Settlement Agreement adequately addresses the class claims for injunctive relief. Class Counsel brought this action more than two years ago, at the height of the pandemic, seeking improvements in Lompoc's implementation of its own policies and procedures related to (1) the Bureau of Prison's ("BOP") home confinement authority under the CARES Act, and (2) conditions addressing the detection, prevention, and treatment of COVID-19. The Settlement Agreement accomplishes many of the equitable requests for relief sought in both the original complaint and the operative First Amended Complaint while mitigating the uncertainties inherent in continued litigation, particularly in the context of an ever-evolving factual and legal landscape when it comes to COVID-19. The Settlement Agreement requires Lompoc to continue applying the criteria and process for home confinement reviews established by the preliminary injunction. *See* Dkt. Nos. 45, 443-1. It requires Respondents to complete "all steps necessary to finalize the transfer to home confinement of class members within one month of the decision" to grant individuals to home confinement. Dkt. No. 443-1. It further requires Lompoc

7

officials to take appropriate measures to protect people incarcerated there against COVID-19 by requiring compliance with Lompoc's own testing, screening, isolating, and quarantining procedures. These requirements will be in place until (a) December 17, 2022; (b) the day the national emergency declaration with respect to COVID–19 under the National Emergencies Act (50 U.S.C. 1601 et seq.) terminates; or (c) the day the Attorney General determines that emergency conditions no longer materially affect the functioning of the BOP, whichever is earlier. *Id*. The agreed-upon time frame ensures that Lompoc will comply with the Court's preliminary injunction order, including its clarifications of what constitutes "full and speedy use" of Lompoc's CARES Act authority, for at least two and a half years since the date it was issued. The relief afforded under the Settlement Agreement would only extinguish earlier if the United States government determines that COVID-19 no longer poses a health crisis of the magnitude that would warrant the BOP utilizing its expanded home confinement authority under the CARES Act.

The Court and Class Counsel have received numerous objections, petitions, and correspondence ("Comments") regarding the Settlement Agreement. The parties have addressed these Comments in more specific detail below. Many of the Comments allege personal struggles with COVID-19 that, if true, would only support the need to settle this case under the terms of the Settlement Agreement, which sets forth requirements that will assist Respondents in addressing the ongoing concerns of the COVID-19 pandemic more effectively and expeditiously. Others object to the Settlement Agreement because it does not award that particular individual home confinement, because it does not address general prison conditions that are not specific to COVID-19, or because the objector seeks remedies that are beyond the scope of this lawsuit. None of the Comments show that the Settlement Agreement is not the product of good-faith negotiations conducted at arm's-length or otherwise justify denial of this motion.

There is no evidence that the Settlement Agreement will fail to achieve the primary objectives of the class claims for injunctive relief, nor is there any evidence that Class Counsel will not vigorously enforce the Settlement Agreement's terms. Indeed, Class Counsel has recently gathered the Review Worksheets of class members who were denied home confinement where Class Counsel cannot determine good cause for the denial. *See* **Ex. C**. Class Counsel has informed counsel for Respondents that they will be requesting re-review of home confinement for these class members once the Settlement Agreement is approved, and will repeat this process for the duration of the Settlement Agreement term. The Court should therefore grant final approval of the Settlement Agreement and the pending motion for attorneys' fees.

## II.   BACKGROUND

As explained in the Motion for Preliminary Approval of Settlement Agreement, Petitioners are incarcerated individuals at FCI Lompoc and USP Lompoc either over the age of 50 or individuals who have certain underlying conditions. Dkt. No. 443. Respondents are Bryan Birkholz in his official capacity as the current Warden of the Federal Correctional Complex located in Lompoc, California, and Colette Peters in her official capacity as Director of the Bureau of Prisons.[2] *Id.*

### A.   Complaint

This action was filed May 16, 2020. Dkt. No. 1. A Corrected Complaint was filed June 1, 2020. Dkt. No. 16. Petitioners filed the First Amended Complaint on May 31, 2022. Dkt. No. 421.

---

[2] Bryan Birkholz is a successor of named defendant Louis Milusnic in the official capacity of warden of FCC Lompoc, and Colette Peters is a successor of named defendant Michael J. Carvajal in his official capacity as the Director of the Bureau of Prisons. *See* Fed. R. Civ. P. 25(d) (public officer's successor automatically substituted as a party).

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

1    The First Amended Complaint alleges that conditions at FCC Lompoc violate

2    the constitutional rights of people in the prison, under the Eighth Amendment to the

3    United States Constitution. *Id.* The FAC seeks declaratory and injunctive relief in

4    the form of a highly expedited process to review medically-vulnerable residents of

5    Lompoc for home confinement and an injunction requiring Respondents to

6    implement certain measures at Lompoc to guard against COVID-19 and its

7    continued spread. *Id.*

8    **B.    Preliminary Injunction**

9    On July 8, 2020, Petitioners moved for a preliminary injunction[3] to require

10   Lompoc officials to implement a "structured, court-supervised process for

11   individualized consideration of each prisoner's suitability for release on an

12   accelerated schedule." Dkt. No. 18.

13   On July 14, 2020, the Court granted Petitioners' motion for preliminary

14   injunction. Dkt. No. 45. The Court's Order required Respondents to make "full and

15   speedy use of their  authority under the CARES Act and evaluate each class

16   member's eligibility for home confinement which gives substantial weight to the

17   inmate's risk factors for severe illness and death from COVID-19 based on age

18   (over 50) or Underlying Health Conditions." *Id.* Additionally, the Court

19   provisionally certified a class of individuals incarcerated at FCC Lompoc who are

20   medically vulnerable to COVID-19, either because they are over 50 or have a

21   specified underlying condition. *Id.*

22   Enforcement of the injunction has been actively litigated by the parties. In

23   September 2020, Petitioners moved to enforce compliance with the Preliminary

24   Injunction alleging that Respondents failed to make "full and speedy use of their

25

26   ---
[3] The parties agreed to convert Petitioners' *Ex Parte* Application for a Temporary
27   Restraining Order into an expedited motion for a preliminary injunction. Dkt. Nos.
28   41, 42.

401486858.2

authority under the CARES Act." Specifically, Petitioners argued that Respondents had failed to timely release class members approved for home confinement and that they had denied home confinement release to eligible individuals and instead sent them to halfway houses. Dkt. Nos. 93, 93-1.

The Court granted Petitioners' motion for compliance and ordered Respondents to "file a declaration under seal confirming that all class members who were identified as having been approved for home confinement . . . have been released to home confinement, including the date of each inmate's release to home confinement," "to file a declaration under seal identifying Lompoc inmates who were denied home confinement and instead designated to a Residential Re-entry Center" who met certain criteria, and "to file a declaration under seal identifying each RRC Class Member who was denied home confinement but has a viable release plan" by October 16, 2020. Dkt. No. 105.

In January 2021, Petitioners filed a motion alleging non-compliance with the Preliminary Injunction on the basis that Respondents were using improper "categorical" barriers to home confinement, such as the amount of time served. Dkt. No. 169. Magistrate Judge Pedro V. Castillo issued a report and recommendation on April 30, 2021 and then issued an amended report and recommendation on July 2, 2021, which accepted some of the arguments of Petitioners' motion while denying others, agreeing instead with the Respondents on certain factors that are properly considered when denying home confinement. Dkt. Nos. 229, 276. The Court accepted the conclusions and recommendations of the Magistrate Judge and ordered Respondents to re-evaluate class members who had been denied home confinement where the only reason given for the denial was a prior offense or the amount of time served or percentage of sentence served, or some other variation of a time component, as well as ordering Respondents to release individuals within one month of approving them for home confinement. Dkt. No. 290.

In May 2021, Respondents moved to dissolve the preliminary injunction and

401486858.2

for summary judgment. Dkt. Nos. 250, 251. Petitioners also moved for class certification. Dkt. No. 345. Petitioners and Respondents have engaged in extensive briefing on these motions. *See, e.g.*, Dkt. Nos. 257, 258, 266, 302, 305, 325, 327, 336, 337, 345, 354, 356, 357, 408, 413. These motions are still pending before the Court. *See* Dkt. No. 425.

### C.   Discovery, Mediation and Settlement

From 2020 to 2022, the parties conducted extensive discovery, which included conducting depositions of prison officials, prison leadership, and experts, and the production of thousands of pages of documents.

In August 2020, the Court appointed Dr. Homer Venters as a Rule 706 Expert. Dkt. No. 69. Dr. Venters conducted three site visits and produced three reports documenting his visits in September 2020, April 2021, and February 2022. Dkt. Nos. 74, 191, 239-1, 355.

The parties engaged in mediation from December 2020-March 2021, but were not successful in resolving their disputes. Settlement negotiations resumed this year, and on June 10, 2022, Petitioners and Respondents jointly filed a motion for preliminary approval of the Settlement Agreement. Dkt. Nos. 426, 443. The Court granted preliminary approval of the Settlement Agreement on June 28, 2022. Dkt. No. 444.

### D.   Summary of Key Settlement Agreement Terms

**Home Confinement**. The Settlement Agreement largely tracks the Preliminary Injunction and the Court's additional enforcement orders (hereafter "Home Confinement Orders"). *See* Dkt. Nos. 45, 105, and 290. Specifically, it requires Respondents to comply with Attorney General Barr's March 26 and April 3, 2020 memoranda ("Barr memos"), the current BOP guidance at the time of each review, and the standards set forth in this Court's Home Confinement Orders when making decisions about a request for home confinement. Among other things, the Settlement Agreement requires Respondents to do the following:

401486858.2

- Make full and speedy use of BOP's CARES Act authority to review members of the Settlement Class for transfer to home confinement;
- Assign substantial weight to the class member's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions;
- Refrain from denying a class member home confinement under the CARES Act on the sole basis of the amount of time served or some other variation of a time component without other good cause;
- Refrain from denying a class member home confinement under the CARES Act on the sole basis of a prior offense without other good cause;
- If home confinement is denied, provide a declaration to counsel for Plaintiff-Petitioners explaining in detail why the reasons for denial substantially outweigh the class member's risk factors for severe illness and death from COVID-19.

**Conditions**. The Settlement Agreement requires Respondents to demonstrate compliance with specific portions of BOP's COVID-19 policies, including:

- Testing for COVID-19 systematically, including re-testing of close contacts of positive patients during widespread institution transmissions.
- Performing daily symptoms checks for COVID-19 for all people who have been placed in quarantine.
- Screening workers assigned to health services units for symptoms of COVID-19.
- Making medical isolation in the SHU for COVID-19 "operationally distinct" from disciplinary or restricted housing by providing daily medical visits, access to mental health services, efforts to provide similar access to radio, clock/watch, reading materials, personal property, and commissary as in regular housing units, and consider increased telephone privileges to maintain mental health and connection during isolation.

**Reporting**. The Settlement Agreement requires Respondents to provide monthly reports on home confinement reviews and the conditions issues listed above to Class Counsel.

**Termination**. The Settlement Agreement will terminate on the earliest of the following dates: a) December 17, 2022; b) the day the national emergency

13

1   declaration with respect to the Coronavirus Disease 2019 (COVID–19) under the

2   National Emergencies Act (50 U.S.C. 1601 et seq.) terminates; or c) the day the

3   Attorney General determines that emergency conditions no longer materially affect

4   the functioning of the Bureau of Prisons.

5         **Attorney Fees**. Pursuant to Federal Rule of Civil Procedure 23(h), the parties

6   have separately moved the Court for an order awarding attorneys' fees and costs.

7   Dkt. No. 439. Subject to Court approval of the Settlement Agreement, the Parties

8   have reached a compromise and Respondents have agreed to pay Plaintiffs' counsel

9   $375,000 for reasonable fees and expenses already incurred in litigating this case.

10   *Id.*

11   **III.   ANALYSIS**

12         **A.   The class notice met the requirements of due process.**

13         By July 5, 2022, Respondents posted an electronic version of the Court-

14   approved Class Notice, the Settlement Agreement, and the Motion for Attorneys'

15   Fees on the Electronic Bulletin Board ("EBB") of TRULINCS, a computer system

16   available to all persons incarcerated at Lompoc.[4] (Declaration of Charlynn Weber ¶

17   3.) Respondents also placed paper copies of these documents at Lompoc's law

18   library and posted a paper copy of the Class Notice in all housing units where class

19   members reside. (*Id.* ¶¶ 4-5.) Finally, the Class Notice instructed class members

20   who could not access the Settlement Agreement to request a copy from Class

21   Counsel. (*Id.* ¶ 5.) Where class members requested a copy of the settlement

22   documents, Class Counsel caused such copies to be sent to them by mail.

23   (Declaration of Naeun Rim ("Rim Decl.") ¶ 3.) Thus, the parties fully complied with

24   the Court's order regarding the provision of notice to the class. Dkt. No. 444.

25

---

26   [4] While the electronic mail messaging function of TRULINCS is not available to a

27   small subset of people (usually those convicted of computer-related crimes), the

28   EBB function is available to everyone incarcerated at Lompoc. (*Id.* ¶ 3.)

The posting of the Class Notice was well-calculated to alert all interested class members to the existence of the lawsuit, the nature of the allegations and claims, the terms of the proposed settlement, and their opportunity to file comments concerning the Settlement Agreement with the Court. Class members had 28 days—from July 5, 2022, through August 1, 2022—to file comments with the Court, and over 200 did so. (Rim Decl. ¶ 7.)

**B.    <u>The Settlement Agreement is fair, reasonable, and adequate.</u>**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in the context of "complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

In reviewing proposed class-action settlement agreements, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. *Harris v. Vector Mktg. Corp.*, No. C-08–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).

Other factors courts consider in assessing a settlement proposal include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of

401486858.2

counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); see also *In re Oracle Sec. Litig*., 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The district court must explore these factors comprehensively to satisfy appellate review, but "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice*, 688 F.2d at 625). Thus, a district court's decision to approve a class-action settlement may be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id*. (citation omitted).

Here, the Court already preliminarily approved the Settlement Agreement. Dkt. No. 444. Thus, the Settlement Agreement is entitled to a presumption of fairness. *Harris*, 2011 WL 1627973, at *8.

The Court should grant final approval of the settlement because it provides substantial equitable relief to class members. Respondents have agreed to settlement terms that directly address the class claims in this case, including an expedited process for home confinement reviews, compliance with the BOP's COVID-19-related testing, screening, isolation, and quarantine practices, and monitoring of Respondents' compliance by Class Counsel. The settlement was reached after significant litigation and negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation. Dkt. No. 531. The settlement was also reached after a Court-appointed expert repeatedly inspected

16

Respondents' prison facilities and issued multiple expert reports on the adequacy of Respondents' practices concerning COVID-19. Moreover, as stated above, the parties engaged in extensive discovery, including conducting depositions of prison officials, prison leadership, and experts, and the production of thousands of pages of documents.

Further, the outcome of the litigation and the extent of any relief that the class might be awarded if the case went to trial is uncertain. In light of the caselaw requiring final injunctive relief to be based on conditions current as of the date of trial, *see Farmer v. Brennan*, 511 U.S. 825, 845 (1994), Petitioners face significant hurdles in demonstrating ongoing constitutional violations on a facility-wide basis. The facts and caselaw related to COVID-19 are constantly changing, making the likelihood of success based on the facts that would be current at the time of trial difficult to predict. Proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter. Given the relief achieved and the risks and costs involved in further litigation, the settlement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be given final approval. *See* Fed. R. Civ. P. 23(e)(2).

## C. None of the Comments refute the presumption that the Settlement Agreement is fair, reasonable, and adequate.

Class members submitted Comments to the Settlement Agreement by making filings with the Court and sending correspondence to Class Counsel by email and mail. The Comments took various forms, which Class Counsel have sorted into the following categories: (a) emergency motions for immediate release pursuant to 28 U.S.C. § 2241 ("2241 Petitions"), (b) motions to amend 2241 Petitions ("Amendments to 2241 Petitions"), and (c) objections and other responses ("Objections and Other") (includes miscellaneous Comments such as letters, emails, and "Amicus Briefs"). The parties have attached additional Objections and Other

17

1   that were received by Class Counsel but not filed with the Court as **Exhibit A**.[5]

2   (Declaration of Naeun Rim ("Rim Decl.") ¶¶ 4, Ex. A.)

3         Included in Paragraph 7 of the Declaration of Naeun Rim is a chart of all

4   people who submitted a Comment that was filed with the Court or received by Class

5   Counsel. This chart does not include Comments submitted after August 23, 2022,

6   which is three weeks after the Court-imposed deadline for submitting an objection.

7   Dkt. No. 444. To provide the Court with full information, the parties have submitted

8   as **Exhibit B** the Review Worksheets of every person who submitted a Comment**.** [6]

9   The Review Worksheets have been organized in alphabetical order by first name.

10        Many of the Comments repeat the same boilerplate arguments. Class Counsel

11  has summarized and responded to the arguments in each category below.

12       1.    **2241 Petitions**

13        In the 2241 Petitions, class members argue that the Settlement Agreement

14  benefits only a "small fraction of the class" and that the "merits of the complaint"

15  will "never come to fruition if the section 2241 process is halted." *See, e.g.* Dkt. No.

16  447-1, 448-1, 449-1. The 2241 Petitions then recite some of the procedural history

17  of the case and repeat arguments that Class Counsel have previously made to this

18  Court. Each 2241 Petition seeks immediate release for the individual filer. *Id.*

19        This case was brought as a class action seeking a process-based remedy that

20  would improve Lompoc's implementation of COVID-19 policies on a system-wide

21  basis. The Settlement Agreement accomplishes just that. It requires Respondents to

22  continue complying with the Court's Home Confinement Orders, which require

23

24  _____

25  [5] Because many of these documents contain sensitive personal identifying and health information, they have been filed under seal.

26  [6] Review Worksheets could not be found for some Commenters. Those Commenters

27  who were missing Review Worksheets have been noted with an asterisk by their

28  name in the chart. (Rim Decl. ¶ 7.)

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

Respondents to swiftly evaluate those who are over the age of 50 or have underlying health conditions for home confinement, impose deadlines by which approved class members must be transferred to their homes, prohibit Respondents from transferring those eligible for home confinement to halfway houses, and prohibit Respondents from denying class members home confinement based on time served or prior offenses alone. Dkt. Nos. 45, 105, and 290. The Settlement Agreement also requires Respondents to attest to Class Counsel that Lompoc is in compliance with BOP's testing, screening, isolation, and quarantine policies. These clarified home confinement procedures and COVID-19 condition requirements apply to the class as a whole, not to any one individual.

Contrary to the claim that the Settlement Agreement benefits only a "small fraction of the class," the agreed-upon relief provided applies to the entire class. The Settlement Agreement ensures that the Court's Home Confinement Orders will remain in place through the rest of the year, which benefits the entire class by maximizing those who are approved for home confinement in accordance with the directives in the original Barr memos. This benefits not only those who are placed in their homes but also those who remain in Lompoc by reducing the number of people inside the facility who can transmit COVID-19. Indeed, as of July 7, 2022, 241 people have been transferred to home confinement since the Court's preliminary injunction was granted. Dkt. No. 622. In addition, the Settlement Agreement requires Respondents to demonstrate their compliance with BOP's testing, screening, isolation, and quarantine procedures and expressly requires them to make medical isolation in the SHU operationally distinct from those who are sent to the SHU for punishment.

The chief complaint in each 2241 Petition is that the Settlement Agreement does not grant the individual filer home confinement. Individual requests for home confinement under the CARES Act and Section 2241 are beyond the scope of this lawsuit, which was brought as a class action seeking class-wide relief. *See Pride v.*

19

*Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) ("Individual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform"). For the duration of the Settlement Agreement, Class Counsel will continue to identify systemic patterns of denials that are contrary to the home confinement orders and confer with Respondents about re-reviewing certain categories of people before considering the Settlement Agreement's dispute resolution procedures.[7] In general, the terms of the Settlement Agreement ensure that class members will be promptly reviewed for home confinement under the Court's Home Confinement Orders for the duration of the Settlement Agreement term, which makes it more likely that those who are eligible will be approved.

### 2. Amendments to 2241 Petitions

Some class members submitted "Amendments" to their 2241 Petitions. These Amendments make clear that the filer is seeking relief as an "individual and on behalf of myself" as opposed to the class. They also argue that they have been abandoned by Class Counsel who failed to object to unspecified unfavorable terms and conditions, complain that the BOP would not release any "high risk" offenders to home confinement without a legislative and statutory overhaul, argue that the Settlement Agreement violates their constitutional rights, and allege that they have individually suffered physical and mental harm. *See*, *e.g.*, Dkt. Nos. 713, 714, 788, 795.

As stated in Part III.C.1, *supra*, this lawsuit was brought as a class action. The individual relief requested in the Amendments to 2241 Petitions go beyond the scope of this action. As to the argument that Class Counsel have abandoned the class members, to the contrary, Class Counsel vigorously litigated this case, brought multiple motions to enforce the original preliminary injunction, sought thousands of

---

[7] Indeed, Class Counsel have already collected Review Worksheets of denials that require further inquiry for Respondents' review. (Rim Decl. ¶ 6, **Ex. C**.)

pages of document discovery, conducted multiple depositions, and zealously negotiated a Settlement Agreement on terms that provide immediate benefits to the class while mitigating the extensive risks of taking this case to trial.

### 3. **Objections**

Some class members submitted objections, many of which were drafted on templates containing boilerplate arguments. One such objection template objects to Paragraph 6, which lists the information Respondents are required to put on Review Worksheets, such as the offense of conviction, projected release date, security level, and so on. *See, e.g.*, 571, 572, 573. The information listed in the Review Worksheets is what has allowed the Court and Class Counsel to understand the basis for Respondents' home confinement decisions—they are not "criteria" for home confinement, as the objectors appear to believe. Many of these objectors argue that Respondents should not be permitted to consider their offense of conviction when making home confinement decisions, particularly because they have been in Lompoc "facing COVID-19 SARS" since 2019. *Id*. The requested relief goes beyond the scope of this lawsuit, which was brought to enforce the CARES Act and the directives in the Barr memos, both of which permit Respondents to consider the offense of conviction.

Another objection template opposes the BOP retaining ultimate authority to make home confinement decisions, objects to home confinement decisions being made on any basis other than a class member's PATTERN score, objects to BOP being able to transfer class members to other facilities, argues that Class Counsel has abandoned the class and are ineffective, claims that the newly-appointed class representatives only represent a small minority of the class, complains that TRULINCS email messaging is not available to all class members and is not confidential, and generally argues that the Settlement Agreement violates their constitutional rights. These templates ask the Court to declare the custody of the class unconstitutional, stay the settlement agreement, cancel all Court dates until the

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

objection is ruled upon, order counsel to provide an accurate and complete explanation in laymen's terms of the Settlement Agreement, order that the only basis for denying home confinement is a high PATTERN score, order a vote among all class members, and prohibit BOP from transferring any class members to other facilities. *See, e.g.,* Dkt. 582, 583, 584.

None of these objections are sufficient to defeat the presumption that the Settlement Agreement is adequate and fair. The parties have already addressed the argument pertaining to the adequacy of Class Counsel's representation Section III.C.2, *supra*. The parties also summarized the Settlement Agreement in simplified language in the Court-approved Class Notice and made the full set of settlement-related documents available to class members in several ways. The remaining parts of the Objections do not actually oppose specific terms of the Settlement Agreement—rather they generally seek relief beyond what the Settlement Agreement offers.[8] That is not a basis to deny class members the immediate benefits that the Settlement Agreement *does* offer. That certain class members might wish to pursue new additional theories is not a basis for the Court to reject the Settlement Agreement, which was negotiated based on the claims for relief that were litigated in *this* case.

As to the adequacy of the newly-appointed class representatives, the Court already considered this issue and determined that Richard Garries and Andrew Ybarra were adequate representatives of the Settlement Class. Dkt. No. 420. Other than conclusory allegations, the objectors do not identify any specific facts that would warrant reconsideration of that finding.[9] Since being appointed class

---

[8] Class Counsel have concurrently filed a supplemental brief in support of final approval that briefly addresses this point.

[9] While not made clear in the objection template, it appears from other objections that this is in reference to the fact that the named Plaintiffs are not sex offenders. *See, e.g.*, Dkt. No. 665. But the class certified by the Court does not differentiate

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

representatives, Mr. Garries and Mr. Ybarra have done nothing but represent the claims of the class vigorously throughout the settlement approval process.

Finally, the objectors' demand that all class members be permitted to vote on the Settlement Agreement is not supported by or consistent with class action law. Federal Rule of Civil Procedure 23 sets forth the procedures that are to be followed in class actions, which are designed to allow a large number of people who suffered a similar harm to obtain relief efficiently through court-appointed class representatives. *See* Fed. R. Civ. P. 23. The parties have complied with the procedures required by Rule 23 for certification of a Settlement Class and final approval of the Settlement Agreement.

### 4.   **Other Comments**

Many class members submitted miscellaneous objections, letters, emails, or briefs commenting on the Settlement Agreement and describing their personal experiences and circumstances. *See*, e.g., Dkt. No. 636, Ex. A. Some describe poor testing, isolation, and quarantine practices, while others described inadequate medical treatment for COVID-19. Even if these Comments were assumed to be true, such allegations only support the need for the remedies provided for in the Settlement Agreement.

Some of the Comments complain of conditions at Lompoc that are not related to COVID-19, such as complaints about medical treatment generally, or complaining about the unfairness of their conviction and sentence. These issues were not the subject of this lawsuit and have no bearing on the fairness of the Settlement Agreement.

---

between people based on the type of conviction—the class definition includes all people incarcerated at Lompoc who are either over the age of 50 or have one of the specified underlying health conditions. Dkt. No. 444. Both named Plaintiffs are sufficient to represent all class members who fall under this definition.

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

D.    **Petitioners' Unopposed Motion for Attorneys' Fees and Expenses
should be granted.**

The basis for Class Counsel's attorneys' fees motion is more fully briefed in
the Motion for Attorney Fees. *See* Dkt. No. 439. Respondents have agreed to pay
Petitioners attorneys' fees in the amount of $375,000, subject to Court approval of
the Settlement Agreement. This amount—which reimburses Class Counsel for a
fraction of their actual hours spent and out-of-pocket expenses—is fair and
reasonable in light of the difficult disputes that have been addressed in this
litigation, the lengthy and detailed settlement negotiations, and the difficulty and
complexity of the issues involved.

While few of the Comments object to the proposed attorneys' fees and
expenses, at least one class member objects that Class Counsel entered into the
Settlement Agreement out of "self-interest" to obtain fees. *See, e.g.*, Dkt. No. 641.
To the contrary, the fees were negotiated in a separate mediation only after the
substantive terms of the Settlement Agreement were resolved. (Rim Decl. ¶ 2.) The
requested fees do not even cover half of the thousands of hours devoted by Class
Counsel to this case. If only the lodestar method were used, Class Counsel would be
seeking a total of at least $830,740 in attorneys' fees and over $22,000 in costs,
using EAJA rates alone. Had reasonable market rates been applied, that amount
would have exceeded $1 million. Class Counsel agreed to a substantially reduced
amount after weighing the risks of continuing with the litigation and determining
that the certainty afforded by the Settlement Agreement would most benefit the
class.

For these reasons and all of the reasons set for the in the unopposed motion
for attorneys' fees, the Court should grant Petitioners' motion for fees and expenses,
pursuant to Federal Rule of Civil Procedures 23(h). *See* Dkt. Nos. 439, 529, 530,
531, 567.

///

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

## IV.   <u>CONCLUSION</u>

The Settlement Agreement is the product of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. Thus, it is entitled to a presumption of fairness. Further, the Comments by class members fail to demonstrate that the Settlement Agreement does not fairly, reasonably, and adequately resolve the class's claims for injunctive relief. Accordingly, the parties request that the Court grant final approval of the Settlement Agreement and grant Petitioners' Unopposed Motion for Attorneys' Fees.

*Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*

DATED:  August 30, 2022               Respectfully submitted,

Naeun Rim
David Boyadzhyan
C. Ryan Fisher
Manatt, Phelps & Phillips, LLP

By:   <u>     /s/ Naeun Rim          </u>
          Naeun Rim
  Attorneys for Plaintiff-Petitioners

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

1   DATED:  August 30, 2022          Terry W. Bird
2                                    Dorothy Wolpert
                                     Shoshana E. Bannett
3                                    Kate S. Shin
                                     Oliver Rocos
4                                    Christopher J. Lee
5                                    Bird, Marella, Boxer, Wolpert, Nessim,
                                     Drooks, Lincenberg & Rhow, P.C.
6
7                                    By:    _/s/ Oliver Rocos_____
8                                              Oliver Rocos
                                         Attorneys for Plaintiff-Petitioners
9

10  DATED:  August 30, 2022          Donald Specter
11                                   Sara Norman
                                     Sophie Hart
12                                   Patrick Booth
                                     Prison Law Office
13

14                                   By:    _/s/ Don Specter_____
15                                             Don Specter
                                         Attorneys for Plaintiff-Petitioners
16

17

18  DATED:  August 30, 2022          Peter Eliasberg
19                                   Peter Bibring
                                     ACLU FOUNDATION OF SOUTHERN
20                                   CALIFORNIA
21
                                     By:    _/s/ Peter Bibring_____
22                                             Peter Bibring
23                                       Attorneys for Plaintiff-Petitioners
24

25

26

27

28

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

401486858.2

1  DATED:  August 30, 2022                Respectfully submitted,

2                                         STEPHANIE S. CHRISTENSEN
                                          Acting United States Attorney
3                                         DAVID M. HARRIS
                                          Assistant United States Attorney
4                                         Chief, Civil Division
                                          JOANNE S. OSINOFF
5                                         Assistant United States Attorney
                                          Chief, General Civil Section
6

7                                              /s/ Daniel A. Beck
                                          CHUNG H. HAN
8                                         DANIEL A. BECK
                                          JASMIN YANG
9                                         PAUL B. GREEN
                                          Assistant United States Attorney
10
                                          Attorneys for Defendants-Respondents
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT
401486858.2