**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

RICHARD GARRIES, *et al*.,

Plaintiff-Petitioners,

vs.

LOUIS MILUSNIC, *et al*.,

Defendant-Respondents.

CASE NO. 2:20-cv-04450-CBM-(PVCx)

**ORDER RE: JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND PLAINTIFF-PETITIONERS' UNOPPOSED MOTION FOR ATTORNEYS' FEES [250][251][345][439][828] JS-6**

The matters before the Court are the parties' Joint Motion for Final Approval of Class Action Settlement (Dkt. No. 828),[1] and Plaintiff-Petitioner's Unopposed Motion for Attorneys' Fees (Dkt. No. 439).

## I. BACKGROUND

This action was brought on behalf of a class of inmates medically vulnerable to severe illness or death from COVID-19 at FCC Lompoc. Petitioners challenged

[1] Petitioners and Respondents each filed a supplemental brief in support of the Motion for Final Approval. (Dkt. Nos. 829, 830.)

the Director of the Bureau of Prisons ("BOP") and Warden of Lompoc's response during the COVID-19 pandemic, and sought an expedited process for reviewing medically-vulnerable inmates at Lompoc for home confinement and an injunction requiring Respondents to implement certain measures at FCC Lompoc to protect against COVID-19 and its continued spread. The original Complaint asserted two causes of action: (1) Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to 28 U.S.C. §§ 2241, 2243; and (2) and Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702, "Injunctive Relief Only."

On July 14, 2020, the Court certified a class of inmates medically vulnerable to COVID-19 based on age (over 50) or due to a specific underlying condition,[2] granted Petitioners' motion for a preliminary injunction, and ordered Respondents to make "fully and speedy use of their authority under the CARES Act and evaluate each class member's eligibility for home confinement which gives substantial weight to the inmate's risk factors for severe illness and death from COVID-19 based on age (over 50) or Underlying Health Conditions." (Dkt. No. 45.) Subsequently, numerous motions were filed, the parties engaged in discovery, and the Court-appointed expert inspected Lompoc on three occasions and filed reports with the Court regarding his observations at Lompoc. On May 31, 2022, Plaintiff-

[2] The certified class was defined as "all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc over the age of 50, and all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc of any age with underlying health conditions, including chronic obstructive pulmonary disease; serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; Type 2 diabetes; chronic kidney disease; sickle cell disease; immunocompromised state from a solid organ transplant; obesity (body mass index of 30 or higher); asthma; cerebrovascular diseases; cystic fibrosis; hypertension or high blood pressure; immunocompromised state from blood or bone marrow transplant; immune deficiencies, HIV, or those who use corticosteroids, or use other immune weakening medicines; neurologic conditions such as dementia; liver diseases; pulmonary fibrosis; thalassemia; Type 1 diabetes; and smokers." (Dkt. No. 45.)

Petitioners filed a First Amended Complaint which asserting the same claims as asserted in the original complaint but named Richard Garries and Andrew Ybarra as Plaintiffs-Petitioners. (Dkt. No. 421.)[3]

On June 10, 2022, the parties filed a Motion for Preliminary Approval of the class settlement (Dkt. No. 426), which was heard on an expedited basis per the parties' request on June 21, 2022. Following the preliminary approval hearing, the parties filed an amended joint motion for preliminary approval of the class settlement (Dkt. No. 443) which was granted by the Court on June 28, 2022 (Dkt. No. 444). The deadline for class members to file objections to the settlement was August 2, 2022. (Dkt. No. 444.) The deadline for the parties to respond to objections to the settlement was August 30, 2022. (Dkt. No. 794.) The instant Motion for Final Approval of the class settlement was filed on August 30, 2022 (Dkt. No. 828), and was heard on October 4, 2022.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of a settlement in a class action lawsuit. Although the Court has the discretion to approve settlements, "there is a strong judicial policy that favors settlements." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval, and then after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citation omitted). The Ninth Circuit "put(s) a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publg. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Therefore, a court should grant approval of a settlement if it

[3] Prior named Plaintiffs Yonnedil Carror Torres, Vincent Reed, Felix Samuel Garcia, Andre Brown, and Shawn L. Fears were dismissed from the action because they were no longer incarcerated at Lompoc. (Dkt. Nos. 419, 420.)

determines that the settlement is "fundamentally fair, adequate and reasonable" after affording settlement class members the opportunity to comment on the proposed settlement. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625 (9th Cir. 1982).

## III. DISCUSSION

### A. Class Notice

Federal Rule of Civil Procedure 23(c)(2)(B) requires class members to be provided with the best notice that is practicable under the circumstances. Fed. R. Civ. Proc. 23(c)(2)(B). Here, Respondents posted an electronic version of the Class Notice approved by this Court, the Settlement Agreement, and the Motion for Attorneys' Fees on the Electronic Bulletin Board ("EBB") of TRULINCS. Respondents filed a declaration attesting that EBB is a computer system available to all inmates incarcerated at Lompoc. (Weber Decl. ¶ 3.) Respondents also placed paper copies of the Class Notice, Settlement Agreement, and Motion for Attorneys' Fees at Lompoc's law library, and posted a hard copy of the Class Notice in all housing units where class members reside. (*Id*. ¶¶ 4-5.) The Class Notice also informed class members that they could request a copy of the Settlement Agreement from class counsel. (*Id*. ¶ 5.) Class counsel also declares they sent copies of the Settlement Agreement by mail to two class members who requested copies. (Rim Decl. ¶ 3.) Accordingly, the notice provided to class members was the best notice practicable under the circumstances.

### B. Whether the Settlement Is Fair, Reasonable and Adequate

In considering whether a settlement is fair, adequate and reasonable, courts consider:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;

(5) the extent of discovery completed and stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the Class members to the proposed settlement.

*See Rodriguez v. W. Publg. Corp.*, 563 F.3d 948 (9th Cir. 2009); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The list of factors is non-exhaustive, and therefore the Court may consider other important factors. *Torrisi v. Tuscon Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993).

**1. The Strength of the Plaintiffs' Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Risk of Maintaining Class Action Status Throughout the Trial**

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). Moreover, Approval of settlement is generally "preferable to lengthy and expensive litigation with uncertain results." *DIRECTV, Inc.,* 221 F.R.D. at 526.

The strength of Petitioners' case is demonstrated based on the Court's granting of the preliminary injunction in this action. However, the parties argue the outcome of the litigation and the extent of any relief that the class might be awarded if the case went to trial is uncertain, as demonstrated by Respondents' pending motion for summary judgment and motion to dissolve the preliminary injunction; proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter; and given the relief achieved and the risks and costs involved in further litigation, the Settlement Agreement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be preliminarily approved.

Moreover, Petitioners filed a motion for non-provisional certification which Respondents have opposed as untimely. Thus, there is a risk that the class action status of this case will not be maintained through trial. Accordingly, these factors weigh in favor of final approval.[4]

**2. Amount Offered in Settlement**

This factor is inapplicable since the settlement does not include monetary terms because this action seeks declaratory and injunctive relief.

**3. Extent of Discovery Completed and Stage of the Proceedings**

This litigation has been pending for over two years, during which the parties have filed numerous motions, conducted discovery, the Court has conducted numerous hearings and status conferences, and the Court appointed expert has visit Lompoc on three occasions and filed three reports. Accordingly, this factor weighs in favor of final approval because with the benefit of considerable discovery, the parties are likely informed about the merits of their respective cases.

**4. Experience and Views of Counsel**

The parties argue the settlement is reasonable because it was "reached after years of litigation and negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation." Accordingly, this factor weighs in favor of final approval.

**5. Presence of a Governmental Participant**

The government represents Respondents in this case. Therefore, this factor weights in favor of final approval. *See Criswell v. Boudreaux*, 2021 WL 5811887, at *7 (E.D. Cal. Dec. 7, 2021).

**6. Reaction of the Class Members to the Proposed Settlement**

"Comments" and/or objections to the settlement were filed by some class

---

[4] The parties requested that the Court not rule on the pending summary judgment motion, motion to dissolve the preliminary injunction, and motion for non-provisional class certification until it rules on the instant Motion for Final Approval, which if approved, would render those motions moot.

members or sent by class members to class counsel after notice was given to the class through August 23, 2022 (i.e., three weeks after the August 2, 2022 deadline set by this Court for class members to file an objection to the settlement). (Rim Decl. ¶ 7.) Class counsel sorted these "comments" and objections into the following three categories: (a) emergency motions for immediate release pursuant to 28 U.S.C. § 2241 ("2241 Petitions"); (b) motions to amend 2241 Petitions ("Amendments to 2241 Petitions"): and (c) objections and other responses (includes miscellaneous Comments such as letters, emails, and "Amicus Briefs") ("Objections and Other") (collectively "Comments"). (*Id.* ¶ 3.)

Class counsel submits a copy of the Review Worksheets for home confinement for all class members who filed or sent Comments to Class counsel. (Rim Decl. ¶ 5, Ex. B.) Class counsel also submits copies of review worksheets for certain class members whom counsel declares she was "unable to determine good cause for denial" of home confinement. (*Id.* ¶ 6, Ex. C) Class counsel further declares she informed counsel for Respondents that she "will be requesting re-review of home confinement for these class members once the Settlement Agreement is approved", and represented during the final approval hearing that a list of 32 inmates were sent to Respondents for re-review for home confinement which Respondents are in the process of reviewing.[5] (*Id.* ¶ 6.)

**a. 2241 Petitions**

In the 2241 petitions filed or sent by class members to class counsel, the inmates argue the Settlement Agreement benefits a small fraction of the class, contend the "merits of the complaint" will "never come to fruition if the section 2241 process is halted," and seek immediate release for the individual inmate. (*See, e.g.*, Dkt. No. 447-1, 448-1, 449-1.)

---

[5] The parties represented at the final approval hearing that they have also discussed a process going forward for Respondents to submit review worksheets to Petitioners' counsel which Petitioners' counsel will review and notify Respondents regarding inmates whom they believe there is no good cause for denying home confinement.

This action was brought as a class action to obtain a process-based remedy to improve Lompoc's policies and practices relating to COVID-19. The Settlement Agreement requires Respondents to continue to comply with the Court's orders requiring Respondents to promptly evaluate Lompoc inmates who are over the age of 50 or have underlying health conditions for home confinement, imposing deadlines by which approved class members must be transferred to their homes, prohibiting Respondents from transferring those eligible for home confinement to halfway houses, and prohibiting Respondents from denying class members home confinement based on time served or prior offenses alone. (Dkt. Nos. 45, 105, 290.) The Settlement Agreement also requires Respondents to attest to Class Counsel that Lompoc is in compliance with BOP's testing, screening, isolation, and quarantine policies. These requirements apply to the entire class as a whole, and not to one individual or only a "small fraction of the class" as argued in the 2241 Petitions.

As to the requests in the 2241 Petitions that the individual inmate should be granted home confinement, these requests are beyond the scope of this action. This is a class action seeking class-wide injunctive relief by requiring Respondents to make full and speedy use of their authority under the CARES Act to ***evaluate*** each class members' eligibility for home confinement which gives substantial weight to the inmates risk factors for severe illness or death from COVID-19 based on age (over 50) or underlying health conditions. *See, e.g., Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) ("Individual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform"). Nothing in the Settlement Agreement precludes a class member from filing a habeas petition under 28 U.S.C. § 2241 and the CARES Act in the proper forum on an individual basis, nor precludes a class member from seeking monetary damages in a separate action. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("Moreover, the general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the

same events"); *see also Fortner v. Thomas*, 983 F.2d 1024, 1030-32 (11th Cir. 1993) ("It is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of a pending class action").

Accordingly, the "objections" to the settlement set forth in the 2241 Petitioners are overruled.

**b. Amendments to 2241 Petitions**

Some class members filed or sent to class counsel "Amendments" to their 2241 Petitions. Each of the "Amendments" to the 2241 Petitioners seek relief as an "individual and on behalf of myself" rather than class-wide relief. The inmates also argue in the "Amendments" that they have been abandoned by class counsel who failed to object to unspecified unfavorable terms and conditions, contend the BOP would not release any "high risk" offenders to home confinement without a legislative and statutory overhaul, contend their conditions of confinement are unconstitutional, and allege that they have individually suffered physical and mental harm. (*See*, *e.g.*, Dkt. Nos. 713, 714, 788, 795.) However, as discussed above, the individual relief requested in the Amendments to 2241 Petitions are beyond the scope of this class action seeking injunctive relief requiring Respondents to make full and speedy use of their authority under the CARES Act to evaluate each class members' eligibility for home confinement which gives substantial weight to the inmates risk factors for severe illness or death from COVID-19 based on age (over 50) or underlying health conditions. The fact that an inmate may have individually suffered physical and mental harm is outside the scope of this litigation and does not warrant disapproval of the Settlement Agreement which provides for class-wide injunctive relief.

As to the contention regarding abandonment by class counsel, this Court previously found class counsel to be adequate to protect the class. Class counsel has litigated this case for nearly two years, obtained a preliminary injunction on behalf

of the class, filed motions to enforce the Court's preliminary injunction order, opposed Respondents' motion for summary judgment, and conducted substantial discovery including depositions and requesting thousands of pages of documents. The Amendments to 2241 Petitions thus fail to demonstrate class counsel has abandoned class members.

With respect to the contention that the conditions of confinement are unconstitutional, this class action asserts two causes of action 1) Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to 28 U.S.C. §§ 2241, 2243; (2) and Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702, "Injunctive Relief Only." Based on the alleged unconstitutional conditions of confinement at Lompoc related to COVID-19, the preliminary injunction and the Settlement Agreement require Respondents to expedite review and determination of eligibility of Lompoc inmates for home confinement.

Therefore, the "objections" to the settlement set forth in the Amendments to the 2241 Petitioners are overruled.

**c. Objections**

Some class members filed objections to the settlement or sent objections to class counsel. Many of the "objections" were substantially similar or nearly identical.

Some class members objected to paragraph 6 of the Settlement Agreement, which lists information Respondents are required to include on Review Worksheets (such as the offense of conviction, projected release date, security level, etc.). Some inmates contend Respondents should not be permitted to consider their offense of conviction when making home confinement decisions. (*See, e.g.*, Dkt. Nos. 571, 572, 573.) However, the information such as the offense of conviction, projected release date, and security level listed in the Review Worksheets is not the sole basis

for or sole criteria examined by Respondents for their home confinement decision. Moreover, the preliminary injunction and the Settlement Agreement do not require Respondents to disregard the offense of conviction in their home confinement review, but rather require that Respondents give substantial weight to an inmates' age or underlying health condition in their home confinement review. The parties thus agree that the requested relief in these objections are "beyond the scope of this lawsuit, which was brought to enforce the CARES Act and the directives in the Barr memos, both of which permit Respondents to consider the offense of conviction." (Motion at 21.)

Some inmates object to the BOP retaining ultimate authority to make home confinement decisions, object to home confinement decisions being made on any basis other than a class member's PATTERN score, and object to the BOP's ability to transfer class members to other facilities. These objections and requests do not relate to any specific terms of the settlement agreement and are beyond the scope of this litigation. This class action sought, and the Settlement Agreement requires that Respondents give substantial weight to an inmates' age or underlying health condition in making full and speedy use of their authority under the CARES Act for home confinement review.

Some objectors also argue Class Counsel has abandoned the class and are ineffective. Some objectors also request that the Court order counsel to provide an accurate and complete explanation in laymen's terms of the Settlement Agreement. However, as discussed above, the Court has found class counsel adequate to represent the class. The objectors fail to offer evidence or any compelling argument to change the Court's finding regarding class counsel's adequacy. Moreover, in connection with the motion for preliminary approval, the Court required the class notice to be revised to summarize the settlement agreement in a simplified matter, and approved the revised class notice which was sent to the class.

Some objectors contend the newly-appointed class representatives represent a

small minority of the class. On May 31, 2022 the Court appointed Petitioners Garries and Ybarra as representatives of the provisional class previously certified by the Court upon finding: 1) Garries and Ybarra are currently incarcerated as USP Lompoc; 2) Garries is over the age of 50 and has one or more underlying health conditions; 3) Ybarra has one or more underlying health conditions; 4) The Court's findings regarding typicality and adequacy as to the Original Named Plaintiffs in the Provisional Class Certification Order "apply equally to Mr. Garries and Mr. Ybarra"; and 5) Garries and Ybarra have confirmed their willingness to be named plaintiffs in this action, to serve as class representatives, and to represent the claims of the class vigorously. (Dkt. No. 420.) In granting preliminary approval of the settlement, the Court determined that Garries and Ybarra's claims are adequate to represent the Settlement Class. Objectors fail to submit any evidence demonstrating Garries and Ybarra are inadequate representatives who only represent a small minority of the class.

Some objectors complain that TRULINCS email messaging is not available to all class members and is not confidential. Despite these objectors' contentions regarding the purported lack of availability of the class notice to all class members via TRULINCS, the objectors nonetheless were aware of the class notice and settlement and were able to submit objections. Moreover, Respondents filed a declaration attesting that the electronic version of the class notice was poste don the EBB of TRULINCS which is a computer system available to all inmates incarcerated at Lompoc (Weber Decl. ¶ 3), and paper copies of the Class Notice and Settlement Agreement were placed in Lompoc's law library, a hard copy of the Class Notice was posted in all housing units where class members reside. (Weber Decl. ¶¶ 4-5.) Furthermore, in *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court noted Federal Rule of Civil Procedure 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." 564 U.S. 338, 362, 131 S. Ct. 2541, 2558, 180 L. Ed. 2d

374 (2011). Therefore, the issue raised as to the availability of the class notice on TRULINCS does not preclude final approval of the settlement agreement.

Some objectors argue in general terms that the conditions of confinement at Lompoc are unconstitutional and request that the Court declare the custody of the class is unconstitutional. As discussed above, this class action asserts two causes of action 1) Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to 28 U.S.C. §§ 2241, 2243; (2) and Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702, "Injunctive Relief Only." Based on the alleged unconstitutional conditions of confinement at Lompoc related to COVID-19, the preliminary injunction and the Settlement Agreement require Respondents to expedite review and determination of eligibility of Lompoc inmates for home confinement. The objectors' request that this Court issue a declaration that the custody of the class is unconstitutional is beyond the scope of this litigation and the settlement agreement.

Some objectors request that the Court order a vote among all class members. However, Federal Rule of Civil Procedure 23, which sets forth the procedures to be followed in class actions, does not require a vote from class members in determining whether the settlement agreement is fair, adequate, and reasonable. Moreover, class members had the opportunity to object to the settlement.

Accordingly, these "objections" to the settlement are overruled.

**d. Other Comments**

Some class members also sent letters, emails, or other briefs commenting on the settlement agreement and describing their personal experience and circumstances regarding for example testing, isolation, quarantine practices, and medical treatment for COVID-19. None of these submissions demonstrate that the settlement agreement is not fair, adequate, and reasonable. Rather, these comments demonstrate the relief agreed to in the Settlement Agreement would benefit class

members by requiring Respondents to attest to Class Counsel that Lompoc is in compliance with the BOP's testing, screening, isolation, and quarantine policies.

Some class members' comments related to conditions at Lompoc unrelated to COVID-19 (e.g., complaints regarding medical treatment generally) or the inmates' underlying conviction or sentence. These issues are outside of the scope of this lawsuit and are irrelevant in determining whether the settlement is fair, adequate, and reasonable.

Therefore, the reaction of class members factor does not weigh against final approval of the class action settlement.

* * *

Accordingly, based on the factors discussed above, the Court finds the Settlement Agreement is fair, adequate, and reasonable.

### C. Final Certification of the Class

In granting preliminary approval of the settlement, the Court conditionally certified the settlement class upon finding the requirements of Federal Rule of Civil Procedure 23(a) (i.e., numerosity; commonality; typicality; and adequacy of representation) had been met, and finding the action was maintainable under Rule 23(b)(2).[6] There is no evidence demonstrating the Rule 23 requirements for certification are no longer satisfied. Accordingly, the Court finds final certification of the class for settlement purposes is proper here, and certifies the class for final approval of the settlement. *See Ching v. Siemens Indus.*, 2014 WL 2926210, at *2 (N.D. Cal. 2014) (finding final class certification appropriate based on preliminary

---

[6] Federal Rule of Civil Procedure 23(b)(2) provides "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In granting preliminary approval, the Court determined this action was maintainable pursuant to Rule 23(b)(2) because Respondents' failure to make prompt and reasonable use of home confinement and compassionate release in light of the pandemic which takes into account inmates' age and medical conditions is applicable to each member of the class so that injunctive relief is appropriate as to the class as a whole.

approval order); *Sandoval v. Tharaldson Employee Mgmt.*, 2010 WL 2486346, at *5 (C.D. Cal. June 15, 2010) (same).

**D. Attorneys' Fees**

Plaintiff-Petitioners also filed an Unopposed Motion for Attorneys' Fees, seeking $375,000 for attorneys' fees to class counsel as agreed to by the parties in the settlement agreement. Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The district court must be guided by the fundamental principal that fee awards must be "reasonable under the circumstances" in determining the appropriateness of settlement fee awards. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

**1. Lodestar**

"The Supreme Court has instructed that '[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as 'lodestar.'" *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (citation omitted). Courts may use the lodestar method to determine the reasonableness of the requested attorneys' fees and costs. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

With respect to the hours reasonably expended, class counsel submits evidence that they expended 3,928.70 hours in this action, and demonstrates the hours expended were reasonably and necessarily incurred in this action.[7] *See Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008); *Hensley*, 461 U.S. at 434; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). As to the

[7] Class counsel filed a declaration regarding the work performed by counsel in this case and attaches an itemized list of the hours expended in this action. (Specter Decl. ¶¶ 4, 6, Ex. A.)

hourly rates, Petitioners submit evidence regarding the rate under the Equal Access to Justice Act ("EAJA")[8] applied to each attorney.[9] Therefore, the hourly rates based on the applicable EAJA rate are reasonable. *See Vargas*, 949 F.3d at 1194. Petitioners thus demonstrate the lodestar amount for attorneys' fees incurred based on applicable EAJA hourly rates is $817,728.59, which is significantly higher than the $375,000 in attorneys' fees agreed to by the parties in the settlement agreement. Accordingly, the Court finds $375,000 in attorneys' fees is a reasonable fee amount to be awarded to class counsel.

**2. *Kerr* Factors**

When determining the reasonableness of the fees, courts also consider the following factors, commonly referred to as the *Kerr* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances;

---

[8] This action is brought against the Warden of Lompoc in his official capacity. 28 U.S.C. § 2412(b) of the EAJA provides:

> [A] court may award reasonable fees and expenses of attorneys, in addition to the costs . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

The EAJA further provides "[t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id*. (Emphasis added.)

[9] On July 14, 2022, the Court ordered Petitioners to file evidence regarding the hourly market rate and EAJA rate applicable to each attorney who performed work in this action. (Dkt. No. 516.) On July 15, 2022, Petitioners filed three separate declarations from their counsel regarding the hourly market rate and EAJA rate applied by Plaintiff-Petitioners in calculating the fees incurred in this action as set forth in the Motion. (Dkt. Nos. 529, 530, 531.)

(8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)). The Court finds the *Kerr* factors weight in favor of granting Petitioners' Motion for Attorneys' Fees.

## IV. CONCLUSION

Accordingly, the Court:

1) **GRANTS** the Joint Motion for Final Approval of Class Action Settlement, and

2) **GRANTS** Plaintiffs-Petitioners' Unopposed Motion for Attorneys' Fees, and awards class counsel $375,000 in attorneys' fees.

Having granted final approval of the class settlement, Respondents' Motion for Summary Judgment (Dkt. No. 251), Respondent's Motion to Dissolve Preliminary Injunction (Dkt. No. 250), and Petitioners' Motion for non-provisional certification of the class (Dkt. No. 345), are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATED: October 11, 2022.

Hon. Consuelo B. Marshall
United States District Judge

CC:FISCAL